UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEVIN CORNWELL, JOHN M. GRADY,
ERSTE-SPARINVEST
KAPITALANLAGEGESELLSCHAFT M.B.H.
and IRISH LIFE & PERMANENT PLC

                                    Plaintiffs,

            vs.

CREDIT SUISSE GROUP, BRADY W.
DOUGAN, RENATO FASSBIND, D. WILSON
ERVIN and PAUL CALELLO

                                    Defendants.

---

ECF CASE

No. 08 Civ. 3758 (VM)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE THE [PROPOSED] SECOND AMENDED CLASS ACTION COMPLAINT

Richard W. Clary
Darin P. McAtee
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for the Defendants*

December 2, 2009

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ................................................................................................................................ 3

I.      The Standard .................................................................................................................... 3

II.     The Proposed Amendment Would Be Futile as to the Claims of Foreign Plaintiffs
        (for Themselves and on Behalf of Foreign Purchasers of CSG Shares on the Swiss
        Stock Exchange). ............................................................................................................. 4

        A.      The Court's Prior Holding with Respect to Foreign Plaintiffs. .............................. 4

        B.      The PSAC Does Not Cure the Jurisdictional Deficiencies in Foreign
                Plaintiffs' Claims. ..................................................................................................... 6

III.    Lead Plaintiffs' Proposed Claims Against Credit Suisse Securities Would Be
        Futile and Do Not Provide a Basis for the Court's Subject Matter Jurisdiction. ............... 15

IV.     The Proposed Amendment Would Be Futile as to the Claims of U.S. Residents
        Who Purchased CSG Common Shares on the Swiss Stock Exchange. ............................ 18

        A.      U.S. Investors Who Purchased CSG ADSs on the NYSE Lack Standing to
                Assert Claims on Behalf of U.S. Investors Who Purchased CSG Shares on
                the Swiss Stock Exchange. ....................................................................................... 18

        B.      The Court Lacks Subject Matter Jurisdiction Over the Claims of U.S.
                Residents Who Purchased CSG Common Shares on the Swiss Stock
                Exchange. ................................................................................................................. 19

V.      The Proposed Amendment Would Be Futile as to the Claims of Lead Plaintiffs
        Cornwell and Grady (for Themselves and on Behalf of U.S. Purchasers of CSG
        ADSs on the New York Stock Exchange). ....................................................................... 23

CONCLUSION ........................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
   --- F. Supp. 2d ---, No. 08 Civ. 7508 (SAS), 2009 WL 2828018 (S.D.N.Y.
   Sept. 2, 2009) ...................................................................................................................19

*Acito v. IMCERA Group, Inc.*,
   47 F.3d 47 (2d Cir. 1995) ..................................................................................................3

*Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*,
   --- F. Supp. 2d ---, No. 08 Civ. 5516(MGC), 2009 WL 3787197 (S.D.N.Y.
   Nov. 10, 2009) ...................................................................................................................17

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ......................................................................................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..........................................................................................................15

*Bersch v. Drexel Firestone, Inc.*,
   519 F.2d 974 (2d Cir. 1975) ..............................................................................................20

*Chan v. Reno*,
   916 F. Supp. 1289 (S.D.N.Y. 1996) ...................................................................................3

*Froese v. Staff*,
   No. 02 Civ. 5744(RO), 2003 WL 21523979 (S.D.N.Y. July 7, 2003) ..............................14

*In re Alstom SA Sec. Litig.*,
   406 F. Supp. 2d 346 (S.D.N.Y. 2005)......................................................................8, 13, 21

*In re Bausch & Lomb, Inc. Sec. Litig.*,
   592 F. Supp. 2d 323 (W.D.N.Y. 2008) .............................................................................17

*In re Bayer AG Sec. Litig.*,
   423 F. Supp. 2d 105 (S.D.N.Y. 2005).............................................................................3, 6

*In re NovaGold Res. Inc. Sec. Litig.*,
   629 F. Supp. 2d 272 (S.D.N.Y. 2009)..............................................................................5, 8

*In re Rhodia S.A. Sec. Litig.*,
   531 F. Supp. 2d 527 (S.D.N.Y. 2007)..........................................................................11, 16

*In re Salomon Analyst Level 3 Litig.*,
    350 F. Supp. 2d 477 (S.D.N.Y. 2004) ..................................................................19

*In re SCOR Holding (Switz.) AG Litig.*,
    537 F. Supp. 2d 556 (S.D.N.Y. 2008) ...................................................8, 9, 10, 21

*Latino Quimica-Amtex S.A. v. Akzo Nobel Chems. B.V.*,
    No. 03 Civ. 10312, 2005 WL 2207017 (S.D.N.Y. Sep. 8, 2005) ...........................3

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) ...................................................................................3

*Menkes v. Stolt-Nielsen S.A.*,
    No. 3:03CV409(DJS), 2006 WL 1699603 (D. Conn. Jun. 19, 2006) ...............16, 17

*Monahan v. Peña*,
    No. 08-CV-2258, 2009 WL 2579085 (E.D.N.Y. Aug. 18, 2009) ...........................3

*Morrison v. Nat'l Austl. Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008), *cert. granted*, 9 U.S.L.W. 227 (U.S. Nov. 30, 2009)
    (No. 08-1191) ................................................................................................ passim

*Nathan Gordon Trust v. Northgate Exploration, Ltd.*,
    148 F.R.D. 105 (S.D.N.Y. 1993) ..........................................................................20

*Peress v. Alliancebernstein, L.P.*,
    No. 09 Civ. 4699, 2009 WL 3631034 (S.D.N.Y. Oct. 26, 2009) ...........................3

*Pugh v. Tribune Co.*,
    521 F.3d 686 (7th Cir. 2008) ................................................................................17

*Schoenbaum v. Firstbrook*,
    405 F.2d 200 (2d Cir. 1968), *rev'd en banc on other grounds*, 405 F.2d 215
    (2d Cir. 1968) ........................................................................................................22

*Shipping Fin. Servs. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998) .................................................................................14

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) .............................................................................................16

*Yukos Oil Co. Sec. Litig.*,
    No. 04 Civ. 5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ...........................20

**Statutes & Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................15

Fed. R. Civ. P. 12(b)(6)...........................................................................................5, 23

Fed. R. Civ. P. 15(a)(2)...................................................................................................3

**Other Authorities**

Hannah L. Buxbaum, "Multinational Class Actions Under the Federal Securities Law: Managing Jurisdictional Conflict", 46 Colum. J. Trans. L. 14 (2007) ....................................22

Stephen J. Choi & Andrew T. Guzman, "The Dangerous Extraterritoriality of American Securities Law", 17 Nw. J. Int'l L. & Bus. 207 (1996) ............................................................22

Restatement (Third) of Foreign Relations Law § 403 (1987)...........................................21, 22, 23

Restatement (Third) of Foreign Relations Law § 416 (1987)...................................................21, 22

Defendants Credit Suisse Group ("CSG"), Brady W. Dougan, Renato Fassbind, D. Wilson Ervin and Paul Calello respectfully submit this memorandum of law in opposition to Plaintiffs' Motion for Leave to File the [Proposed] Second Amended Class Action Complaint.

