UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-11-10

------------------------------------X

KEVIN CORNWELL et al.,              :

                08 Civ. 3758 (VM)

             Plaintiffs,  :

      - against -           :    **DECISION AND ORDER**

CREDIT SUISSE GROUP et al.,         :

             Defendants.   :

------------------------------------X

**VICTOR MARRERO, United States District Judge**.

Lead plaintiffs Kevin Cornwell ("Cornwell"), John M. Grady ("Grady"), Erste-Sparinvest Kapitalanlagegesellchaft m.b.H. ("Erste"), and Irish Life and Permanent plc ("ILP") (collectively, "Lead Plaintiffs") filed a consolidated amended complaint in this action, dated October 20, 2008 (the "Amended Complaint"), naming as defendants Credit Suisse Global ("CSG"), Brady W. Dougan ("Dougan"), Renato Fassbind ("Fassbind"), D. Wilson Ervin ("Ervin"), and Paul Calello ("Calello") (collectively, "Defendants"). Lead Plaintiffs assert claims under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) ("§ 10(b)"), Rule 10b-5 promulgated thereunder ("Rule 10b-5"), 17 C.F.R. § 240.10b-5, and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) ("§ 20(a)"). Lead Plaintiffs bring these claims on behalf of themselves and all other persons or entities, except for Defendants, who purchased CSG securities during the period February 15, 2007 through April 14, 2008 (the "Class Period").

-1-

By Order dated September 28, 2009, the Court dismissed the Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  The Court set forth its reasons in a Decision and Amended Order dated October 5, 2009 ("the Decision").[1]  Lead Plaintiffs now seek leave from the Court to amend the complaint for a second time.

For the reasons discussed below, Lead Plaintiffs' motion is DENIED in part and GRANTED in part.

## I.  **BACKGROUND**

### A.    ALLEGATIONS OF FRAUD

Given the extensive factual description in the Decision, the Court will assume the parties' familiarity with the facts of this case and will not reiterate the entire complicated underpinnings of this securities fraud class action.

As necessary to resolve the motion at hand, the essential facts are as follows: CSG is a Swiss-based investment bank invested in financial products whose worth is tied to the housing market in the United States.  As is well-documented, that market began deteriorating in 2006, causing huge financial losses for CSG, as indicated by asset markdowns

---

[1] The October 5, 2009, Decision and Amended Order is available at Cornwell v. Credit Suisse Group, No. 08 Civ. 3758, 2009 WL 3241404 (S.D.N.Y. Oct. 5, 2009).

related to the financial results for the fourth quarter of 2007.

Lead Plaintiffs allege that a number of deficiencies in CSG's internal practices, including criminal activity of some of its traders, caused or exacerbated these losses. The fraud at the heart of this claim concerns statements that Defendants made about these matters and CSG's accounting practices in various financial statements, earnings calls, and filings and correspondence with the Securities and Exchange Commission ("SEC"), and in an interview.

As noted in the Decision, Lead Plaintiffs essentially identified five categories of fraud. They alleged misstatements and omissions regarding: (1) CSG's valuation system (including intentional misvaluation by a group of rogue employees in London); (2) its unauthorized placement of assets backed by high-risk loans in client accounts (including criminally prosecuted conduct of two traders in New York); (3) its risk management practices; (4) its sub-prime exposure (including exposure caused by inadequate hedging practices); (5) and its financial state constituting violations of generally accepted accounting principles ("GAAP"). In short, Lead Plaintiffs allege that Defendants repeatedly misrepresented the magnitude of the epic problems facing CSG.

With these facts established, the Court can now turn to

the procedural intricacies of the Amended Complaint.