## PRELIMINARY STATEMENT

On October 5, 2009, this Court issued its Decision and Amended Order ("Order") dismissing Plaintiffs' Amended Complaint ("AC") in its entirety for lack of subject matter jurisdiction. Over 200 pages of "amended" pleadings later, it appears that Plaintiffs failed to understand the Court's ruling or simply have chosen to ignore it; their Proposed Second Amended Class Action Complaint ("PSAC") restates, often verbatim, the deficient allegations of the AC, curing few, if any, of its flaws.

Most notably, the PSAC does nothing to address the central holding in the Court's Order: that Plaintiffs have failed to establish, by a preponderance of the evidence, "that the alleged frauds were masterminded or concocted or otherwise substantially carried out in the United States" (Order at 36), because the AC concerned predominantly "Swiss-centered conduct" (*id.*). Crucial to this holding, the Court held that "the heart of the frauds complained of in this case consists of *the alleged misstatements and omissions* regarding CSG's financial state . . . and *the alleged misstatements and omissions* regarding the business practices affecting CSG's financial results" (*id.* at 21 (emphasis added)), whereas "[t]he underlying business practices . . . are *not* the essential core of the alleged frauds" (*id.* (emphasis added)). Notwithstanding those clear holdings, the allegations in the PSAC regarding Defendants' purported misstatements and omissions are essentially the very same allegations that the Court found lacking in the AC; Plaintiffs have barely altered these allegations, because they cannot. Instead, Plaintiffs have repeated in the PSAC pages upon pages of allegations (and even added a purported expert report)

about the locus of CSG's "underlying business practices", a question that this Court (following the Second Circuit's analysis in *Morrison*) has specifically found to be outside the "core" of the alleged fraud and thus irrelevant to the question of jurisdiction.  For the reasons articulated in the Order, therefore, the PSAC—like its predecessor—fails to meet the requirements of the "conduct" test, namely, that the "heart" of the alleged fraud—here, allegedly false statements to the market—took place in the United States.  That dispositive failure in the PSAC precludes this Court from exercising jurisdiction over the claims of the Foreign Plaintiffs; the Foreign Plaintiffs' attempt to again pursue such claims (for themselves and on behalf of foreign purchasers of CSG shares on the Swiss Stock Exchange) is thus futile and should be denied. (*See* Order at 11-12.)

Nor does Plaintiffs' bid to add as a defendant Credit Suisse Securities (USA) LLC ("Credit Suisse Securities")—a wholly-owned indirect U.S. subsidiary of CSG—"bolster the jurisdictional basis" for their extraterritorial claims.  Plaintiffs are not purchasers of Credit Suisse Securities stock—there is no such publicly traded stock—and Plaintiffs have not alleged any actionable statements or omissions by Credit Suisse Securities; at most Credit Suisse Securities is a legal entity theoretically relevant to the alleged U.S. "underlying business practices" already rejected by the Court as a basis for jurisdiction.  Thus, as discussed below, the addition of Credit Suisse Securities as a new defendant is futile and should not be permitted.

Plaintiffs have also failed to establish the Court's subject matter jurisdiction over the claims of U.S.-domiciled purchasers of CSG shares *on the Swiss Stock Exchange*.  Indeed, Plaintiffs have not offered any justification for extending this Court's jurisdiction to the claims of U.S. citizens who voluntarily chose to purchase *foreign* stock, issued by a *foreign* entity, on a *foreign* exchange, when such claims pertain to disclosures made *outside the U.S.*  Nor is such a

U.S. investor on the Swiss Stock Exchange even included amongst the Lead Plaintiffs.

Accordingly, Plaintiffs' efforts to pursue these claims are also futile and should be denied.

## ARGUMENT

I.    THE STANDARD

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading" with the Court's

leave.  Although leave to amend should be granted "freely . . . when justice so requires", "[a]

district court has discretion to deny leave [to amend] for good reason, including futility, bad

faith, undue delay, or undue prejudice to the opposing party".  *McCarthy v. Dun & Bradstreet

Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Courts assessing the futility of a proposed amendment should apply the same standard

employed in evaluating a motion to dismiss.  *See, e.g.*, *Peress v. Alliancebernstein, L.P.*, No. 09

Civ. 4699, 2009 WL 3631034, at *1 (S.D.N.Y. Oct. 26, 2009).  Thus, "[a]n amendment is

considered futile if the amended pleading fails to state a claim or would be subject to a

successful motion to dismiss on some other basis."  *Chan v. Reno*, 916 F. Supp. 1289, 1302

(S.D.N.Y. 1996).  Most pertinent here, "[i]t is . . . well-settled that leave to amend a complaint

should not be granted if the amendment would be futile in curing subject matter jurisdiction

defects".  *Monahan v. Peña*, No. 08-CV-2258, 2009 WL 2579085, at *6 (E.D.N.Y. Aug. 18,

2009); *see also In re Bayer AG Sec. Litig.*, 423 F. Supp. 2d 105, 113 n.1 (S.D.N.Y. 2005)

(denying leave to amend where newly proposed allegations would not cure lack of subject matter

jurisdiction over claims of foreign purchasers in securities fraud action); *Latino Quimica-Amtex

S.A. v. Akzo Nobel Chems. B.V.*, No. 03 Civ. 10312, 2005 WL 2207017, at *13 (S.D.N.Y. Sept.

8, 2005) (denying leave to amend where "[p]laintiffs' proposed Second Amended Complaint

would not withstand a motion to dismiss for lack of subject matter jurisdiction").  Proposed

amendments that allege non-actionable conduct are similarly futile.  *See Acito v. IMCERA*

3

*Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995) (upholding dismissal of securities fraud action

pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and denial of leave to amend where the district

court "examined plaintiffs' supplementary allegations and determined that the additional

information did not cure the complaint").

II.    THE PROPOSED AMENDMENT WOULD BE FUTILE AS TO THE CLAIMS OF
       FOREIGN PLAINTIFFS (FOR THEMSELVES AND ON BEHALF OF FOREIGN
       PURCHASERS OF CSG SHARES ON THE SWISS STOCK EXCHANGE).