B.    THE AMENDED COMPLAINT FAILED TO ALLEGE SUFFICIENT FACTS
      ESTABLISHING THE COURT'S SUBJECT MATTER JURISDICTION

The Amended Complaint established different groups of aggrieved people as named plaintiffs: (1) Erste and ILP, who each resided outside of the United States and purchased shares of Swiss-based CSG on a foreign stock exchange, and (2) Cornwell and Grady, individuals of unknown residence who purchased CSG shares by buying American depository receipts ("ADRs") on the New York Stock Exchange.[2]

The Court found it lacked subject matter jurisdiction over securities claims brought by all of these named plaintiffs.    The Court evaluated the allegations in the Amended Complaint under the "conduct" and "effects" tests. See Morrison, 547 F.3d at 170-72.    The Court focused only on the "conduct" test for the first set of plaintiffs because Erste and ILP were foreign entities who purchased foreign stock on a foreign exchange.    See In re SCOR Holding (Switzerland) AG Litig., 537 F. Supp. 2d 556, 562 (S.D.N.Y. 2008).    The Court found that the heart of this alleged fraud

---

[2] ADRs "are issued by U.S. depository banks and represent one or more shares of foreign stock or a fraction of a share." Morrison v. National Australia Bank Ltd., 547 F.3d 167, 168 n.1 (2d Cir. 2008) (internal quotation marks and citation omitted), cert. granted, 2009 WL 4111014, at *1 (Nov. 30, 2009).    Ownership of an ADR gives the holder the right to obtain the foreign stock represented by the ADR.    See id.

-4-

comprised statements made in Switzerland and that it lacked subject matter jurisdiction over claims by these foreign plaintiffs because sufficient fraudulent conduct had not occurred in the United States.

The Court also held that it lacked subject matter jurisdiction over the second set of plaintiffs. The Amended Complaint did not specify where Cornwell and Grady resided and the Court could not simply assume they were United States residents. This deficiency in the Amended Complaint left Cornwell and Grady indistinguishable from the explicitly foreign plaintiffs and the Court could not exercise subject matter jurisdiction over them. The Court went on to find that even assuming Cornwell and Grady were United States residents, the Amended Complaint did not allege adequate effects of the fraud in the United States because information about CSG stock ownership by United States residents was not specified in the Amended Complaint and Defendants represented that only 4.1% of CSG shares were owned by United States residents.

The Court then indicated it would grant Lead Plaintiffs leave to amend their complaint if their request demonstrated that repleading would not be futile. Lead Plaintiffs made such a request on November 9, 2009, through a proposed second amended complaint ("Proposed Complaint"). The Court now

considers the sufficiency of the additions and changes found in the Proposed Complaint.

## II. **DISCUSSION**

Courts "should freely give leave" to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a)(2), but "it is within the sound discretion of the district court to grant or deny leave to amend. A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citations omitted).

## A.   THE PROPOSED AMENDMENTS WOULD BE FUTILE FOR CLAIMS BY FOREIGN PLAINTIFFS ERSTE AND ILP

Upon review of the Proposed Complaint and the papers filed by each party, the Court finds that the filing of the Proposed Complaint would be futile as to the claims of foreign plaintiffs Erste and ILP because it relies upon the same allegations regarding the content and location of the alleged frauds that the Court has already rejected. As to these claims, Lead Plaintiffs have done little more than insert legal conclusions devoid of factual underpinning into the Proposed Complaint, and in those instances where new facts are alleged, the new allegations are legally irrelevant. For example, the Proposed Complaint adds a subsidiary of CSG, Credit Suisse Securities, as a defendant in an attempt to

-6-

allege that fraudulent conduct was masterminded in New York. (See Proposed Complaint ¶ 46.) But the addition of this defendant does not allow the Court to exercise subject matter jurisdiction over the claims of foreign plaintiffs because that modification does not change the geographic source of the misstatements constituting the alleged fraud in this case.

The Proposed Complaint fails to allege sufficient fraudulent conduct based in the United States to allow this Court to exercise jurisdiction over the claims of foreign plaintiffs. The Court therefore finds that Lead Plaintiffs' request for leave to amend the claims of foreign plaintiffs Erste and ILP would be futile.