       A.    **The Court's Prior Holding with Respect to Foreign Plaintiffs.**

       In the Order, the Court determined that it lacked subject matter jurisdiction over the

claims of the Foreign Plaintiffs, both of whom had purchased and sold all of their CSG shares

exclusively on the Swiss Stock Exchange.  The Foreign Plaintiffs are foreign purchasers of

securities of a foreign issuer purchased on a foreign exchange.  This Court properly applied the

Second Circuit's controlling decision in *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 171

(2d Cir. 2008), *cert. granted*, 9 U.S.L.W. 227 (U.S. Nov. 30, 2009) (No. 08-1191), which

considered jurisdiction over securities cases brought by so called "foreign cubed" plaintiffs under

circumstances remarkably similar to the instant case.  Thus, the Court's analysis centered on the

"conduct test", under which subject matter jurisdiction exists if "[i] the acts that took place in the

United States were 'more than merely preparatory to a fraud and [ii] culpable acts or omissions

occurring here directly caused losses to investors abroad'".  (Order at 9-10 (quoting *Morrison*,

547 F.3d at 171).)[1]  The Court began its analysis by considering "'what conduct comprises the

---

[1] The *Morrison* court identified a "binary inquiry" consisting of the "conduct test" and the
"effects test".  *Morrison*, 547 F.3d at 171.  Together, these tests ask "(1) whether the wrongful
conduct occurred in the United States, and (2) whether the wrongful conduct had a substantial
effect in the United States or upon United States citizens".  *Id.*  As this Court has noted, only the
"conduct test" is relevant in evaluating the claims of Foreign Plaintiffs.  (Order at 11-12 (citing
cases).)

heart of the alleged fraud' . . . [*i.e.*,] what fraud the Lead Plaintiffs are alleging caused them harm". (Order at 12 (quoting *Morrison*, 547 F.3d at 175).)[2] Ultimately, this Court concluded that "the heart of the fraud asserted in this action consists of the alleged misrepresentations and omissions regarding CSG's financial performance and the business practices cited by Lead Plaintiffs" and that "most of these statements originated abroad, and the statements or acts that do or could constitute wrongful acts in the United States fail to satisfy the conduct test". (*Id.* at 22.) Accordingly, the Court declined to exercise subject matter jurisdiction over the claims of Foreign Plaintiffs. (*Id.* at 36.)

Significantly, this Court also cautioned that "a repleading would be futile if it were based upon the same sort [of] allegations regarding the content and location of the frauds alleged". (*Id.* at 36.) As demonstrated below, Plaintiffs' motion for leave to file the PSAC should be denied for precisely the reason anticipated by the Court: The proposed amendments fail to cure the jurisdictional defects of the AC with respect to Foreign Plaintiffs and other foreign purchasers of CSG shares on the Swiss Stock Exchange.[3] *See In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 306 (S.D.N.Y. 2009) (denying leave to amend "to allege sufficient jurisdictional facts following discovery of [Defendant's] conduct in the United States" where "plaintiff has

---

[2] In *Morrison*, the Second Circuit declined to exercise jurisdiction over a foreign bank, National Australia Bank ("NAB"), which allegedly misstated the results of its U.S. subsidiary, HomeSide Lending Inc. ("HomeSide"), finding that the public statements issued by NAB's Australian headquarters were "significantly more central to the fraud and more directly responsible for harm to investors" than "any alleged manipulation of the numbers" by HomeSide. *Morrison*, 547 F.3d at 176; *see also id.* ("Our determination of whether American activities 'directly' caused losses to foreigners depends on what and how much was done in the United States and on what and how much was done abroad.").

[3] Moreover, Plaintiffs' proposed amendments, including those that relate to the claims of Lead Plaintiffs Cornwell and Grady, are also futile for all of the reasons stated in Defendants' motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim, under Fed. R. Civ. P. 12(b)(6). To the extent the Court permits *any* Plaintiffs to file an amended pleading, Defendants respectfully reserve the right to reassert the defenses raised in their earlier motion.

failed to establish a *prima facie* case favoring the exercise of jurisdiction over foreign plaintiffs purchasing shares abroad"); *In re Bayer*, 423 F. Supp. 2d at 112 (refusing to exercise subject matter jurisdiction over the claims of foreign plaintiffs where "Plaintiffs point to allegations identical to, or of the same character as those previously determined insufficient to support jurisdiction").

      B.     **The PSAC Does Not Cure the Jurisdictional Deficiencies in Foreign Plaintiffs' Claims.**

Plaintiffs argue conclusorily that "the PSAC includes additional allegations demonstrating that Defendants made numerous materially false and misleading statements in the U.S.". (Mem. of Law in Supp. of Pls.' Mot. for Leave to File the [Proposed] Second Am. Class Action Compl., dated November 9, 2009 (Docket No. 35) ("Pls.' Mem.") at 5.) That argument is false. In fact, the PSAC does not contain *any* new allegations of Defendants' conduct in the United States; instead, it simply repackages allegations already considered and rejected by the Court. As Defendants demonstrate in Exhibit A (attached), Plaintiffs have merely consolidated the AC's deficient allegations regarding Defendants' purportedly U.S.-based conduct into a single "new" section of the PSAC; while their location in the complaint has changed, the substantive allegations relevant to the conduct test remain the same. (*See* PSAC ¶¶ 18-40; *see also* Exhibit A (comparing Plaintiffs' revised "Jurisdiction and Venue" allegations to similar allegations in the AC).)

*First*, in the AC, Plaintiffs alleged that CSG made materially false statements in its 2006 Annual Report and 2006 and 2007 quarterly earnings disclosures (*see, e.g.,* AC ¶¶ 227-29, 231-39, 241-43, 245-46, 253, 255-56, 259, 261-62) which purportedly were "prepared, issued, and ultimately disseminated" "in the United States". (*See, e.g.*, AC ¶¶ 20, 93.) In their motion to dismiss, Defendants demonstrated that these documents did not constitute U.S. conduct because,

without exception, they state on their face that "they were prepared, signed and certified in Switzerland; that inquiries about their contents should be directed to CSG's Investor Relations and Media Relations offices in Switzerland and, where applicable, that they contain consolidated financial statements that are prepared on a worldwide basis, are produced in and reported out of Zurich, and are audited or reviewed by KPMG Switzerland".  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Am. Compl., dated December 19, 2008 (Docket No. 21) ("Defs.' Mem.") at 6-7; *see also id.* at 7 n.2 (listing documents).)  This Court agreed, finding that these statements, which constitute "the heart of the fraud alleged here . . . [were] issued from Switzerland".  (Order at 25.)