B.    THE PROPOSED AMENDMENTS WOULD NOT BE FUTILE FOR CLAIMS BY UNITED STATES RESIDENT PLAINTIFFS CORNWELL AND GRADY

1. Subject Matter Jurisdiction

The Proposed Complaint contains two new key allegations that would allow the Court to exercise subject matter jurisdiction over claims by Cornwell and Grady: (1) these two plaintiffs are United States residents, (See id. ¶¶ 41, 42; Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Leave To File the [Amended Complaint], dated Dec. 15, 2009, at 1 n.2), and (2) more than 75.7 million shares of Credit Suisse securities were held by United States institutional investors during the Class Period, representing

-7-

approximately 11.4% of the outstanding shares of CSG.  (See Proposed Complaint ¶¶ 31, 28.)

These allegations cure the defects the Court identified when dismissing the Amended Complaint.  Since the Proposed Complaint alleges that Cornwell and Grady are United States residents, the Court finds that the allegations that United States investors hold more than 75 million shares of CSG stock satisfies the "effects" test.  See Consolidated Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 262 (2d Cir. 1989) (finding subject matter jurisdiction over fraud claim when United States residents owned 5.3 million shares of a foreign company).[3]

2.    The Proposed Complaint Adequately Alleges A Securities Law Claim

The Court's task at hand is not concluded with its finding of subject matter jurisdiction over the claims of United States resident plaintiffs.  In addition to arguing that the Court lacked subject matter jurisdiction over Lead

_____

[3] Defendants argue that Cornwell and Grady lack standing to assert claims on behalf of all United States based investors in CSG because Cornwell and Grady purchased ADRs only on the New York Stock Exchange while other United States based investors purchased CSG shares on the Swiss Stock Exchange. (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to File the [Amended Complaint], dated Dec. 2, 2009, at 18-19.) The Court will not address this issue now as it is more properly resolved at the class certification stage. See In re Grand Theft Auto Video Game Consumer Litigation (No. II), No. 06-MD-1739, 2006 WL 3039993, at *2 (S.D.N.Y. Oct. 25, 2006) (examining authorities and concluding it was proper to "treat class certification as logically antecedent to standing where class certification is the source of the potential standing problems.")

Plaintiffs' claims, Defendants also moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

Because the Court determined that it lacked subject matter jurisdiction over the lawsuit, the Decision did not consider whether Lead Plaintiffs had alleged adequate facts to survive a Rule 12(b)(6) motion to dismiss.  As the issue is fully briefed and the Defendants have indicated they would renew their motion to dismiss if Lead Plaintiffs were allowed to amend the complaint, the Court will now consider the legal adequacy of the Proposed Complaint.   See   Peress   v. Alliancebernstein, L.P., 09-Civ-4699, 2009 WL 3631034, at *1 (S.D.N.Y. Oct. 26, 2009) (holding that "the standard governing the futility of an amendment is not materially different than the standard on a motion to dismiss.")

   a.   Legal Standard For Stating A Securities Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A court should not

dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, 282 F.3d 147, 152 (2d Cir. 2002).

In particular, to adequately state a cause of action for securities fraud under § 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must assert facts showing that "the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury." Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001). In an action under § 10(b) and Rule 10b-5, plaintiffs must allege a state of mind evidencing "an intent to deceive, manipulate or defraud." Ganino v. Citizens Utils. Co., 228 F.3d 154, 168 (2d Cir. 2000) (citation and quotation marks omitted).

Securities fraud actions are also subject to the

heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, as well as those of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). See Kalnit, 264 F.3d at 138; see also Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000).