Incredibly, the PSAC does not contain *a single new allegation* about CSG's financial reports.  In fact, Plaintiffs reassert the very same allegations that the Court rejected in dismissing the AC.  (*Compare* AC ¶¶ 229, 232-38 (discussing the 2006 annual report and Form 20-F) *with* PSAC ¶¶ 247, 250-56 (same); *compare* AC ¶¶ 239, 241-42 (discussing CSG's 1Q07 earnings release and Financial Review) *with* PSAC ¶ 257, 259-60 (same); *compare* AC ¶¶ 243, 245-46 (discussing 2Q07 earnings release and Quarterly Report) *with* PSAC ¶¶ 261, 263-264 (same); *compare* AC ¶¶ 253, 255-56 (discussing CSG's 3Q07 earnings and operations release) *with* PSAC ¶¶ 271, 273-74 (same); *compare* AC ¶¶ 259, 261-62 (discussing CSG's 4Q07 and FY2007 earnings release) *with* PSAC ¶¶ 277, 279-80 (same).)  Plaintiffs' continued reliance on these allegations is misplaced—as a matter of law, they cannot form a basis for this Court's jurisdiction.  (*See* Order at 23-24 ("To the extent that Lead Plaintiffs rely upon statements made in or issued from Switzerland, the Court cannot find that it has subject matter jurisdiction over these claims.")); *see also, e.g.*, *Morrison*, 547 F.3d at 176 (finding that it lacked subject matter jurisdiction where an Australian parent company, and not its U.S. subsidiary, took "primary

responsibility for the corporation's public filings, for its relations with investors, and for its statements to the outside world"); *In re NovaGold Res. Inc.*, 629 F. Supp. 2d at 305-306 (finding that where a company's Canadian headquarters "bore responsibility for the company's public statements and disclosures" those statements and disclosures could not constitute conduct in the United States).[4]

    *Second*, in the AC, Plaintiffs averred that the above-mentioned documents and an allegedly misleading letter from Fassbind to the SEC, constituted U.S. conduct giving rise to jurisdiction simply because they were filed with the SEC (and, in the case of the letter, because a New York-based partner at an international law firm "presumably assisted" CSG in its preparation). (AC ¶ 20.) In their motion to dismiss, Defendants demonstrated that because these documents were prepared and disseminated outside of the U.S., neither their filing with the SEC nor the alleged involvement of a lawyer in the U.S. in the preparation of one letter was sufficient to satisfy the conduct test. (*See* Defs.' Mem. at 7-8); *see also, e.g.*, *In re SCOR Holding (Switz.) AG Litig.*, 537 F. Supp. 2d 556, 568 (S.D.N.Y. 2008) ("Foreign investors may not bring private claims for damages in United States courts simply by alleging that false statements were made in

---

[4] In a futile attempt to re-hash the allegations concerning these disclosure documents, Plaintiffs assert that to the extent they were disclosed as part of a press release, these constituted U.S. conduct that is the "direct cause" of Foreign Plaintiffs' losses, because "[t]he Company's investor relations department issued press releases in English for publication on press release news wires, which were carried by *Bloomberg* and *Dow Jones* in the United States. The false and/or misleading statements by the Company in the United States caused the price of Credit Suisse's securities traded in the United States and elsewhere to be inflated, and when the truth was revealed and reported in the United States, the price of the Company's securities plummeted, in the United States and elsewhere." (PSAC ¶ 22; *see also* Pls.' Mem. at 6.) A similar allegation was made in the AC, and dismissed. (*See* AC ¶ 343.) As Defendants have shown, and as noted above, these press releases were prepared in, and disseminated from, Switzerland, and thus they cannot constitute conduct in the United States. *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 392 (S.D.N.Y. 2005) (finding that press releases that "state on their faces that they were disseminated from outside the United States" could not be a basis for subject matter jurisdiction).

SEC filings.").  This Court agreed, noting that Plaintiffs' allegations with respect to Defendants'

SEC filings also did not satisfy the conduct test.  (Order at 24-25); *see also In re SCOR Holding*,

537 F. Supp. 2d at 568 n.18 (noting that "even assuming that SEC filings were sufficient under

the first prong of the conduct test, a Foreign Plaintiff would still have to demonstrate that those

filings 'directly caused' the losses they suffered").

Nonetheless, in the PSAC, Plaintiffs repeat these very same allegations (*compare, e.g.*,

AC ¶ 20 *with* PSAC ¶ 21), adding only an accusation that "[h]ad Defendants not deliberately

misled the SEC, the fraud alleged in this case would have been revealed early in the Class Period

and most of Plaintiffs' losses avoided".  (PSAC ¶ 21.)  If this entirely speculative and conclusory

allegation was sufficient, then every filing with the SEC (other than a corrective one) would

necessarily meet the requirements of the conduct test—a proposition that is clearly inconsistent

with *Morrison*, as well as with this Court's express holding that "the act of filing documents with

the SEC is *insufficient* standing alone to confer jurisdiction".  (Order at 24 (quoting *In re SCOR

Holding*, 537 F. Supp. 2d at 568)); *see also In re SCOR Holding*, 537 F. Supp. 2d at 569 (finding

that the connection between U.S. conduct, including allegedly misleading SEC filings, and

Foreign Plaintiffs' losses was "too attenuated" to constitute direct causation where "the

misrepresentations that form the basis for the Foreign Plaintiffs' cause of action all emanated

from abroad, and . . . each of the decisions underlying those statements was also made abroad").

Oddly, Plaintiffs purport to rely on *Morrison* and *In re SCOR Holding* as support for their

argument that Defendants' allegedly misleading statements to the SEC are sufficient to confer

subject matter jurisdiction on the Court over "foreign purchasers of Credit Suisse securities on

foreign exchanges under the 'conduct' test".  (Pls.' Mem. at 9.)  Plaintiffs' argument

purposefully ignores the second prong of the conduct test, applied by both the *Morrison* and *In*

9

*re SCOR Holding* courts, which clearly requires a showing of direct causation to establish subject matter jurisdiction. *Morrison*, 547 F.3d at 171; *In re SCOR Holding*, 537 F. Supp. 2d at 569. Notably, in both *Morrison* and *In re SCOR Holding*, the court found that it had no jurisdiction, notwithstanding the allegations of materially misleading SEC filings.

 *Third*, in the AC, Plaintiffs alleged that certain oral statements made on CSG's quarterly calls were misleading. (*See* AC ¶¶ 230, 240, 244, 254, 260.) In their motion to dismiss, Defendants pointed out that the bulk of these alleged statements were made by CSG personnel in Zurich or London, and that the handful of statements allegedly made in the United States were non-actionable and, at best, marginally relevant to Plaintiffs' claims. (Defs.' Mem. at 8-9.) This Court agreed, finding that any alleged misstatements or omissions made during four specific conference calls on February 15, 2007, August 2, 2007, November 1, 2007 and February 12, 2008 could not constitute conduct in the United States because (1) Plaintiffs failed to "specify where these conference calls originated from or where the participants (other than the Defendants) were located"; and (2) "[t]he scheduled times of these types of calls suggest that the calls were held for the benefit of persons outside the United States". (Order at 26.) Moreover, the Court noted that Plaintiffs' allegations also failed the second prong of the conduct test because it could not "find that the conference calls 'directly caused' the Lead Plaintiffs' losses". (*Id.* at 27; *see also id.* (noting that the allegedly misleading financial statements issued from CSG's Zurich headquarters, and not the conference calls, directly caused Plaintiffs' losses).)