To satisfy the pleading standards of Rule 9(b), the complaint must: (1) specify the statements that the plaintiff alleges were fraudulent, (2) identify the speaker, (3) indicate when and where the statements were made, and (4) explain why the statements were fraudulent. See Novak, 216 F.3d at 306. The PSLRA imposes similar heightened pleading standards when a plaintiff alleges a material misrepresentation or omission. See Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004).

b.    Fraudulent Statements Alleged in the Proposed Complaint

The Proposed Complaint alleges a series of fraudulent statements or omissions of material facts attributed to Defendants beginning on February 15, 2007 and continuing to February 12, 2008. Lead Plaintiffs allege that these statements overstated or misrepresented CSG's financial exposure, internal controls, and risk management practices. In particular, the Proposed Complaint specifies why the statements made on the following dates are fraudulent:

• February 15, 2007: Financial results for the fourth

-11-

quarter of 2006 and for the year 2006 and an associated earnings call.  (See Proposed Complaint ¶ 249.)

- March 26, 2007: Filing of form 20-F and annual report for the year 2006.  (See id. ¶ 256.)

- May 2, 2007: Financial results for the first quarter of 2007 and an associated earnings call.  (See id. ¶ 260.)

- August 2, 2007: Financial results for the second quarter of 2007 and an associated earnings call.  (See id. ¶ 264.)

- August 28, 2007: The SEC initiated a correspondence with CSG on this date, with a reply from CSG dated September 26, 2007; another letter from the SEC on October 16, 2007; and a final response by CSG on November 13, 2007. (See id. ¶ 270.)

- November 1, 2007: Financial results for the third quarter of 2007 and an associated earnings call. (See id. ¶¶ 273-74.)

- January 1, 2008: An interview of Dougan by Reuters.  (See id. ¶ 276.)

- February 12, 2008: Financial results for the fourth quarter of 2007 and for the year 2007 and an associated earnings call.  (See id. ¶ 279.)

The Court finds that these allegations satisfy the heightened pleading requirements of PLSRA and Rule 9(b)

-12-

because they sufficiently specify when the misstatement or omission of material fact was made, by whom, and why it was fraudulent.

c. Allegations Supporting Scienter

Lead Plaintiffs' largest hurdle is pleading sufficient scienter on the part of Defendants. Though the complaint contains much extraneous detail and irrelevant information, the Court, after careful consideration, is persuaded that within the remaining core of what is pertinent to their action, the Proposed Complaint sufficiently alleges scienter.

Scienter can be proven by alleging facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Motive and opportunity cannot be shown by alleging facts common to every corporation. Kalnit v. Eichler, 264 F.3d 131, 139-140 (2d Cir. 2001) (citations omitted). Here, Lead Plaintiffs have argued that executive compensation at CSG was closely tied to the valuation of certain assets and that this created inexorable conflicts of interest leading to the alleged fraud. Such a common corporate arrangement is not sufficient to support allegations of scienter as a matter of law. Id.

But the Proposed Complaint does contain allegations sufficient to show recklessness. Sufficient evidence of recklessness exists if the factual allegations demonstrate that Defendants (1) possessed knowledge of facts or access to information contradicting their public statements, or (2) "failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." Novak, 216 F.3d at 308.

In particular, Lead Plaintiffs allege through an array of "Confidential Witnesses" that CSG executives reviewed specific reports that should have alerted them to the problems they later allegedly misrepresented. Information presented through Confidential Witnesses in a complaint is allowed as long as the witnesses "are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possesses the information alleged." Id., 216 F.3d at 314. The Court is also mindful that when "plaintiffs contend that defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." Id. at 309.

The Court will summarize the allegations relevant to scienter provided through confidential witnesses, all of whom allegedly worked at CSG:

-14-

- Confidential Witness 5 was "a product controller from late 2006 to April 2008." (Proposed Complaint ¶ 173.) This witness is alleged to have prepared profit and loss reports on a daily, weekly, and monthly basis that contained data for assets used by CSG to manage risk. (Id. ¶ 173.) These reports circulated by email to Dougan and Fassbind. Beginning in November 2007, the reports began showing "significant losses" for these assets. (Id. ¶ 174.)