Nevertheless, in the PSAC, Plaintiffs rely on the very same allegations with respect to the same allegedly misleading oral statements.[5] The PSAC does not allege any additional conference calls or presentations by Defendants in the United States. (PSAC ¶ 22.) Nor does it provide any additional detail with respect to the participants or the purpose and timing of these conference calls. (*Compare, e.g.*, AC ¶¶ 230-31 (discussing the February 15, 2007 conference call) *with* PSAC ¶¶ 248-49 (same).) To the contrary, the *only* additional allegation in the PSAC is Plaintiffs' claim that certain Defendants were "in the United States" when they participated in these calls. (PSAC ¶ 22.) The location of these *Defendants*, however, was never in dispute. (*See* Order at 26 (noting that Plaintiffs failed to specify "where the participants *(other than the Defendants)* were located" (emphasis added)); *id.* ("The Amended Complaint alleges that Dougan, Ervin, and Calello resided in the United States at the time that the calls were made.").) The addition of the words "in the United States" to a single paragraph of the PSAC cannot cure the deficiencies of the AC; thus, Plaintiffs' proposed amendments in this context are also futile. *See In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 551 (S.D.N.Y. 2007) (dismissing claims of foreign plaintiffs in a securities fraud action and denying leave to amend where "[i]t [was] clear to the Court that Lead Plaintiffs' allegations about the location of any relevant conduct are

---

[5] For example, Plaintiffs reiterate their allegation that David Mathers, allegedly "the Company's Head of Finance and Strategy in Investment Banking in New York", made allegedly materially misleading oral statements during a November 1, 2007 Credit Suisse 3Q07 Earnings conference call with investors and analysts. (*Compare* PSAC ¶ 272 *with* AC ¶ 254.) As Defendants established in their motion to dismiss, "Mathers, a UK citizen, is based in London, and participated in the 1Q07 and 3Q07 earnings calls from Zurich". (Defs.' Mem. at 8 n.3 (citing Declaration of David Mathers).)

complete, and that therefore there [were] no further allegations which could remedy the Complaint's subject matter jurisdiction infirmities"). [6]

*Fourth,* Plaintiffs' "jurisdictional" arguments with respect to the location of individual defendants and the location of CSG's subsidiary business units are *identical* to allegations that the Court considered and rejected when dismissing the AC. For example, Plaintiffs reiterate that "[b]ecause Ervin was based in New York, undoubtedly many of the key decisions affecting the Company's risk analysis, internal controls, and disclosures were made or approved in the U.S." (*Compare* PSAC ¶ 23 *with* AC ¶ 24.) Plaintiffs also repeat that "Credit Suisse's Investment Banking segment and Derivative Structured Product Trading business, a sub-part of Investment Banking, handled ABS and were both based primarily in New York. . . . As a result, many of the MBSs and CDOs that Credit Suisse ultimately wrote down were likely packaged, managed, bought, sold and/or valued from Credit Suisse's U.S. operations." (*Compare* PSAC ¶ 25 *with* AC ¶ 22.) Notably, the Court already found that these exact allegations did not satisfy the conduct test because "allegations that CSG's business is managed in New York and that some officers live and work in New York" are "not sufficient to show by a preponderance of the evidence that acts that comprise the heart of the fraud were committed in the United States".

---

[6]  In a footnote, Plaintiffs urge the Court to consider that Dougan was "personally served at his Connecticut residence on May 2, 2008" in its jurisdictional analysis. (Pls.' Mem. at 8 n.4.) Simply put, Plaintiffs are grasping at straws. Defendants already established that Dougan was relocated to Switzerland after he became CEO of CSG in May 2007, and the Court already ruled that Plaintiffs' allegations regarding Dougan's January 1, 2008 interview did not constitute conduct in the United States sufficient to establish subject matter jurisdiction. (Order at 27-28 (noting that Plaintiffs failed to allege that the January 1, 2008 interview took place in the United States).) Given that the PSAC's allegations with respect to this interview are *identical* to the allegations already dismissed by the Court (*compare* AC ¶¶ 105, 257-58 (discussing the January 1, 2008 interview) *with* PSAC ¶¶ 123, 275-76 (same)), service of process after the complaint was filed at a residence maintained by Dougan in the U.S. is irrelevant.

(Order at 19-20; *see also id.* at 21 ("The underlying business practices highlighted by Lead Plaintiffs are not the essential core of the alleged frauds.").).)[7]

Plaintiffs' allegations with respect to the alleged ARS scheme are similarly flawed. (*See* Pls.' Mem. at 6 (suggesting that the "PSAC clarifies the allegations concerning where the criminal ARS scheme took place—New York").) As Defendants established in their motion to dismiss, "the determinative question here is not the locale of . . . the alleged ARS scheme, but rather where the alleged misstatements giving rise to Plaintiffs' legal claims were made—here overwhelmingly from outside the U.S." (Defs.' Mem. at 9-10 (citing *Morrison*, 547 F.3d at 176-77).) This Court agreed, noting that "[t]he Amended Complaint does not allege that CSG or other Defendants masterminded or carried out a plan to place ARSs in client accounts and *misstate financial results from New York*". (Order at 29 (emphasis added).)

The PSAC does not establish that Defendants' allegedly misleading statements with respect to the ARS scheme emanated from New York. In fact, the *only* addition in the PSAC is Plaintiffs' wholly unsubstantiated claim that "executives at Credit Suisse Securities [a CSG subsidiary] engaged in a long running fraudulent scheme that was carried out by the cash management department, or Corporate Cash Management Group, at Credit Suisse Securities,

---

[7]    Plaintiffs also urge the Court to disregard CSG's corporate structure (and its history as a 150 year-old Swiss company) and find that, despite having its headquarters and executive offices in Switzerland, CSG is "as much a U.S. based company as it is a foreign one". (Pls.' Mem. at 4, 9; *see also* PSAC ¶ 32.) Plaintiffs do not cite any legal authority for this incorrect proposition, which the Court already rejected once before. (*See* Order at 30 (rejecting Plaintiffs' claim that "CSG's 'ubiquitous presence in the U.S. further justifies' the exercise of subject matter jurisdiction by this Court" (quoting AC ¶ 29)).) It is clear that under the "conduct test", the extent of U.S. business undertaken by indirect U.S. subsidiaries of CSG is irrelevant because the conduct that comprises the heart of the alleged securities fraud claim is an alleged misstatement about Defendant's business, *not* the underlying business itself. *Morrison*, 547 F.3d at 176; *see also In re Alstom*, 406 F. Supp. 2d at 395 ("The sales of turbines in the United States, or the importance of the United States as a market for turbines . . . . or the creation of parts for the turbines in the United States are all far removed from the fraud.").

which was based in New York".  (PSAC ¶ 26.)[8]  This allegation, which is unrelated to the

location of alleged misstatements regarding CSG's financial results, is not supported by *any*

additional facts in the PSAC and, therefore, does not meet Plaintiffs' burden.  *See Shipping Fin.*

*Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("[J]urisdiction must be shown

affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

to the party asserting it.").  Furthermore, the "lengthy chain of causation" between the alleged

ARS scheme by persons at Credit Suisse Securities and the dissemination from Zurich of CSG's

allegedly misleading financial statements weighs heavily against the Court's exercise of subject

matter jurisdiction.  *Morrison*, 547 F.3d at 176-77 (affirming the district court's refusal to

exercise subject matter jurisdiction over the claims of foreign cubed plaintiffs because "while

HomeSide [the U.S. subsidiary] may have been the original source of the problematic numbers,

those numbers had to pass through a number of checkpoints manned by NAB's Australian

personnel before reaching investors"); *see also Froese v. Staff*, No. 02 Civ. 5744(RO), 2003 WL

21523979, at *2 (S.D.N.Y. July 7, 2003) ("[T]he fraud itself occurred, if at all, when the

allegedly fraudulent statements were conceived, engineered, and published in Germany.  It is

these misstatements and not any activity which lead to the alleged misrepresentations which

'directly caused' the financial losses.").