- Confidential Witness 6 was "an associate vice president in the valuation risk area in New York from 2005 to mid-2007." (Id. ¶ 175.) This witness prepared monthly and quarterly risk reports about pricing variances that were printed and bound before circulation. (Id. ¶ 179.) Fassbind received these reports. (Id. ¶ 180.)

- Confidential Witness 2 was a "director of market risk management in Credit Suisse's New York offices between 2004 and early 2007." (Id. ¶ 146.) Witness 2 drafted a memorandum about problems with CSG's investments in sub-prime mortgage assets and submitted the memorandum to Ervin at some point in 2005. This memorandum warned that these investments would cause a "big problem" for CSG. (Id. ¶ 151.)

- Confidential Witness 8 was a "Registered Sales Assistant

-15-

from early 2006 to October 2007. (<u>Id.</u> ¶ 188). This witness indicates that the criminal scheme of two traders in New York, Tzolov and Butler, was known to CSG management in late August or early September of 2007, thus raising legitimate questions as to whether Defendants' response to this information was sufficiently timely or diligent. (<u>Id.</u> ¶ 190.)

- Finally, Confidential Witness 1 was a "project manager and product controller from approximately 2001 through early 2007." (<u>Id.</u> ¶ 138.) She prepared four presentations about significant problems with assets CSG used to mitigate risk. (<u>Id.</u> ¶ 143.) These presentations were made to senior executives, including one who reported to Fassbind. (<u>Id.</u>)

In addition to the preceding information allegedly reviewed by the Defendants, Lead Plaintiffs allege widespread knowledge at CSG of the company's problems with valuation, risk management and internal controls. See <u>In re Alstom SA Sec. Litig.</u>, 406 F. Supp. 2d 433, 505 (S.D.N.Y. 2005) (allegations of "widespread internal knowledge" sufficient to support scienter). In particular, Confidential Witness 3, a "product controller" from late 2005 to mid-2007 (Proposed Complaint ¶ 63), notes that "everyone knew" of significant problems with CSG's risk management because millions of

dollars of hedges related to their mortgage investments were left uncompleted.  (Id. ¶ 158.)  Confidential Witness 4, "a Senior Derivatives Analyst" who worked at CSG from late 2007 to mid-2008 (id. ¶ 162), confirmed that "everyone" knew about problems with unconfirmed trades. (Id. ¶ 171.)

These witnesses have been described well enough to allow the Court to conclude that a person in the position of each of the witnesses would have had access to the information alleged.  The allegations of specific reports enable the Court to conclude that the Proposed Complaint sufficiently alleges that several key aspects of CSG's internal controls, risk management practices, and exposure to the United States sub-prime mortgage housing market were inadequate and that those running the company knew this information.  Though some of the allegations concern reports made before the Class Period, the problems identified -- concerning millions of dollars of unconfirmed trades and hedges and hundreds of material pricing variances -- persuade the Court that, when drawing all possible inferences in favor of the Lead Plaintiffs, this knowledge remained pertinent to the Defendants' public statements during the Class Period.  See In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 72 (2d Cir. 2001) (holding that pre-class period data is relevant when evaluating scienter allegations).  The Proposed Complaint alleges that

-17-

despite this knowledge Defendants stated that internal controls and risk management were functioning so well that CSG's exposure to the housing collapse was almost non-existent.

Further, the existence of these reports and of the problems identified by the Confidential Witnesses before and during the Class Period, coupled with the massive write downs made by CSG during the Class Period, suggest that analogous information was available to Defendants during the Class Period and that the Defendants had a duty to monitor similar reports during the Class Period.