---

[8]    Notably, these unnamed "executives at Credit Suisse Securities" are defined only by a
circular reference to the "government actions" that name only former-brokers Tzolov and Butler
as defendants.  Other than Tzolov and Butler, no CSG affiliate or employee has been charged
with any criminal or regulatory misconduct relating to Tzolov and Butler's activities, and
Plaintiffs do not allege otherwise.  Moreover, as the Court already held, the allegations regarding
Tzolov and Butler are insufficient to establish that "anyone other than Tzolov and Butler was
involved in a scheme to place ARSs in client accounts with the goal of misstating CSG financial
results, and that the acts in furtherance of the scheme were carried out by others in New York".
(Order at 28-29.)

Plaintiffs have—for the second time—failed to demonstrate by a preponderance of the evidence that the Court has subject matter jurisdiction over the claims of Foreign Plaintiffs. Thus, Plaintiffs' motion for leave to amend with respect to the claims of the Foreign Plaintiffs (for themselves and on behalf of foreign purchasers of CSG shares on the Swiss Stock Exchange) should be denied as futile.

III.    LEAD PLAINTIFFS' PROPOSED CLAIMS AGAINST CREDIT SUISSE SECURITIES WOULD BE FUTILE AND DO NOT PROVIDE A BASIS FOR THE COURT'S SUBJECT MATTER JURISDICTION.

In a further attempt to "bolster[] the jurisdictional basis" for their claims, Plaintiffs propose adding Credit Suisse Securities as a defendant.  (Pls.' Mem. at 8-9; PSAC ¶ 46.)  This proposal has no merit; the addition of Credit Suisse Securities—a wholly-owned indirect U.S. subsidiary of CSG—as a defendant would not provide a basis for the Court's subject matter jurisdiction and would be futile.

To justify the addition of Credit Suisse Securities as a Defendant, Plaintiffs allege only that "the ARS fraud occurred at Credit Suisse Securities and, accordingly, Credit Suisse Securities is a direct and knowing source of many of the misrepresentations and omissions alleged herein".  (PSAC ¶ 46.)[9]  However, Plaintiffs do not and cannot contend that Credit Suisse Securities itself made any of the statements or disclosures implicated in this case; at most, Plaintiffs suggest that certain financial figures that allegedly originated within Credit Suisse Securities were ultimately reflected in *CSG's* consolidated public financial statements.  This is

_____

[9]    In addition to the futility of adding Credit Suisse Securities to the Complaint in terms of its effect on this Court's jurisdiction over Plaintiffs' claims, the PSAC's conclusory allegations against Credit Suisse Securities (and against all Defendants) fall short of what is required to state a claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and do not even approach the heightened pleading standard imposed by Fed. R. Civ. P. 9(b) and the PSLRA.

precisely the type of allegation that the Second Circuit found insufficient to satisfy the conduct test in *Morrison*. 547 F. 3d. at 176 (affirming district court's refusal to exercise subject matter jurisdiction because the foreign parent/issuer's actions there, like here, "were, in [the court's] view, significantly more central to the fraud and more directly responsible for the harm to investors than the manipulation of the numbers" by a wholly-owned U.S. subsidiary); *see also In re Rhodia*, 531 F. Supp. 2d at 539-40 (finding that the court lacked subject matter jurisdiction over the claims of foreign plaintiffs where "the alleged activities in the United States were merely the objects of the fraudulent representations made abroad"). Thus, the addition of Credit Suisse Securities as a putative defendant cannot, as a matter of law, cure the AC's and PSAC's jurisdictional defects.

Moreover, Plaintiffs' conclusory statement that Credit Suisse Securities was "a direct and knowing source of many of [CSG's] misrepresentations and omissions", even if true, plainly fails to identify any actionable conduct under Section 10(b). *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 160-61 (2008) (finding that "deceptive acts, which were not disclosed to the investing public" but that were reflected in "public statements relating to a security" were not actionable under Section 10(b)); *id.* at 162 (noting that Section 10(b) "does not reach all commercial transactions that are fraudulent and affect the price of a security in some attenuated way"); *Morrison*, 547 F. 3d. at 176 ("Liability under Rule 10b-5(b) requires a false or misleading statement. 'Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b).'" (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998))).

In their motion, Plaintiffs do not address *Stoneridge*, but rather rely on *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV409(DJS), 2006 WL 1699603, at *7 (D. Conn. Jun. 19, 2006), for the

proposition that a subsidiary can be held liable for the misstatements of a parent corporation because it was a "direct and knowing source" of the representations (Pls.' Mem. at 9). This reliance is misplaced. The *Menkes* court found that a subsidiary and its officers could be held liable for violating Section 10(b) where "[t]heir conduct goes well beyond simply enabling or turning a blind eye to [the parent corporation's] fraud and rises to the level of active participation *in the dissemination of false or misleading information*", as distinct from participation in the underlying business conduct. *Id.* (emphasis added). There is no such allegation here. Moreover, *Menkes* was decided prior to the Supreme Court's decision in *Stoneridge* which, as discussed above, clarified that liability under Section 10(b) cannot be imposed on a defendant absent reliance by a plaintiff on a deceptive statement made by that defendant; to the extent *Menkes* stands for a contrary proposition, as Plaintiffs seem to suggest, it is no longer good law. *See, e.g.*, *Morrison*, 547 F. 3d at 176 (finding that the court lacked jurisdiction where the Australian parent corporation, and not the American subsidiary, "issued the statements" that "constituted the fraud"); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 346, 352 (W.D.N.Y. 2008) (citing *Stoneridge* and dismissing claims against subsidiaries of issuer where "the [c]omplaint d[id] not specifically allege that . . . any of the subsidiaries made any public statements about [the parent company's] financial results or internal controls"); *Pugh v. Tribune Co.*, 521 F.3d 686, 697 (7th Cir. 2008) (upholding denial of leave to amend claims against employee of issuer's subsidiary where "[the employee] participated in a fraudulent scheme but had no role in preparing or disseminating [the issuer's] financial statements or press releases").

Plaintiffs have alleged, at most, only non-actionable conduct by Credit Suisse Securities and their proposed amendments in the PSAC, therefore, must fail as futile. *See, e.g.*, *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, --- F. Supp. 2d ---, No. 08 Civ.