Given the allegations by Lead Plaintiffs, the Court is persuaded that the Proposed Complaint alleges sufficient facts showing that the Defendants had direct knowledge of information contradicting their public statements or access to similar information they should have monitored. Accordingly, Lead Plaintiffs have properly pleaded scienter to support the five theories of fraud contained in the Proposed Complaint: schemes to overvalue assets, underestimate risk, hide sub-prime exposure, ignore the weaknesses of CSG's risk management and internal controls, and violate GAAP.

d. Transaction and Loss Causation

Lead Plaintiffs properly plead causation. The causation element of a securities fraud claim has two prongs: (1)

-18-

transaction causation and (2) loss causation. See Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95-96 (2d Cir. 2001). Lead plaintiffs do not explicitly plead facts establishing transaction causation, but in a case like this one, the Court may infer transaction causation from the Proposed Complaint. See, e.g., Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc., 967 F.2d 742, 747-48 (2d Cir. 1992). Lead Plaintiffs are advised to include an explicit allegation of transaction causation in the Proposed Complaint.

Loss causation is properly alleged because the Proposed Complaint identifies a series of misstatements made before Cornwell and Grady bought stock -- classifying some as a mixture of truthful partial disclosures and fraudulent statements -- and alleges a "statistically significant" drop in the stock price as the truth was revealed. (See Proposed Complaint ¶¶ 284; 290; 302; 309; 310.)[4]

e. Section 20(a) Control Person Claim

To state a § 20(a) control person claim, Lead Plaintiffs must allege (1) a primary violation of the securities laws by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was a culpable participant in the fraud. See S.E.C. v. First Jersey

---

[4] The Court also notes that the Proposed Complaint appears to lack sworn certifications from each Lead Plaintiff in accordance with 15 U.S.C.A. § 78u-4. The Proposed Complaint must include these certifications.

-19-

Sec., 101 F. 3d 1450, 1472 (2d Cir. 1996).  Unlike the fraud claim, a § 20(a) control person claim need be pleaded only in accordance with the pleading standard prescribed in Federal Rule of Civil Procedure Rule 8(a).  Plaintiffs must plead only "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570); see also Hall v. The Children's Place Retail Stores, Inc., 580 F. Supp. 2d 212, 234-35 (S.D.N.Y. 2008).

Lead plaintiffs have properly alleged a § 20(a) control person claim against Dougan, Fassbind, Ervin and Calello.  As detailed above, Lead Plaintiffs satisfy the first element of a control person claim because they sufficiently allege a predicate violation of § 10(b).  Therefore, because Lead Plaintiffs have alleged a primary violation based on statements contained in CSG's filings, press releases, and earnings calls throughout the Class Period, Lead Plaintiffs adequately allege the first element of the claim.

Further, the Amended Complaint meets the standards of "plausibility" in pleading that Dougan, Fassbind, Ervin and Calello had control and were culpable participants in the alleged fraud.  The Proposed Complaint alleges that these four individuals had "high-level positions" giving them "intimate knowledge of the false financial statements" at issue in this

-20-

case.   (Proposed Complaint ¶ 480.)  By virtue of their "direct and supervisory involvement in the day-to-day operations of" CSG, each is alleged to "have had the power to control or influence the particular transactions giving rise" to the fraud.   (Id. ¶ 382.)   Accordingly, the Proposed Complaint states a § 20(a) claim for control person liability as to each of the alleged control persons.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the Motion for Leave to File the [Proposed] Second Amended Complaint (the "Second Amended Complaint") (Docket No. 34) of plaintiffs Kevin Cornwell, John M. Grady, Erste-Sparinvest Kapitalanlagegesellchaft m.b.H., and Irish Life and Permanent plc ("Lead Plaintiffs") is DENIED in part and GRANTED in part; and it is further

**ORDERED** that Lead Plaintiffs are authorized to file a Second Amended Complaint in this action substantially in the form of the Proposed Complaint, taking into account the Court's discussion in the decision herein; and it is finally

**ORDERED** that the parties meet and confer and submit to the Court by February 24, 2010, a schedule for Lead Plaintiffs' filing of the Second Amended Complaint and defendants' answer to it.

**SO ORDERED.**

Dated:      New York, New York
            11 February 2010

                                    VICTOR MARRERO
                                    U.S.D.J.

-22-