5516(MGC), 2009 WL 3787197, at *6, *12 (S.D.N.Y. Nov. 10, 2009) (denying leave to amend

where plaintiff had not demonstrated that it could "transform" the facts into a viable claim under

Section 10(b), relying in part on *Stoneridge*).

IV.    THE PROPOSED AMENDMENT WOULD BE FUTILE AS TO THE CLAIMS OF
       U.S. RESIDENTS WHO PURCHASED CSG COMMON SHARES ON THE SWISS
       STOCK EXCHANGE.

        Plaintiffs also purport to bring claims on behalf of U.S.-domiciled investors who

purchased CSG common shares on the Swiss Exchange, even though not a single member of this

purported class has sought to prosecute any claim against CSG.  (PSAC ¶ 1; Pls.' Mem. at 2, 7-

8.)  Plaintiffs allege that these investors own approximately 6.6% of CSG's total outstanding

shares.[10]  (PSAC ¶ 28).  Plaintiffs' proposed claims on behalf of such investors are also futile.

        A.    **U.S. Investors Who Purchased CSG ADSs on the NYSE Lack Standing to
              Assert Claims on Behalf of U.S. Investors Who Purchased CSG Shares on
              the Swiss Stock Exchange.**

        As a threshold matter, because Foreign Plaintiffs should be dismissed, no remaining

named plaintiff has standing to represent U.S. investors who purchased CSG shares on the Swiss

Stock Exchange.  (*See* PSAC ¶¶ 41, 42 (indicating that Plaintiffs Grady and Cornwell purchased

Credit Suisse Group ADSs on the NYSE).)  A named plaintiff in a class action "lacks standing to

bring a claim if it did not suffer the injury that gives rise to that claim.  Where multiple claims

---

        [10] Plaintiffs allege that as of December 31, 2007, 11.3% of issued and outstanding shares not
held by CSG as treasury shares were held by U.S. domiciled investors directly, through a
nominee, or in trust (PSAC ¶ 28) and that 4.7% of issued shares are ADSs (*id.*).  (*See generally*
Hakala Decl. ¶ 4.)  This suggests that approximately 6.6% of the issued shares are CSG common
shares purchased by or on behalf of U.S. domiciled investors on the Swiss exchange.

        Defendants note that Plaintiffs' calculations consider the percentage of issued shares "not
held by CS".  In its Motion to Dismiss, Defendants' calculations considered the percentage of *all*
issued CSG stock, resulting in the number, 4.1%, which the Court adopted.  (*See* Order at 36.)
Defendants use Plaintiffs' methodology solely for purposes of this Brief.

are brought, at least one *named* plaintiff must have standing to pursue each claim alleged." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, --- F. Supp. 2d ---, No. 08 Civ. 7508 (SAS), 2009 WL 2828018, at *5 (S.D.N.Y. Sept. 2, 2009) (internal quotations omitted) (dismissing claims based on purchase of medium-term notes because no named plaintiff purchased that class of notes); *In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) (dismissing claims brought on behalf of bondholders because named plaintiffs purchased equity securities) (quoting *In re Global Crossing Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined . . . to have distinct interests or claims.")).

CSG common shares sold on the Swiss Stock Exchange and CSG ADSs sold on the New York Stock Exchange are distinct forms of securities; moreover, Plaintiffs have not alleged that Defendants' actions with respect to the sale of two separate forms of security, on two different exchanges, subject to two different regulatory systems, amount to a "single course of wrongful conduct with respect to each security". *Abu Dhabi*, 2009 WL 2828018, at *8. Accordingly, Cornwell and Grady lack standing to assert claims on behalf of U.S. residents who purchased CSG common shares on the Swiss Stock Exchange, and their proposed claims in the PSAC on behalf of such investors are therefore futile.

B.    **The Court Lacks Subject Matter Jurisdiction Over the Claims of U.S. Residents Who Purchased CSG Common Shares on the Swiss Stock Exchange.**

As the Court noted in its Order, "[c]ourts tasked with determining whether they have subject matter jurisdiction over securities law claims with international elements must consider 'whether Congress would have wished the precious resources of the United States courts . . . to be devoted to such transactions'". (Order at 9 (quoting *Morrison*, 547 F.3d at 170).) Plaintiffs'

19

proposed claim on behalf of U.S. purchasers of CSG common shares on the Swiss Stock

Exchange raises just such a concern, because it asks this Court to exercise jurisdiction over

purchases of *foreign* stock, on a *foreign* exchange, based on disclosures issued by a *foreign*

company from *outside the U.S.*, by investors who voluntarily chose to engage in transactions

outside the territorial jurisdiction of this Court.  As a matter of policy and common sense, there is

simply no reason why such investors, having affirmatively chosen to trade outside the U.S.,

should be allowed to drag foreign issuers before a U.S. court instead of pursuing their claims in

the jurisdiction where they chose to transact and where the issuer is incorporated, headquartered,

and traded.  Such a tenuous connection to U.S. interests, and the absence of *any* connection to

the U.S. market, militate against the exercise of jurisdiction.[11]  *See Yukos Oil Co. Sec. Litig.,* No.

04 Civ. 5243, 2006 WL 3026024, at *10 (S.D.N.Y. Oct. 25, 2006) (finding that the court lacked

subject matter jurisdiction over claims by a U.S. resident who purchased bonds issued by a Swiss

company on a Luxembourg exchange, even though plaintiff executed all of his purchases of the

Swiss bonds from the U.S.); *Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D.

105, 108 (S.D.N.Y. 1993) (finding during class certification proceeding that the court lacked

subject matter jurisdiction over claims arising from transactions on foreign exchanges).  *But see*

---

[11] This case is distinguishable from *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 991 (2d Cir. 1975), where the Court exercised subject matter jurisdiction over the claims of U.S. residents who participated in a foreign securities offering based on its finding that the defendant solicited purchases from United States investors using the allegedly misleading offering documents.  That is not the case here.  In fact, the availability of CSG ADSs trading on the NYSE suggests that investors who wanted to enjoy the protections of U.S. securities law while trading a form of CSG security had an easy way to do so.

*In re Alstom*, 406 F. Supp. 2d at 352 (permitting claims of U.S. plaintiffs who purchased shares on a foreign exchange to go forward);[12] *In re SCOR Holding*, 537 F. Supp. 2d at 561 (same).[13]

In analyzing the extraterritorial application of the securities laws, courts in the Second Circuit consider the relevant factors promulgated in the Restatement (Third) of Foreign Relations Law §§ 403 and 416, including, *inter alia*, the "link of the activity to the territory of the regulating state", the extent to which other states regulate such activities, and the existence of justified expectations that might be hurt by the regulation. *See In re Alstom*, 406 F. Supp. 2d at 385 (citing Restatement (Third) of Foreign Relations Law §§ 403, 416 (1987)).  Here, all relevant factors suggest a lack of such "links" to the U.S.—indeed, the purchasers voluntarily chose to engage in transactions on a foreign market instead of purchasing ADSs issued by Credit Suisse on the NYSE.  Accordingly, § 416 expressly notes the impropriety of extending U.S.

---

[12] The facts at issue in *Alstom* are markedly different than those at issue here.  With respect to the "ATI fraud" alleged in *Alstom*, the Court noted that "all of the allegedly fraudulent conduct occurred within the United States".  *Alstom,* 406 F. Supp. 2d at 395-96.  Similarly, the "final step necessary to consummate" the "Marine" and "Turbine" frauds was Defendants' sale of shares in Alstom's Secondary Offering, which the Court found "took place in part in the United States".  *Id.* at 393-94.  By contrast, here the Court has already recognized "the predominance of Swiss centered conduct in the frauds alleged" and that "the alleged frauds were [not] masterminded or concocted or otherwise substantially carried out in the United States".  (Order at 36.)

[13] In *SCOR*, Defendants did not challenge the Court's jurisdiction over claims of U.S. plaintiffs who purchased stock on a foreign exchange.  *Id.* at 560 n.3.  The Court exercised jurisdiction over claims of all U.S. plaintiffs based on what it found to be "broad U.S. holdings", without distinguishing whether U.S. plaintiffs purchased stock on the New York or Swiss Exchanges.  *Id.* at 561.  For the reasons stated above, Defendants submit that such claims should be analyzed separately, where certain U.S. investors elect to trade in shares of a foreign company on a foreign exchange.  Additionally, the *SCOR* court's reliance in dicta on *Consol. Gold Field* for the proposition that a required U.S. effect can be found even where  there are only a "relatively small number of American investors", *id.* at n.6, overlooks distinguishable facts in that case, where the Defendant solicited U.S. investors in the challenged offering by mailing allegedly misleading prospectuses.  Here, market trading on the Swiss Exchange did not solicit U.S. investors; indeed, those U.S. investors who purchased on the Swiss Exchange voluntarily chose to forego the opportunity created for U.S. investors to purchase ADSs on the NYSE.

jurisdiction in such an instance, stating that a U.S. resident who "deliberately traveled to Canada to trade in Canadian securities . . . should not be entitled to the protection of United States law in an action against his Canadian vendor/lender". [14]   Rest. § 416 cmt. n.2 (citing *Kook v. Crang*, 182 F. Supp. 388 (S.D.N.Y. 1960)); *see also* Stephen J. Choi & Andrew T. Guzman, "The Dangerous Extraterritoriality of American Securities Law", 17 Nw. J. Int'l L. & Bus. 207, 220 (1996) ("American investors are sufficiently well-protected if they understand that they are purchasing securities under a legal regime that differs from that of the United States.").[15]

Moreover, such extraterritorial extension of U.S. law does nothing to advance the objectives of the U.S. securities laws, which were effected to "protect domestic investors who have purchased foreign securities *on American exchanges* and to protect *the domestic securities market* from the effects of improper foreign transactions in American securities". *Schoenbaum v. Firstbrook*, 405 F.2d 200, 206 (2d Cir. 1968), *rev'd en banc on other grounds*, 405 F.2d 215 (2d Cir. 1968) (emphasis added). *See* Buxbaum, *supra*, at 55-56 ("In cases in which a U.S. investor purchases securities on a foreign exchange, the core regulatory interest (protecting U.S. investors who purchase securities on U.S. markets) is not implicated."); Choi & Guzman, *supra*, at 221-22 ("The protection of American markets, as opposed to individual investors, is consistent

---

[14] As the Restatement's example implies, such extraterritorial extension would unfairly allow U.S. residents to profit from the lower transaction costs of an exchange that has fewer regulatory requirements while still enjoying U.S. protection. *See* Hannah L. Buxbaum, "Multinational Class Actions Under the Federal Securities Law: Managing Jurisdictional Conflict", 46 Colum. J. Trans. L. 14, 68-69 (2007).

[15] The application of U.S. law premised solely on the nationality of the purchaser also offends "justified expectations" of a foreign issuer who, acting in full compliance with the laws of the exchange upon which its shares are listed, could nevertheless be unexpectedly subjected to the laws of a U.S. investor who trades in its stock when such trading is beyond the issuer's control. *See* Rest. § 403(2)(d) (providing that the reasonableness of extraterritorial regulation should depend, in part, on "the existence of justified expectations that might be . . . hurt by the regulation").

with the apparent objectives of the Exchange Act."). Where, as here, Plaintiffs' allegations concern transactions that are subject to regulation under Swiss securities laws; relate to alleged conduct by a Swiss company, the vast majority of which took place in Switzerland; and impact only a small number of U.S. investors who *chose* to purchase shares on a foreign exchange, the exercise of jurisdiction is unreasonable and unwarranted. *See* Rest. § 403(2)(a), (c), (g), (h).

V.     THE PROPOSED AMENDMENT WOULD BE FUTILE AS TO THE CLAIMS OF LEAD PLAINTIFFS CORNWELL AND GRADY (FOR THEMSELVES AND ON BEHALF OF U.S. PURCHASERS OF CSG ADSs ON THE NEW YORK STOCK EXCHANGE).

In the Order, the Court determined that it also lacked subject matter jurisdiction over the claims of "plaintiffs such as Cornwell and Grady"—purported U.S. purchasers of CSG ADSs on the New York Stock Exchange. (Order at 33-34.) In so holding, the Court "did not address [Defendants'] motion to dismiss pursuant to Rule 12(b)(6)" (*id.* at 7), which demonstrated the extensive pleading deficiencies in Plaintiffs' allegations.

To the extent the Court finds that the PSAC cures the AC's jurisdictional deficiencies with respect to the claims of Cornwell and Grady (for themselves and on behalf of similarly situated U.S. purchasers of CSG ADSs on the New York Stock Exchange), Defendants submit that the proposed amendments are nonetheless futile with respect to these claims, because the PSAC, like the AC, fails to state a claim on behalf of Cornwell and Grady upon which relief may be granted. (*See generally* Defs.' Mem. Parts II-III.)

Alternatively, if this Court is inclined to permit Plaintiffs Cornwell and Grady to file an amended pleading, Defendants respectfully submit that these Plaintiffs should be required to file a Proposed Third Amended Complaint that would be stripped of the futile allegations that dominate the PSAC. Defendants reserve the right to move to dismiss any such Cornwell/Grady Amended Complaint for failure to state a claim, pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order denying as futile Plaintiffs' motion for leave to file the Proposed Second Amended Class Action Complaint.

Respectfully submitted,

December 2, 2009                    CRAVATH, SWAINE & MOORE LLP

by _____
                    Richard W. Clary
                    Darin P. McAtee
                    Members of the Firm

                    Attorneys for Defendants
                    Worldwide Plaza
                    825 Eighth Avenue
                    New York, NY 10019
                    (212) 474-1000

24