**EXHIBIT A**

# ROBBINS GELLER RUDMAN & DOWD LLP

**Robbins Geller Rudman & Dowd LLP** (the "Firm") is a 180-lawyer firm with offices in San Diego, San Francisco, New York, Boca Raton, Washington, D.C., Philadelphia and Atlanta (www.rgrdlaw.com). The Firm is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. The Firm's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class-action lawsuits.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to the Firm from federal, state and local law enforcement and regulatory agencies, including dozens of former prosecutors and SEC attorneys. The Firm also includes more than 25 former federal and state judicial clerks.

The Firm currently represents more institutional investors, including public and multi-employer pension funds and domestic and international financial institutions, in securities and corporate litigation than any other firm in the United States.

The Firm is committed to practicing law with the highest level of integrity and in an ethical and professional manner. We are a diverse firm with lawyers and staff from all walks of life. Our lawyers and other employees are hired and promoted based on the quality of their work and their ability to enhance our team and treat others with respect and dignity. Evaluations are never influenced by one's background, gender, race, religion or ethnicity.

We also strive to be good corporate citizens and to work with a sense of global responsibility. Contributing to our communities and our environment is important to us. We raised hundreds of thousands of dollars in aid for the victims of Hurricane Katrina and we often take cases on a pro bono basis. We are committed to the rights of workers and to the extent possible, we contract with union vendors. We care about civil rights, workers' rights and treatment, workplace safety and environmental protection. Indeed, while we have built a reputation as the finest securities and consumer class action law firm in the nation, our lawyers have also worked tirelessly in less high-profile, but no less important, cases involving human rights.

## PRACTICE AREAS

### SECURITIES FRAUD

As recent corporate scandals demonstrate clearly, it has become all too common for companies and their executives – often with the help of their advisors, such as bankers, lawyers and accountants – to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Robbins Geller Rudman & Dowd LLP is the leader in the fight to provide investors with relief from corporate securities fraud. We utilize a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases.

The Firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Firm attorneys to lead roles in hundreds of complex class-action securities and other cases. In the securities area alone, the Firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors. Currently, Robbins Geller Rudman & Dowd LLP attorneys are lead or named counsel in approximately 500 securities class action or large institutional-investor cases. Some current and past cases include:

- ***In re Enron Corp. Sec. Litig.***, No. H-01-3624 (S.D. Tex.). Investors lost billions of dollars as a result of the massive fraud at Enron. In appointing Robbins Geller Rudman & Dowd LLP lawyers as sole lead counsel to represent the interests of Enron investors, the court found that the Firm's zealous prosecution and level of "insight" set it apart from its peers. Robbins Geller Rudman & Dowd LLP attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of ***$7.2 billion*** for the benefit of investors. ***This is the largest aggregate class action settlement not only in a securities class action, but in class action history***.

- ***In re UnitedHealth Grp. Inc. PSLRA Litig.***, No. 06-CV-1691 (D. Minn.). In the *UnitedHealth* case, Robbins Geller Rudman & Dowd LLP represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances. For example, in 2006, the issue of high-level executives backdating stock options made national headlines. During that time, many law firms, including Robbins Geller Rudman & Dowd LLP, brought shareholder derivative lawsuits against the companies' boards of directors for breaches of their fiduciary duties or for improperly granting backdated options. Rather than pursuing a shareholder derivative case, the Firm filed a securities fraud class action against the company on behalf of CalPERS. In doing so, Robbins Geller Rudman & Dowd LLP faced significant and unprecedented legal obstacles with respect to loss causation, *i.e.*, that defendants' actions were responsible for causing the stock losses. Despite these legal hurdles, Robbins Geller Rudman & Dowd LLP obtained an $895 million recovery on behalf of the UnitedHealth shareholders. Shortly after reaching the $895 million settlement with UnitedHealth, the remaining corporate defendants, including former CEO William A. McGuire, also settled. Mr. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders. The total recovery for the class was over $925 million, the largest stock option backdating recovery ever, and ***a recovery which is more than four times larger than the next largest***

*options backdating recovery*. Moreover, Robbins Geller Rudman & Dowd LLP obtained unprecedented corporate governance reforms, including election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms which tie pay to performance.

- *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.). Sole lead counsel Robbins Geller Rudman & Dowd LLP obtained a jury verdict on May 7, 2009, following a six-week trial in the Northern District of Illinois, on behalf of a class of investors led by plaintiffs PACE Industry Union-Management Pension Fund, the International Union of Operating Engineers, Local No. 132 Pension Plan, and Glickenhaus & Company. The jury determined that Household and the individual defendants made fraudulent misrepresentations concerning the company's predatory lending practices, the quality of its loan portfolio, and the company's financial results between March 23, 2001 and October 11, 2002. Although certain post-trial proceedings are ongoing, plaintiffs' counsel anticipate that the verdict will ultimately allow class members to recover in excess of $1 billion in damages. Since the enactment of the PSLRA in 1995, trials in securities fraud cases have been rare. According to published reports, only nine such cases have gone to verdict since the passage of the PSLRA.

- *Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)*, No. 03 Civ. 8269 (S.D.N.Y.). Robbins Geller Rudman & Dowd LLP attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001. The Firm's clients included major public institutions from across the country such as CalPERS, CalSTRS, the state pension funds of Maine, Illinois, New Mexico and West Virginia, union pension funds, and private entities such as AIG and Northwestern Mutual.  Robbins Geller Rudman & Dowd LLP attorneys recovered more than $650 million for their clients on the May 2000 and May 2001 bond offerings (the primary offerings at issue), substantially more than they would have recovered as part of the class.

- *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-575 (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Robbins Geller Rudman & Dowd LLP obtained a recovery of $600 million for investors. On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund, the Firm aggressively pursued class claims and won notable courtroom victories, including a favorable decision on defendants' motion to dismiss. *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006). At the time, the $600 million settlement was the tenth-largest settlement in the

history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit.

- ***AOL Time Warner Cases I & II***, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles County). Robbins Geller Rudman & Dowd LLP represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online. Robbins Geller Rudman & Dowd LLP attorneys exposed a massive and sophisticated accounting fraud involving America Online's e-commerce and advertising revenue. After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial. The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- ***In re HealthSouth Corp. Sec. Litig.***, No. CV-03-BE-1500-S (N.D. Ala.). As court-appointed co-lead counsel, Robbins Geller Rudman & Dowd LLP attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs. The settlement against HealthSouth represents one of the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the PSLRA. Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA. HealthSouth and its financial advisors perpetrated one of the largest and most pervasive frauds in the history of U.S. healthcare, prompting Congressional and law enforcement inquiry and resulting in guilty pleas of 16 former HealthSouth executives in related federal criminal prosecutions.

- ***In re Dynegy Inc. Sec. Litig.***, No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller Rudman & Dowd LLP attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Given Dynegy's limited ability to pay, Robbins Geller Rudman & Dowd LLP attorneys structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller Rudman & Dowd LLP and The Regents believe will benefit all of Dynegy's stockholders.

- ***In re Qwest Commc'ns Int'l, Inc. Sec. Litig.***, No. 01-cv-1451 (D. Colo.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel for a class of investors that purchased Qwest securities. In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice. After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC. In 2008, Robbins Geller Rudman & Dowd LLP attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

- ***In re AT&T Corp. Sec. Litig.***, MDL No. 1399 (D.N.J.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million. In granting approval of the settlement, the court stated the following about the Robbins Geller Rudman & Dowd LLP attorneys handling the case:

  > Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

  *In re AT&T Corp. Sec. Litig.*, MDL No. 1399, 2005 U.S. Dist. LEXIS 46144, at *28-*29 (D.N.J. Apr. 25, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

- ***In re Dollar General Corp. Sec. Litig.***, No. 01-CV-00388 (M.D. Tenn.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel in this case in which the Firm recovered $172.5 million for investors. The *Dollar General* settlement was the largest shareholder class action recovery ever in Tennessee.

- ***Carpenters Health & Welfare Fund v. Coca-Cola Co.***, No. 00-CV-2838 (N.D. Ga.). As co-lead counsel representing Coca-Cola shareholders, Robbins Geller Rudman & Dowd LLP attorneys obtained a recovery of $137.5 million after nearly eight years of litigation. Robbins Geller Rudman & Dowd LLP attorneys traveled to three continents to uncover the evidence that ultimately resulted in the settlement of this hard-fought litigation. The case concerned Coca-Cola's shipping of excess concentrate at the end of financial reporting periods for the sole purpose of meeting analyst earnings expectations, as well as the company's failure to properly account for certain impaired foreign bottling assets.

- ***Schwartz v. TXU Corp.***, No. 02-CV-2243 (N.D. Tex). As co-lead counsel, Robbins Geller Rudman & Dowd LLP attorneys obtained a recovery of over $149 million for a class of purchasers of TXU securities. The recovery compensated class members for damages they incurred as a result of their purchases of TXU securities at inflated prices. Defendants had inflated the price of these securities by concealing the fact that TXU's operating earnings were declining due to a deteriorating gas pipeline and the failure of the company's European operations.

- ***Thurber v. Mattel, Inc.***, No. 99-CV-10368 (C.D. Cal.). Robbins Geller Rudman & Dowd LLP attorneys served as co-lead counsel for a class of investors who purchased Mattel common stock. When the shareholders approved Mattel's acquisition of The Learning Company, they were misled by defendants' false statements regarding the financial condition of the acquired company. Within months of the close of the transaction, Mattel disclosed that The Learning Company had incurred millions in losses, and that instead of adding to Mattel's earnings, earnings would be far less than previously stated. After thorough discovery, Robbins Geller Rudman & Dowd LLP attorneys negotiated a settlement of $122 million plus corporate governance changes.

- ***Brody v. Hellman (U.S. West Dividend Litigation)***, No. 00-CV-4142 (Dist. Ct. for the City & Cty. of Denver, Colo.). Robbins Geller Rudman & Dowd LLP attorneys were court-appointed counsel for the class of former stockholders of U.S. West, Inc. who sought to recover a dividend declared by U.S. West before its merger with Qwest. The merger closed before the record and payment dates for the dividend, which Qwest did not pay following the merger. The case was aggressively litigated and the plaintiffs survived a motion to dismiss, two motions for summary judgment and successfully certified the class over vigorous opposition from defendants. In certifying the class, the court commented, "Defendants do not contest that Plaintiffs' attorneys are extremely well qualified to represent the putative class. This litigation has been ongoing for four years; in that time Plaintiffs' counsel has proven that they are more than adequate in ability, determination, and resources to represent the putative class." The case settled for $50 million on the day before trial was scheduled to commence. At

the August 30, 2005 final approval hearing relating to the settlement, the court noted that the case "was litigated by extremely talented lawyers on both sides" and that the settlement was "a great result." In describing the risk taken by the Firm and its co-counsel, the court noted, "There wasn't any other lawyer[] in the United States that took the gamble that these people did. Not one other firm anywhere said I'm willing to take that on. I'll go five years. I'll pay out the expenses. I'll put my time and effort on the line." In discussing the difficulties facing the Firm in this case, the court said, "There wasn't any issue that wasn't fought. It took a great deal of skill to get to the point of trial." In concluding, the court remarked that the class was "fortunate they had some lawyers that had the guts to come forward and do it."

Robbins Geller Rudman & Dowd LLP's Securities Department includes dozens of former federal and state prosecutors and trial attorneys. The Firm's securities practice is also strengthened by the existence of a strong Appellate Department, whose collective work has established numerous legal precedents. The Securities Department also utilizes an extensive group of in-house economic and damage analysts, investigators and forensic accountants to aid in the prosecution of complex securities issues.

## CORPORATE GOVERNANCE

While obtaining monetary recoveries for our clients is our primary focus, Robbins Geller Rudman & Dowd LLP attorneys have also been at the forefront of securities fraud *prevention*. The Firm's prevention efforts are focused on creating important changes in corporate governance, either as part of the global settlements of derivative and class cases or through court orders. Recent cases in which such changes were made include:

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.). In the *UnitedHealth* case, our client, CalPERS, obtained sweeping corporate governance improvements, including the election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercises, as well as executive compensation reforms which tie pay to performance. These corporate governance reforms were obtained in addition to a $925 million cash recovery for UnitedHealth shareholders, the largest stock option backdating recovery ever. The recovery included $30 million paid to the class by the CEO out of his own pocket.

- *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.*, No. H-02-0410 (S.D. Tex.). Groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; and creation and appointment of lead independent director with authority to set up board meetings.

- ***In re Sprint Corp. S'holder Litig.***, No. 00-CV-230077 (Mo. Cir. Ct., Jackson County). In connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent board of directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis.

- ***Teachers' Ret. Sys. of La. v. Occidental Petroleum Corp.***, No. BC185009 (Cal. Super. Ct., Los Angeles County). As part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee.

- ***Barry v. E*Trade Grp., Inc.***, No. CIV419804 (Cal. Super. Ct., San Mateo County). In connection with settlement of derivative suit, excessive compensation of the company's CEO was eliminated (reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant; and elimination of future stock option grants) and important governance enhancements were obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee.

Through these efforts, Robbins Geller Rudman & Dowd LLP has been able to create substantial shareholder guarantees to prevent future securities fraud. The Firm works closely with noted corporate governance consultant Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

## SHAREHOLDER DERIVATIVE LITIGATION

The Firm's shareholder derivative practice is focused on ***preserving*** corporate assets, ***restoring*** accountability, ***improving*** transparency, ***strengthening*** the shareholder franchise and ***protecting*** long-term investor value. Often brought by large institutional investors, these actions typically address executive malfeasance that resulted in violations of the nation's securities, environmental, labor, health & safety and wage & hour laws, coupled with self-dealing. Corporate governance therapeutics recently obtained in the following actions were valued by the market in the billions of dollars:

- ***Unite Nat'l Ret. Fund v. Watts (Royal Dutch Shell Derivative Litigation)***, No. 04-CV-3603 (D.N.J.). Successfully prosecuted and settled a shareholder derivative action on behalf of the London-based Royal Dutch Shell plc, achieving very unique and quite valuable transatlantic corporate governance reforms. The suit, filed June 25, 2004, charged that misconduct by executives and board members that resulted in four separate misstatements

of Shell's oil and gas reserves – which collectively erased billions of gallons of previously improperly reported "proven reserves" – was due in large part to inadequate internal controls. To settle the derivative litigation, the complicit executives agreed to:

- Improved Governance Standards: The Dutch and English Company committed to changes that extend well beyond the corporate governance requirements of the New York Stock Exchange listing requirements, while preserving the important characteristics of Dutch and English corporate law.

- Board Independence Standards: Shell agreed to a significant strengthening of the company's board independence standards and a requirement that a majority of its board members qualify as independent under those rigorous standards.

- Stock Ownership Requirements: The company implemented enhanced director stock ownership standards and adopted a requirement that Shell's officers or directors hold stock options for two years before exercising them.

- Improved Compensation Practices: Cash incentive compensation plans for Shell's senior management must now be designed to link pay to performance and prohibit the payment of bonuses based on reported levels of hydrocarbon reserves.

- Full Compliance with U.S. GAAP: In addition to international accounting standards, Shell agreed to comply in all respects with the Generally Accepted Accounting Principles of the United States.

- ***Alaska Electrical Pension Fund v. Brown (EDS Derivative Litigation)***, No. 6:04-CV-0464 (E.D. Tex.). Prosecuted shareholder derivative action on behalf of Electronic Data Systems Corporation alleging EDS's senior executives breached their fiduciary duties by improperly using percentage-of-completion accounting to inflate EDS's financial results, by improperly recognizing hundreds of millions of dollars in revenue and concealing millions of dollars in losses on its contract with the U.S. Navy Marine Corps, by failing in their oversight responsibilities, and by making and/or permitting material, false and misleading statements to be made concerning EDS's business prospects, financial condition and expected financial results in connection with EDS's contracts with the U.S. Navy Marine Corps and WorldCom. In settlement of the action, EDS agreed, among other provisions, to:

- limits on the number of current EDS employees that may serve as board members and limits on the number of non-independent directors;

- limits on the number of other boards on which independent directors may serve;

- requirements for the compensation and benefits committee to retain an independent expert consultant to review executive officer compensation;

- formalize certain responsibilities of the audit committee in connection with its role of assisting the board of directors in its oversight of the integrity of the company's financial statements;

- a requirement for new directors to complete an orientation program, which shall include information about principles of corporate governance;

- a prohibition on repricing stock options at a lower exercise price without shareholder approval;

- change of director election standards from a plurality standard to a majority vote standard;

- change from classified board to annual election of directors;

- elimination of all supermajority voting requirements;

- a termination of rights plan; and

- adopt corporate governance guidelines, including: requirement that a substantial majority of directors be outside, independent directors with no significant financial or personal tie to EDS; that all board committees be composed entirely of independent directors; and other significant additional practices and policies to assist the board in the performance of its duties and the exercise of its responsibilities to shareholders.

- ***In re BP p.l.c. Derivative Litig.***, No. 3AN-06-11929CI (Alaska Super. Ct.). Successfully prosecuted a shareholder derivative action on behalf of the London-based BP plc. The action, filed in late 2006, arose out of the misconduct of certain of BP's officers and directors whose gross dereliction of duty and failure to oversee BP's U.S. operations exposed the company to significant criminal and civil liability in connection with the 2005 Texas City refinery explosion (where 15 workers were killed and 170 more were injured), the 2006 Prudhoe Bay oil spill (where 200,000 gallons of crude were spilled on the Alaska tundra) and the Federal Commodities Trade Commission energy trading manipulation charges (where BP and its traders were charged with intentionally inflating the price of propane, the primary heating source in the northeastern United States). BP ultimately pled guilty to several felony

and misdemeanor criminal charges, paid over $373 million in criminal fines and penalties and agreed to serve five years felony corporate probation, and paid over $2 billion in civil damages for its failure to properly fund or oversee maintenance and operations at its U.S. facilities. As part of the settlement of the shareholder derivative action, BP agreed to:

- Improved Operational Safety Oversight in the United States: BP adopted a six-point plan to enhance the operational integrity and safety oversight function; formed two new board-level operations committees to facilitate the flow of important safety and operations information; put in place a new management team in Alaska; and improved oversight responsibility over compliance, safety and operational integrity at BP's U.S. operations.

- Increased Shareholder Input: BP agreed to hold annual meetings with the company's top 20 shareholders – including ADR holders – to engage in discussions concerning BP's ongoing commitment to good corporate governance.

- Site Inspections: BP agreed to facilitate regular visits for BP board members to the company's operational sites around the globe.

- Safety as an Executive Compensation Metric: BP agreed to include operational health, safety and environmental performance in the principles used to calculate performance pay for executives.

- Strengthened the Shareholder Voting Franchise: BP agreed to take measures to improve shareholder access to the proxy, webcast the annual shareholder meeting and remove impediments that prevent ADR holders from putting up resolutions at the annual meeting.

Robbins Geller Rudman & Dowd LLP lawyers are also currently prosecuting shareholder derivative actions against executives at several companies charged with violating the Foreign Corrupt Practices Act and have obtained an injunction preventing the recipient of the illegally paid bribe payments at one prominent international arms manufacturer from removing those funds from the United States while the action is pending. In another ongoing action, Robbins Geller Rudman & Dowd LLP lawyers are prosecuting audit committee members who knowingly authorized the payment of illegal "security payments" to a terrorist group though expressly prohibited by U.S. law. As artificial beings, corporations only behave – or misbehave – as their directors and senior executives let them. So they are only as valuable as their corporate governance. Shareholder derivative litigation enhances value by allowing shareholder-owners to replace chaos and self-dealing with accountability.

**CORPORATE TAKEOVER LITIGATION**

Robbins Geller Rudman & Dowd LLP has earned a reputation as the leading law firm in representing shareholders in corporate takeover litigation. Through its aggressive efforts in prosecuting corporate takeovers, the Firm has secured for shareholders billions of dollars of additional consideration as well as beneficial changes for shareholders in the context of mergers and acquisitions.

The Firm regularly prosecutes merger and acquisition cases post-merger, often through trial, to maximize the benefit for its shareholder class. Some of these cases include:

- ***In re Kinder Morgan, Inc. S'holders Litig.***, No. 06-C-801 (Kan. Dist. Ct., Shawnee County). In the largest recovery ever for corporate takeover litigation, the firm negotiated a settlement fund of $200 million in 2010. As co-lead counsel, the Firm represented former shareholders for Kinder Morgan, Inc., challenging a management-led buyout announced in 2006. Following settlement, the court noted: "Throughout this litigation, the Court has found that Lead Plaintiff's Counsel have zealously rendered legal services in a professional and skillful manner. Moreover, it is important to recognize that this action was vigorously defended by attorneys with substantial experience and expertise in complex litigation, including class actions. Despite facing significant factual and legal hurdles, Lead Plaintiff's Counsel were ultimately successful in negotiating a large settlement on behalf of the Class Members."

- ***In re Chaparral Resources, Inc. S'holders Litig.***, No. 2633-VCL (Del. Ch.). After a full trial and a subsequent mediation before the Delaware Chancellor, the Firm obtained a common fund settlement of $41 million (or 45% increase above merger price) for both class and appraisal claims. The Delaware Vice Chancellor who presided over the trial noted that "the performance was outstanding, and frankly, without the efforts of counsel, nothing would have been achieved. The class would have gotten zero. I don't think that can be more clear."

- ***In re TD Banknorth S'holders Litig.***, No. 2557-VCL (Del. Ch.). After objecting to a modest recovery of just a few cents per share, the Firm took over the litigation and obtained a common fund settlement of $50 million. The Delaware Vice Chancellor who presided over the case expressly noted that "through the sheer diligence and effort of plaintiffs' counsel," the Firm's efforts "resulted in substantial awards for plaintiffs, after overcoming serious procedural and other barriers."

- ***In re eMachines, Inc. Merger Litig.***, No. 01-CC-00156 (Cal. Super. Ct., Orange County). After four years of litigation, the Firm secured a common fund settlement of $24 million on the brink of trial.

- ***In re Prime Hospitality, Inc. S'holders Litig.***, No. 652-N (Del. Ch.). The Firm objected to a settlement that was unfair to the class and proceeded to

litigate breach of fiduciary duty issues involving a sale of hotels to a private equity firm. The litigation yielded a common fund of $25 million for shareholders. The Delaware Chancellor presiding over the case noted that "had it not been for the intervention of [Robbins Geller Rudman & Dowd LLP] . . . there would not have been a settlement that would have generated actual cash for the shareholders. . . . That's quite an achievement . . . ."

- ***In re Dollar Gen. Corp. S'holder Litig.***, No. 07MD-1 (Tenn. Cir. Ct., Davidson County). As lead counsel, the Firm secured a recovery of up to $57 million in cash for former Dollar General shareholders on the eve of trial.

- ***In re UnitedGlobalCom, Inc. S'holder Litig.***, No. 1012-VCS (Del. Ch.). The Firm secured a common fund settlement of $25 million just weeks before trial.

Robbins Geller Rudman & Dowd LLP has also obtained significant benefits for shareholders, including increases in consideration and significant improvements to merger terms. Some of these cases include:

- ***Harrah's Entertainment***, No. A529183 (Nev. Dist. Ct., Clark County). The Firm's active prosecution of the case on several fronts, both in federal and state court, assisted Harrah's shareholders in securing an additional $1.65 billion in merger consideration.

- ***In re Chiron S'holder Deal Litig.***, No. RG 05-230567 (Cal. Super. Ct., Alameda County). The Firm's efforts helped to obtain an additional $800 million in increased merger consideration for Chiron shareholders.

- ***In re PeopleSoft, Inc. S'holder Litig.***, No. RG-03100291 (Cal. Super. Ct., Alameda County). The Firm successfully objected to a proposed compromise of class claims arising from takeover defenses by PeopleSoft, Inc. to thwart an acquisition by Oracle Corp., resulting in shareholders receiving an increase of over $900 million in merger consideration.

- ***ACS S'holder Litig.***, No. CC-09-07377-C (Tex. County Ct., Dallas County). The Firm forced ACS's acquirer, Xerox, to make significant concessions by which shareholders would not be locked out of receiving more money from another buyer. The *New York Times* Deal Professor deemed this result both "far reaching" and "unprecedented."

## OPTIONS BACKDATING LITIGATION

As has been widely reported in the media, the stock options backdating scandal suddenly engulfed hundreds of publicly traded companies throughout the country. Robbins Geller Rudman & Dowd LLP was at the forefront of investigating and prosecuting options backdating derivative and securities cases. Robbins Geller Rudman & Dowd LLP lawyers have recovered over $1 billion in damages on behalf of injured companies and

shareholders. Robbins Geller Rudman & Dowd LLP attorneys have served as lead counsel in several large stock option backdating actions, including actions involving Affiliated Computer Services, Extreme Networks, Inc., KLA-Tencor Corp., KB Home, Inc., Marvell Technology Group, Inc., McAfee, Inc. and UnitedHealth Group, Inc.

- *In re PMC-Sierra, Inc. Derivative Litig.*, No. C-06-05330 (N.D. Cal.). As lead counsel for lead plaintiff, Robbins Geller Rudman & Dowd LLP obtained substantial relief for nominal party PMC-Sierra in the form of extensive corporate governance measures, including improved stock option granting practices and procedures and an executive compensation "claw-back" in the event of a future restatement.

- *In re KLA-Tencor Corp. S'holder Derivative Litig.*, No. C-06-03445 (N.D. Cal.). After successfully opposing the special litigation committee of the board of directors' motion to terminate the derivative claims, Robbins Geller Rudman & Dowd LLP recovered $43.6 million in direct financial benefits for KLATencor, including $33.2 million in cash payments by certain former executives and their directors' and officers' insurance carriers.

- *In re Marvell Technology Grp. Ltd. Derivative Litig.*, No. C-06-03894 (N.D. Cal.). In this stock option backdating derivative action, Robbins Geller Rudman & Dowd LLP recovered $54.9 million in financial benefits, including $14.6 million in cash, for Marvell, in addition to extensive corporate governance reforms related to Marvell's stock option granting practices, board of directors' procedures and executive compensation. At the time, the recovery in Marvell represented one of the largest of its kind in shareholder derivative actions.

- *In re KB Home S'holder Derivative Litig.*, No. 06-CV-05148 (C.D. Cal.). Robbins Geller Rudman & Dowd LLP served as co-lead counsel for the plaintiffs and recovered more than $31 million in financial benefits, including $21.5 million in cash, for KB Home, plus substantial corporate governance enhancements relating to KB Home's stock option granting practices, director elections and executive compensation practices.

- *In re Affiliated Computer Servs. Derivative Litig.*, No. 06-CV-1110 (N.D. Tex.). Robbins Geller Rudman & Dowd LLP served as counsel for the federal plaintiffs. After defeating the defendants' dismissal motions and opposing the special litigation committee of the board of directors' motion to terminate the federal derivative claims, Robbins Geller Rudman & Dowd LLP recovered $30 million in cash for Affiliated Computer Services. This amount exceeded the cash recovery anticipated for the company in the settlement negotiated by the special litigation committee in a parallel state court stock option backdating proceeding.

- *In re Ditech Networks, Inc. Derivative Litig.*, No. C-06-05157 (N.D. Cal.). Robbins Geller Rudman & Dowd LLP served as co-lead counsel for plaintiffs

in this stock option backdating derivative action. The prosecution and settlement of the action resulted in the adoption of substantial corporate governance measures designed to enhance Ditech Network's stock option granting practices and improve the overall responsiveness of the Ditech Networks' board to shareholder concerns.

- ***In re F5 Networks, Inc. Derivative Litig.***, No. 81817-7 (Wash. Sup. Ct.). Robbins Geller Rudman & Dowd LLP represented the plaintiffs in this precedent-setting stock option backdating derivative action. Adopting the plaintiffs' arguments, the Washington Supreme Court unanimously held that shareholders of Washington corporations need not make a pre-suit litigation demand upon the board of directors where such a demand would be a futile act. The Washington Supreme Court also adopted Delaware's less-stringent pleading standard for establishing backdating and futility of demand in a shareholder derivative action, as urged by the plaintiffs.

### INSURANCE

Fraud and collusion in the insurance industry by executives, agents, brokers, lenders and others is one of the most costly crimes in the United States. Some experts have estimated the annual cost of white collar crime in the insurance industry to be over $120 billion nationally. Recent legislative proposals seek to curtail anti-competitive behavior within the industry. However, in the absence of comprehensive regulation, Robbins Geller Rudman & Dowd LLP has played a critical role as private attorney general in protecting the rights of consumers against insurance fraud and other unfair business practices within the insurance industry.

Robbins Geller Rudman & Dowd LLP attorneys were among the first to expose illegal and improper bid-rigging and kickbacks between insurance companies and brokers. The Firm is a leader in representing businesses, individuals, school districts, counties and the State of California in numerous actions in state and federal courts nationwide to stop these practices. To date, the Firm has helped recover over $200 million on behalf of insureds.

Robbins Geller Rudman & Dowd LLP attorneys have long been at the forefront of litigating race discrimination issues within the life insurance industry. For example, the Firm has fought the practice by certain insurers of charging African-Americans and other people of color more for life insurance than similarly situated Caucasians. The Firm recovered over $400 million for African-Americans and other minorities as redress for civil rights abuses, including landmark recoveries in *McNeil v. American General Life & Accident Insurance Company*; *Thompson v. Metropolitan Life Insurance Company*; and *Williams v. United Insurance Company of America*.

The Firm's attorneys fight on behalf of elderly victims targeted for the sale of deferred annuity products with hidden sales loads and illusory bonus features. Sales agents for life insurance companies such as Allianz Life Insurance Company of North America, Midland National Life Insurance Company, and National Western Life Insurance Company have targeted senior citizens for these annuities with lengthy investment horizons and high sales

commissions. The Firm has recovered millions of dollars for elderly victims and seeks to ensure that senior citizens are afforded full and accurate information regarding deferred annuities.

Robbins Geller Rudman & Dowd LLP attorneys also stopped the fraudulent sale of life insurance policies based on misrepresentations about how the life insurance policy would perform, the costs of the policy, and whether premiums would "vanish." Purchasers were also misled about the financing of a new life insurance policy, falling victim to a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new policy.

- **Brokerage "Pay to Play" Cases**. On behalf of individuals, governmental entities, businesses, and non-profits, Robbins Geller Rudman & Dowd LLP has sued the largest commercial and employee benefit insurance brokers and insurers for unfair and deceptive business practices. While purporting to provide independent, unbiased advice as to the best policy, the brokers failed to adequately disclose that they had entered into separate "pay to play" agreements with certain third-party insurance companies. These agreements provide additional compensation to the brokers based on such factors as profitability, growth and the volume of insurance that they place with a particular insurer, and are akin to a profit-sharing arrangement between the brokers and the insurance companies. These agreements create a conflict of interest since the brokers have a direct financial interest in selling their customers only the insurance products offered by those insurance companies with which the brokers have such agreements.

  Robbins Geller Rudman & Dowd LLP attorneys were among the first to uncover and pursue the allegations of these practices in the insurance industry in both state and federal courts. On behalf of the California Insurance Commissioner, the Firm brought an injunctive case against the biggest employee benefit insurers and local San Diego brokerage, ULR, which resulted in major changes to the way they did business. The Firm also sued on behalf of the City and County of San Francisco to recover losses due to these practices. Finally, Robbins Geller Rudman & Dowd LLP represents a putative nationwide class of individuals, businesses, employers, and governmental entities against the largest brokerage houses and insurers in the nation. To date, the Firm has obtained over $200 million on behalf of policyholders and enacted landmark business reforms.

- **Discriminatory Credit Scoring and Redlining Cases**. Robbins Geller Rudman & Dowd LLP attorneys have prosecuted cases concerning countrywide schemes of alleged discrimination carried out by Nationwide, Allstate, and other insurance companies against African-American and other persons of color who are purchasers of homeowner and automobile insurance policies. Such discrimination includes alleged redlining and the improper use of "credit scores," which disparately impact minority

communities. Plaintiffs in these actions have alleged that the insurance companies' corporate-driven scheme of intentional racial discrimination includes refusing coverage and/or charging them higher premiums for homeowners and automobile insurance. On behalf of the class of aggrieved policyholders, the Firm has recovered over $400 million for these predatory and racist policies.

- **Senior Annuities**. Insurance companies and their agents target senior citizens for the sale of long-term deferred annuity products and misrepresent or otherwise fail to disclose the extremely high costs, including sales commissions. These annuities and their high costs are particularly harmful to seniors because they do not mature for 15 or 20 years, often beyond the elderly person's life expectancy. Also, they carry exorbitant surrender charges if cashed in before they mature. As a result, the annuitant's money is locked up for years, and the victims or their loved ones are forced to pay high surrender charges if they need to get it out early. Nevertheless, many companies and their sales agents intentionally target the elderly for their deferred annuity products, holding seminars in retirement centers and nursing homes, and through pretexts such as wills and estate planning or financial advice. The Firm has filed lawsuits against a number of life insurance companies, including Allianz Life Insurance Company of North America, Midland National Life Insurance Company, and Jackson National Insurance Company, in connection with the marketing and sales of deferred annuities to senior citizens. We are investigating similar practices by other companies.

- **State Farm**. State Farm and other automobile insurance companies in California have illegally charged monthly policyholders more premiums than they are required to pay. Because automobile insurance is required under law, it is closely regulated. State Farm and others bring in millions of dollars each year by concealing up front that policyholders must pay an extra charge if they opt for a monthly plan, and they later tack on the extra charge without revealing it as a premium as they must do under state law. Robbins Geller Rudman & Dowd LLP attorneys have fought this practice, recovering millions of dollars on behalf of policyholders.

## ANTITRUST

Robbins Geller Rudman & Dowd LLP's antitrust practice focuses on representing businesses and individuals who have been the victims of price-fixing, unlawful monopolization, market allocation, tying and other anti-competitive conduct. The Firm has taken a leading role in many of the largest federal and state price-fixing, monopolization, market allocation and tying cases throughout the United States.

- ***In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.***, 05 MDL No. 1720 (E.D.N.Y.). Robbins Geller Rudman & Dowd LLP attorneys are co-lead counsel in one of the country's largest antitrust actions,

in which merchants allege Visa, MasterCard and their member banks, including Bank of America, Citibank, JPMorgan Chase, Capital One, Wells Fargo and HSBC, among others, have collectively imposed and set the level of interchange fees paid by merchants on each Visa and MasterCard credit and debit transaction, in violation of federal and state antitrust laws. Fact discovery has closed, and plaintiffs' motion for class certification and the defendants' motions to dismiss are under submission.

- ***In re Currency Conversion Fee Antitrust Litig.***, 01 MDL No. 1409 (S.D.N.Y.). Robbins Geller Rudman & Dowd LLP recovered $336 million for credit and debit cardholders in this multi-district litigation in which the Firm served as co-lead counsel. Plaintiffs alleged that Visa and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to U.S. cardholders, and failed to disclose adequately the fee in violation of federal law. In October 2009, the trial court granted final approval of the $336 million settlement and described the Firm as a "highly competent and experienced" law firm. The court specifically commented: "Class Counsel provided extraordinarily high-quality representation. This case raised a number of unique and complex legal issues including the effect of arbitration clauses on consumer antitrust class actions, and collusive activity in the context of joint ventures." The court further praised the Firm as "indefatigable" and noted that the Firm's lawyers "represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar." The trial court's final approval decision is currently on appeal.

- ***The Apple iPod iTunes Antitrust Litig.***, No. C-05-00037-JW (N.D. Cal.). Robbins Geller Rudman & Dowd LLP attorneys are co-lead counsel for a proposed class of iPod purchasers. Plaintiffs assert that Apple illegally maintained its monopolies in the digital music and portable player markets by designing and revising its products to render any competing player or digital music incompatible. This conduct locked Apple's competitors out of the market and allowed Apple to inflate the price at which iPods were sold. Discovery is ongoing.

- ***In re Aftermarket Automotive Lighting Products Antitrust Litig.***, 09 MDL No. 2007 (C.D. Cal.). Robbins Geller Rudman & Dowd LLP attorneys are co-lead counsel in this multi-district litigation in which plaintiffs allege that defendants conspired to fix prices and allocate markets for automotive lighting products. Discovery is ongoing.

- ***Dahl v. Bain Capital Partners, LLC***, No. 07-cv-12388-EFH (D. Mass). Robbins Geller Rudman & Dowd LLP attorneys are co-lead counsel on behalf of shareholders in this action against the nation's largest private equity firms who have colluded to restrain competition to suppress prices paid to

shareholders of public companies in connection with leveraged buyouts. The trial court denied the defendants' motion to dismiss and discovery is ongoing.

- *In re Digital Music Antitrust Litig.*, 06 MDL No. 1780 (S.D.N.Y.). Robbins Geller Rudman & Dowd LLP attorneys are co-lead counsel in an action against the major music labels (Sony-BMG, EMI, Universal and Warner Music Group) in a case involving music that can be downloaded digitally from the Internet. Plaintiffs allege that defendants restrained the development of digital downloads and agreed to fix the distribution price of digital downloads at supracompetitive prices. Plaintiffs also allege that as a result of defendants' restraint of the development of digital downloads, and the market and price for downloads, defendants were able to maintain the prices of their CDs at supracompetitive levels. The Second Circuit Court of Appeals recently upheld plaintiffs' complaint, reversing the trial court's dismissal.

- *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.). Robbins Geller Rudman & Dowd LLP attorneys served as co-lead counsel in this case in which investors alleged that NASDAQ market-makers set and maintained artificially wide spreads pursuant to an industry-wide conspiracy. After three and one half years of intense litigation, the case settled for a total of $1.027 billion, at the time the largest ever antitrust settlement. The court commended counsel for its work, saying:

  > Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

- *Hall v. NCAA (Restricted Earnings Coach Antitrust Litigation)*, No. 94-2392 (D. Kan.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the National Collegiate Athletic Association illegally fixed their compensation by instituting the "restricted earnings coach" rule. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc. (Carbon Fiber Antitrust Litigation)*, No. CV-99-7796 (C.D. Cal.). Robbins Geller Rudman & Dowd LLP attorneys were co-lead counsel (with one other firm) in this consolidated class action in which a class of purchasers alleged that the major producers of carbon fiber fixed its price from 1993 to 1999. The case settled for $67.5 million.

- ***In re Carbon Black Antitrust Litig.***, MDL No. 1543 (D. Mass.). Robbins Geller Rudman & Dowd LLP attorneys recovered $20 million for the class in this multi-district litigation in which the Firm served as co-lead counsel. Plaintiffs purchased carbon black from major producers that unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks and other products, from 1999 to 2005.

- ***In re Dynamic Random Access Memory (DRAM) Antitrust Litig.***, 02 MDL No. 1486 (N.D. Cal.). Robbins Geller Rudman & Dowd LLP attorneys served on the executive committee in this multi-district class action in which a class of purchasers of dynamic random access memory (or DRAM) chips alleged that the leading manufacturers of semiconductor products fixed the price of DRAM chips from the fall of 2001 through at least the end of June 2002. The case settled for more than $300 million.

- ***Microsoft I-V Cases***, JCCP No. 4106 (Cal. Super. Ct., San Francisco County). Robbins Geller Rudman & Dowd LLP attorneys served on the executive committee in these consolidated cases in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets. In a settlement approved by the court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

## CONSUMER FRAUD

In our consumer-based economy, working families who purchase products and services must receive truthful information so they can make meaningful choices about how to spend their hard-earned money. When financial institutions and other corporations deceive consumers or take advantage of unequal bargaining power, class action suits provide, in many instances, the only realistic means for an individual to right a corporate wrong.

Robbins Geller Rudman & Dowd LLP attorneys represent consumers around the country in a variety of important, complex class actions. Our attorneys have taken a leading role in many of the largest federal and state consumer fraud, environmental, human rights and public health cases throughout the United States. The Firm is also actively involved in many cases relating to banks and the financial services industry, pursuing claims on behalf of individuals victimized by abusive telemarketing practices, abusive mortgage lending practices, market timing violations in the sale of variable annuities, and deceptive consumer credit lending practices in violation of the Truth-In-Lending Act. Below are a few representative samples of our robust, nationwide consumer practice.

- ***Bank Overdraft Fees Litigation***. The banking industry charges consumers exorbitant amounts for "overdraft" of their checking accounts, even if the customer did not authorize a charge beyond the available balance and even if the account would not have been overdrawn had the transactions been

ordered chronologically as they occurred – that is, banks reorder transactions to maximize such fees. In fact, it is reported that Americans spent more money on bank overdraft fees than on vegetables last year. The Firm has brought lawsuits against major banks to stop this practice and recover the hundreds of millions, if not billions, of dollars in overdraft fees. We are investigating other banks that engage in this practice.

- ***Vertrue Sales and Marketing Practices Litigation***. Telemarketing companies use a deceptive telemarketing practice they call "upselling." In the *Vertrue Sales Practices Litigation*, after purchasing products (including Nad's, vitamins, knives, Q-Ray bracelets, Edgemaster paint roller, Simoniz car washer, flowers, dance videos, AB Slider, ultrasonic toothbrushes and OxiClean) via an infomercial, consumers were told they were being sent a free 30-day trial membership in an unrelated buying club. Those consumers who did not refuse the 30-day membership were charged between $60 and $150 annually for this so-called "gift." We have filed suit in 21 states.

- ***Chase Bank Home Equity Line of Credit Litigation***. In October 2008, after receiving $25 billion in TARP funding to encourage lending institutions to provide businesses and consumers with access to credit, Chase Bank began unilaterally suspending its customers' home equity lines of credit. Plaintiffs charge that Chase Bank did so using an unreliable computer model that did not reliably estimate the actual value of its customers' homes in breach of the borrowers' contracts. The Firm has brought a lawsuit to secure damages on behalf of borrowers whose credit lines were improperly suspended.

- ***Pacific Gas & Electric Trespass Litigation***. Robbins Geller Rudman & Dowd LLP attorneys have filed suit on behalf of property owners alleging that PG&E has trespassed on their land. In short, PG&E has electricity easements giving it access for the purposes of building towers and stringing lines related to the transmission of electricity. PG&E has recently installed a fiberoptic telecommunications network which it has leased to telephone and Internet services, despite the fact that the electricity easements do not allow PG&E to use plaintiffs' property to engage in general telecommunications business. Through their lawsuit, plaintiffs seek damages to compensate them for PG&E's trespass.

## SETTLEMENTS

- ***Visa and MasterCard Fees***. After years of litigation and a six-month trial, Robbins Geller Rudman & Dowd LLP attorneys won one of the largest consumer-protection verdicts ever awarded in the United States. The Firm's attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from cardholders. The court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the court ordered full disclosure of the hidden fee.

- ***Drivers' Privacy Case***. In a cutting-edge consumer case, Robbins Geller Rudman & Dowd LLP attorneys brought a case on behalf of a half-million Florida drivers against a national bank for purchasing their private information from the state department of motor vehicles for marketing purposes. After years of litigation that included appeals to the United States Supreme Court, the Firm's attorneys successfully negotiated a $50 million all-cash settlement in this cutting-edge case involving consumer privacy rights. The published decision in *Kehoe v. Fidelity Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005), one of the first opinions construing the Federal Drivers Privacy Protection Act, was a victory for the Firm's clients.

- ***LifeScan Diabetic Systems***. Robbins Geller Rudman & Dowd LLP attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly owned subsidiary, LifeScan, Inc., over claims that LifeScan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics. The LifeScan settlement was noted by the court as providing "exceptional results" for members of the class.

- ***West Telemarketing Case***. Robbins Geller Rudman & Dowd LLP attorneys secured a $39 million settlement for class members caught up in a telemarketing scheme where consumers were charged for an unwanted membership program after purchasing Tae-Bo exercise videos. Under the settlement, consumers were entitled to claim between one and one-half to three times the amount of all fees they unknowingly paid.

- ***Dannon Activia***®. Robbins Geller Rudman & Dowd LLP attorneys secured the largest ever settlement for a false advertising case involving a food product. The case alleged that Dannon's advertising for its Activia® and DanActive® branded products and their benefits from "probiotic" bacteria were overstated. As part of the nationwide settlement, Dannon agreed to modify its advertising and establish a fund of up to $45 million to compensate consumers for their purchases of Activia® and DanActive®.

- ***Out-of-Network Emergency Room Doctors***. In a case that changed the way out-of-network emergency room physicians are paid by insurance carriers in Florida, Robbins Geller Rudman & Dowd LLP successfully represented a class of physicians who claimed their reimbursements for emergency services were unfair. As a result of the case, these physicians were guaranteed approximately double the rate of reimbursement they received prior to the case being pursued, resulting in a recovery of nearly $20 million and important business reforms.

- ***Mattel Lead Paint Toys***. In 2006-2007, toy manufacturing giant Mattel, and its subsidiary Fisher-Price, announced the recall of over 14 million toys made in China due to hazardous lead and dangerous magnets. Robbins Geller Rudman & Dowd LLP attorneys filed lawsuits on behalf of millions of parents and other consumers who purchased or received toys for children that were

marketed as safe but were later recalled because they were dangerous. The Firm's attorneys reached a landmark settlement for millions of dollars in refunds and lead testing reimbursements, as well as important testing requirements to ensure that Mattel's toys are safe for consumers in the future.

- ***Tenet Healthcare Cases***. Robbins Geller Rudman & Dowd LLP attorneys were co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. The Firm's attorneys represented uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy," which resulted in price gouging of the uninsured. The case was settled with Tenet changing its practices and making refunds to patients.

## HUMAN RIGHTS, LABOR PRACTICES AND PUBLIC POLICY

Robbins Geller Rudman & Dowd LLP attorneys have a long tradition of representing the victims of unfair labor practices and violations of human rights. These include:

- ***Does I v. The Gap, Inc.***, No. 01 0031 (D. N. Mar. I.). In this groundbreaking case, Robbins Geller Rudman & Dowd LLP attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Robbins Geller Rudman & Dowd LLP attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: ***Does I v. Advance Textile Corp.***, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and ***UNITE v. The Gap, Inc.***, No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that any misconduct was protected by the First Amendment,

finding the heightened constitutional protection afforded to noncommercial speech inappropriate in such a circumstance.

- ***World War II-Era Slave Labor***. Against steep odds, the Firm's lawyers took up the claims of people forced to work as slave labor for Japanese corporations during the Second World War. Their human rights case ran into trouble when the Ninth Circuit agreed with the Bush administration that any claims against Japanese corporations and their subsidiaries were preempted by the federal government's foreign-affairs power. *See Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003). The case nonetheless demonstrates the lawyers' dedication to prosecuting human-rights violations against the challenge of formidable political opposition.

- ***Taco Bell workers***. Robbins Geller Rudman & Dowd LLP attorneys represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime-exempt employees.

Shareholder derivative litigation brought by Robbins Geller Rudman & Dowd LLP attorneys at times also involves stopping anti-union activities, including:

- ***Southern Pacific/Overnite***. A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of U.S. labor laws.

- ***Massey Energy***. A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million-dollar penalties.

- ***Crown Petroleum***. A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

## ENVIRONMENT AND PUBLIC HEALTH

Robbins Geller Rudman & Dowd LLP attorneys have also represented plaintiffs in class actions related to environmental law. The Firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the federal and state use of project labor agreements ("PLAs"). The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds. Our *amici* brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large-scale construction projects.

Attorneys with Robbins Geller Rudman & Dowd LLP have been involved in several other significant environmental cases, including:

- ***Public Citizen v. U.S. D.O.T***. Robbins Geller Rudman & Dowd LLP attorneys represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry in a challenge to a decision by the Bush Administration to lift a Congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the Administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act. The suit was dismissed by the United States Supreme Court, the Court holding that because the D.O.T. lacked discretion to prevent crossborder trucking, an environmental assessment was not required.

- ***Sierra Club v. AK Steel***. Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, Resource Conservation Recovery Act and the Clean Water Act.

- ***MTBE Litigation***. Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- ***Exxon Valdez***. Brought on behalf of fisherman and Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- ***Avila Beach***. A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avila Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, and the Resource Conservation and Recovery Act and state laws such as California's Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage, be forced to pay for reparations and to come into compliance with existing laws. Prominent cases litigated by Robbins Geller Rudman & Dowd LLP attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and litigation involving the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

Robbins Geller Rudman & Dowd LLP attorneys have led the fight against Big Tobacco since 1991. As an example, Robbins Geller Rudman & Dowd LLP attorneys filed the case that helped get rid of Joe Camel, representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states.

In 1992, Robbins Geller Rudman & Dowd LLP attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

## INTELLECTUAL PROPERTY

Individual inventors, universities, and research organizations provide the fundamental research behind many existing and emerging technologies. Every year, the majority of U.S. patents are issued to this group of inventors. Through this fundamental research, these inventors provide a significant competitive advantage to this country. Unfortunately, while responsible for most of the inventions that issue into U.S. patents every year, individual inventors, universities and research organizations receive very little of the licensing revenues for U.S. patents. Large companies reap 99% of all patent licensing revenues.

Robbins Geller Rudman & Dowd LLP enforces the rights of these inventors by filing and litigating patent infringement cases against infringing entities. Our attorneys have decades of patent litigation experience in a variety of technical applications. This experience, combined with the Firm's extensive resources, gives individual inventors the ability to enforce their patent rights against even the largest infringing companies.

Our attorneys have experience handling cases involving a broad range of technologies, including:

- biochemistry

- telecommunications

- medical devices

- medical diagnostics

- networking systems

- computer hardware devices and software

- mechanical devices

- video gaming technologies

- audio and video recording devices

Current intellectual property cases include:

- ***vTRAX Technologies Licensing, Inc. v. Siemens Communications, Inc.***, No. 10-CV-80369 (S.D. Fla.). Counsel for plaintiff vTRAX Technologies in a patent infringement action involving U.S. Patent No. 6,865,268 for "Dynamic, Real-Time Call Tracking for Web-Based Customer Relationship Management."

- ***U.S. Ethernet Innovations***. Counsel for plaintiff U.S. Ethernet Innovations, owner of the 3Com Ethernet Patent Portfolio, in multiple patent infringement actions involving U.S. Patent Nos. 5,307,459 for "Network Adapter with Host Indication Optimization," 5,434,872 for "Apparatus for Automatic Initiation of Data Transmission," 5,732,094 for "Method for Automatic Initiation of Data Transmission," and 5,299,313 for "Network Interface with Host Independent Buffer Management."

- ***SIPCO, LLC v. Johnson Controls, Inc.***, No. 09-CV-532 (E.D. Tex.). Counsel for plaintiff SIPCO in a patent infringement action involving U.S. Patent Nos. 7,103,511 for "Wireless Communications Networks for Providing Remote Monitoring of Devices" and 6,437,692 and 7,468,661 for "System and Method for Monitoring and Controlling Remote Devices."

- ***SIPCO, LLC v. Florida Power & Light Co.***, No. 09-CV-22209 (S.D. Fla.). Counsel for plaintiff SIPCO, LLC in a patent infringement action involving U.S. Patent Nos. 6,437,692, 7,053,767 and 7,468,661, entitled "System and Method for Monitoring and Controlling Remote Devices."

- ***IPCO, LLC v. Cellnet Technology, Inc.***, No. 05-CV-2658 (N.D. Ga.). Counsel for plaintiff IPCO, LLC in a patent infringement action involving U.S. Patent No. 6,044,062 for a "Wireless Network System and Method for Providing Same" and U.S. Patent No. 6,249,516 for a "Wireless Network Gateway and Method for Providing Same."

- ***IPCO, LLC v. Tropos Networks, Inc.***, No. 06-CV-585 (N.D. Ga.). Counsel for plaintiff IPCO, LLC in a patent infringement action involving U.S. Patent No. 6,044,062 for a "Wireless Network System and Method for Providing Same" and U.S. Patent No. 6,249,516 for a "Wireless Network Gateway and Method for Providing Same."

- ***Jardin v. Datallegro, Inc.***, No. 08-CV-01462 (S.D. Cal.). Counsel for plaintiff Cary Jardin in a patent infringement action involving U.S. Patent No. 7,177,874 for a "System and Method for Generating and Processing Results Data in a Distributed System."

- ***NorthPeak Wireless, LLC v. 3Com Corporation***, No. 09-CV-00602 (N.D. Cal.). Counsel for plaintiff NorthPeak Wireless, LLC in a multi-defendant patent infringement action involving U.S. Patent Nos. 4,977,577 and 5,987,058 related to spread spectrum devices.

- ***PageMelding, Inc. v. Feeva Technology, Inc.***, No. 08-CV-03484 (N.D. Cal.). Counsel for plaintiff PageMelding, Inc. in a patent infringement action involving U.S. Patent No. 6,442,577 for a "Method and Apparatus for Dynamically Forming Customized Web Pages for Web Sites."

- ***SIPCO, LLC v. Amazon.com, Inc.***, No. 08-CV-359 (E.D. Tex.). Counsel for plaintiff SIPCO in a multi-defendant patent infringement action involving U.S. Patent No. 6,891,838 for a "System and Method for Monitoring and Controlling Residential Devices" and U.S. Patent No. 7,103,511 for "Wireless Communication Networks for Providing Remote Monitoring Devices."

- ***IPCO, LLC d/b/a Intus IQ v. Oncor Electric Delivery Co. LLC***, No. 09-CV-00037 (E.D. Tex.). Counsel for plaintiff Intus IQ in a patent infringement action involving U.S. Patent Nos. 6,249,516 and 7,054,271 for a "Wireless Network System and Method for Providing Same."

## PRO BONO

Robbins Geller Rudman & Dowd LLP attorneys have a distinguished record of *pro bono* work. In 1999, the Firm's lawyers were finalists for the San Diego Volunteer Lawyer Program's 1999 *Pro Bono* Law Firm of the Year Award, for their work on a disability-rights case. In 2003, when the Firm's lawyers were nominated for the California State Bar President's *Pro Bono* Law Firm of the Year award, the State Bar President praised them for "dedication to the provision of *pro bono* legal services to the poor" and "extending legal services to underserved communities."

More recently, one of the Firm's lawyers obtained political asylum, after an initial application for political asylum had been denied, for an impoverished Somali family whose ethnic minority faced systematic persecution and genocidal violence in Somalia. The family's female children also faced forced genital mutilation if returned to Somalia.

The Firm's lawyers worked as cooperating attorneys with the ACLU in a class action filed on behalf of welfare applicants subject to San Diego County's "Project 100%" program, which sent investigators from the D.A.'s office (Public Assistance Fraud Division) to enter and search the home of every person applying for welfare benefits, and to interrogate neighbors and employers – never explaining they had no reason to suspect wrongdoing. Real relief was had when the County admitted that food-stamp eligibility could not hinge upon the Project 100% "home visits," and again when the district court ruled that unconsented "collateral contacts" violated state regulations. The district court's ruling that CalWORKs aid to needy families could be made contingent upon consent to the D.A.'s "home visits" and "walk throughs," was affirmed by the Ninth Circuit with eight judges vigorously dissenting from denial of *en banc* rehearing. *Sanchez v. County of San Diego*, 464 F.3d 916 (9th Cir. 2006), *reh'g denied* 483 F.3d 965 (9th Cir. 2007). The decision was noted by the *Harvard Law Review*, *The New York Times*, and even *The Colbert Report*.

The Firm's lawyers also have represented groups such as the Sierra Club and the National Economic Development and Law Center as *amici curiae* before the United States Supreme Court.

Senior appellate partner Eric Alan Isaacson has in a variety of cases filed *amicus curiae* briefs on behalf of religious organizations and clergy supporting civil rights, opposing government-backed religious-viewpoint discrimination, and generally upholding the

American traditions of religious freedom and church-state separation. Organizations represented as *amici curiae* in such matters have included the California Council of Churches, Union for Reform Judaism, Jewish Reconstructionist Federation, United Church of Christ, Unitarian Universalist Association of Congregations, Unitarian Universalist Legislative Ministry – California, and California Faith for Equality.

## JUDICIAL COMMENDATIONS

Robbins Geller Rudman & Dowd LLP attorneys have been commended by countless judges all over the country for the quality of their representation in class-action lawsuits.

- In March 2009, Judge Karon Bowdre commented in the HealthSouth class certification opinion that "[t]he court has had many opportunities since November 2001 to examine the work of class counsel and the supervision by the Class Representatives. The court find both to be far more than adequate."

  *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S, Memorandum Opinion (S.D. Ala. Mar. 31, 2009).

- In October 2007, a $600 million settlement for shareholders in the securities fraud class action against Ohio's biggest drug distributor, Cardinal Health, Inc., was approved – the largest settlement in the Sixth Circuit. Judge Marbley commented:

  > The quality of representation in this case was superb. Lead Counsel, [Robbins Geller Rudman & Dowd LLP], are nationally recognized leaders in complex securities litigation class actions. The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action. Lead Counsel defeated a volley of motions to dismiss, thwarting well-formed challenges from prominent and capable attorneys from six different law firms.

  *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007).

- In the *Enron* securities class action, Robbins Geller Rudman & Dowd LLP attorneys and lead plaintiff The Regents of the University of California successfully recovered over ***$7.2 billion*** on behalf of Enron investors. The court overseeing this action had utmost praise for Robbins Geller Rudman & Dowd LLP's efforts and stated that "[t]he experience, ability, and reputation of the attorneys of [Robbins Geller Rudman & Dowd LLP] is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008).

The court further commented, "[I]n the face of extraordinary obstacles, the skills, expertise, commitment, and tenacity of [Robbins Geller Rudman & Dowd LLP] in this litigation cannot be overstated. Not to be overlooked are the unparalleled results, . . . which demonstrate counsel's clearly superlative litigating and negotiating skills." *Id.* at 789.

In addition, the court noted, "This Court considers [Robbins Geller Rudman & Dowd LLP] 'a lion' at the securities bar on the national level," noting that the Lead Plaintiff selected Robbins Geller Rudman & Dowd LLP because of the Firm's "outstanding reputation, experience, and success in securities litigation nationwide." *Id.* at 790.

- In *Stanley v. Safeskin Corp.*, No. 99 CV 454 (S.D. Cal. May 25, 2004), where Robbins Geller Rudman & Dowd LLP attorneys obtained $55 million for the class of investors, Judge Moskowitz stated:

  > I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

- In April 2005, in granting final approval of a $100 million settlement obtained after two weeks of trial in *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.), Judge Garrett E. Brown, Jr. stated the following about the Robbins Geller Rudman & Dowd LLP attorneys prosecuting the case:

  > Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

  *In re AT&T Corp. Sec. Litig.*, MDL No. 1399, 2005 U.S. Dist. LEXIS 46144, at *28-*29 (D.N.J. Apr. 25, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

- In a December 2006 hearing on the $50 million consumer privacy class action settlement in *Kehoe v. Fidelity Fed. Bank & Trust*, No. 03-80593-CIV (S.D. Fla.), United States District Court Judge Daniel T.K. Hurley said the following:

  > First, I thank counsel. As I said repeatedly on both sides we have been very, very fortunate. We have had fine lawyers on

both sides. The issues in the case are significant issues. We are talking about issues dealing with consumer protection and privacy – something that is increasingly important today in our society. [I] want you to know I thought long and hard about this. I am absolutely satisfied that the settlement is a fair and reasonable settlement. [I] thank the lawyers on both sides for the extraordinary effort that has been brought to bear here.

- In July 2007, the Honorable Richard Owen of the Southern District of New York approved the $129 million settlement of *In re Doral Fin. Corp. Sec. Litig.*, 05 MDL No. 1706 (S.D.N.Y.), finding in his order that:

    The services provided by Lead Counsel [Robbins Geller Rudman & Dowd LLP] were efficient and highly successful, resulting in an outstanding recovery for the Class without the substantial expense, risk and delay of continued litigation. Such efficiency and effectiveness supports the requested fee percentage.

    Cases brought under the federal securities laws are notably difficult and notoriously uncertain. . . . Despite the novelty and difficulty of the issues raised, Lead Plaintiffs' counsel secured an excellent result for the Class.

    . . . Based upon Lead Plaintiff's counsel's diligent efforts on behalf of the Class, as well as their skill and reputations, Lead Plaintiff's counsel were able to negotiate a very favorable result for the Class. . . . The ability of [Robbins Geller Rudman & Dowd LLP] to obtain such a favorable partial settlement for the Class in the face of such formidable opposition confirms the superior quality of their representation . . . .

### NOTABLE CLIENTS

**PUBLIC FUND CLIENTS**

- Alaska State Pension Investment Board

- California Public Employees' Retirement System

- California State Teachers' Retirement System

- Teachers' Retirement System of the State of Illinois

- Illinois Municipal Retirement Fund

- Illinois State Board of Investment

- Los Angeles County Employees Retirement Association

- Maine State Retirement System

- The Maryland-National Capital Park & Planning Commission Employees' Retirement System

- Milwaukee Employees' Retirement System

- Minnesota State Board of Investment

- New Hampshire Retirement System

- New Mexico Public Funds (New Mexico Educational Retirement Board, New Mexico Public Employees Retirement Association, and New Mexico State Investment Council)

- Ohio Public Funds (Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, School Employees Retirement System of Ohio, Ohio Police and Fire Pension Fund, Ohio State Highway Patrol Retirement System, and Ohio Bureau of Workers' Compensation)

- The Regents of the University of California

- State Universities Retirement System of Illinois

- State of Wisconsin Investment Board

- Tennessee Consolidated Retirement System

- Washington State Investment Board

- Wayne County Employees' Retirement System

- West Virginia Investment Management Board

**MULTI-EMPLOYER CLIENTS**

- Alaska Electrical Pension Fund

- Alaska Hotel & Restaurant Employees Pension Trust Fund

- Alaska Ironworkers Pension Trust

- Carpenters Pension Fund of West Virginia

- Carpenters Health & Welfare Fund of Philadelphia & Vicinity

- Carpenters Pension Fund of Baltimore, Maryland

- Carpenters Pension Fund of Illinois

- Southwest Carpenters Pension Trust

- Central States, Southeast and Southwest Areas Pension Fund

- Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund

- Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds

- 1199 SEIU Greater New York Pension Fund

- Massachusetts State Carpenters Pension and Annuity Funds

- Massachusetts State Guaranteed Fund

- New England Health Care Employees Pension Fund

- SEIU Staff Fund

- Southern California Lathing Industry Pension Fund

- United Brotherhood of Carpenters Pension Fund

#### ADDITIONAL INSTITUTIONAL INVESTORS

- Bank of Ireland Asset Management

- Northwestern Mutual Life Insurance Company

- Standard Life Investments

### PROMINENT CASES AND PRECEDENT-SETTING DECISIONS

#### PROMINENT CASES

- ***In re Enron Corp. Sec. Litig.***, No. H-01-3624 (S.D. Tex.). Investors lost billions of dollars as a result of the massive fraud at Enron. In appointing Robbins Geller Rudman & Dowd LLP lawyers as sole lead counsel to represent the interests of Enron investors, the court found that the Firm's zealous prosecution and level of "insight" set it apart from its peers. Robbins Geller Rudman & Dowd LLP attorneys and lead plaintiff The Regents of the University of California aggressively pursued numerous defendants, including many of Wall Street's biggest banks, and successfully obtained settlements in excess of ***$7.2 billion*** for the benefit of investors. ***This is the largest***

*aggregate class action settlement not only in a securities class action, but in class action history*.

- *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn.). In the *UnitedHealth* case, Robbins Geller Rudman & Dowd LLP represented the California Public Employees' Retirement System ("CalPERS") and demonstrated its willingness to vigorously advocate for its institutional clients, even under the most difficult circumstances. For example, in 2006, the issue of high-level executives backdating stock options made national headlines. During that time, many law firms, including Robbins Geller Rudman & Dowd LLP, brought shareholder derivative lawsuits against the companies' boards of directors for breaches of their fiduciary duties or for improperly granting backdated options. Rather than pursuing a shareholder derivative case, the Firm filed a securities fraud class action against the company on behalf of CalPERS. In doing so, Robbins Geller Rudman & Dowd LLP faced significant and unprecedented legal obstacles with respect to loss causation, *i.e.*, that defendants' actions were responsible for causing the stock losses. Despite these legal hurdles, Robbins Geller Rudman & Dowd LLP obtained an $895 million recovery on behalf of the UnitedHealth shareholders. Shortly after reaching the $895 million settlement with UnitedHealth, the remaining corporate defendants, including former CEO William A. McGuire, also settled. Mr. McGuire paid $30 million and returned stock options representing more than three million shares to the shareholders. The total recovery for the class was over $925 million, the largest stock option backdating recovery ever, and *a recovery which is more than four times larger than the next largest options backdating recovery*. Moreover, Robbins Geller Rudman & Dowd LLP obtained unprecedented corporate governance reforms, including election of a shareholder-nominated member to the company's board of directors, a mandatory holding period for shares acquired by executives via option exercise, and executive compensation reforms which tie pay to performance.

- *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.). Sole lead counsel Robbins Geller Rudman & Dowd LLP obtained a jury verdict on May 7, 2009, following a six-week trial in the Northern District of Illinois, on behalf of a class of investors led by plaintiffs PACE Industry Union-Management Pension Fund, the International Union of Operating Engineers, Local No. 132 Pension Plan, and Glickenhaus & Company. The jury determined that Household and the individual defendants made fraudulent misrepresentations concerning the company's predatory lending practices, the quality of its loan portfolio and the company's financial results between March 23, 2001 and October 11, 2002. Although certain post-trial proceedings are ongoing, plaintiffs' counsel anticipate that the verdict will ultimately allow class members to recover in excess of $1 billion in damages. Since the enactment of the PSLRA in 1995, trials in securities fraud cases have been rare. According to published reports, only nine such cases have gone to verdict since the passage of the PSLRA.

- ***Alaska Elec. Pension Fund v. CitiGroup, Inc. (In re WorldCom Sec. Litig.)***, No. 03 Civ. 8269 (S.D.N.Y.). Robbins Geller Rudman & Dowd LLP attorneys represented more than 50 private and public institutions that opted out of the class action case and sued WorldCom's bankers, officers and directors, and auditors in courts around the country for losses related to WorldCom bond offerings from 1998 to 2001. The Firm's clients included major public institutions from across the country such as CalPERS, CalSTRS, the state pension funds of Maine, Illinois, New Mexico and West Virginia, union pension funds, and private entities such as AIG and Northwestern Mutual. Robbins Geller Rudman & Dowd LLP attorneys recovered more than $650 million for their clients on the May 2000 and May 2001 bond offerings (the primary offerings at issue), substantially more than they would have recovered as part of the class.

- ***In re Cardinal Health, Inc. Sec. Litig.***, No. C2-04-575 (S.D. Ohio). As sole lead counsel representing Cardinal Health shareholders, Robbins Geller Rudman & Dowd LLP obtained a recovery of $600 million for investors. On behalf of the lead plaintiffs, Amalgamated Bank, the New Mexico State Investment Council, and the California Ironworkers Field Trust Fund, the Firm aggressively pursued class claims and won notable courtroom victories, including a favorable decision on defendants' motion to dismiss. *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006). At the time, the $600 million settlement was the tenth-largest settlement in the history of securities fraud litigation and is the largest-ever recovery in a securities fraud action in the Sixth Circuit.

- ***AOL Time Warner Cases I & II***, JCCP Nos. 4322 & 4325 (Cal. Super. Ct., Los Angeles County). Robbins Geller Rudman & Dowd LLP represented The Regents of the University of California, six Ohio state pension funds, Rabo Bank (NL), the Scottish Widows Investment Partnership, several Australian public and private funds, insurance companies, and numerous additional institutional investors, both domestic and international, in state and federal court opt-out litigation stemming from Time Warner's disastrous 2001 merger with Internet high flier America Online. Robbins Geller Rudman & Dowd LLP attorneys exposed a massive and sophisticated accounting fraud involving America Online's e-commerce and advertising revenue. After almost four years of litigation involving extensive discovery, the Firm secured combined settlements for its opt-out clients totaling over $629 million just weeks before The Regents' case pending in California state court was scheduled to go to trial. The Regents' gross recovery of $246 million is the largest individual opt-out securities recovery in history.

- ***In re HealthSouth Corp. Sec. Litig.***, No. CV-03-BE-1500-S (N.D. Ala.). As court-appointed co-lead counsel, Robbins Geller Rudman & Dowd LLP attorneys obtained a combined recovery of $671 million from HealthSouth, its auditor Ernst & Young, and its investment banker, UBS, for the benefit of stockholder plaintiffs. The settlement against HealthSouth represents one of

the larger settlements in securities class action history and is considered among the top 15 settlements achieved after passage of the PSLRA. Likewise, the settlement against Ernst & Young is one of the largest securities class action settlements entered into by an accounting firm since the passage of the PSLRA. HealthSouth and its financial advisors perpetrated one of the largest and most pervasive frauds in the history of U.S. healthcare, prompting Congressional and law enforcement inquiry and resulting in guilty pleas of 16 former HealthSouth executives in related federal criminal prosecutions.

- ***In re Dynegy Inc. Sec. Litig.***, No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Robbins Geller Rudman & Dowd LLP attorneys obtained a combined settlement of $474 million from Dynegy, Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Given Dynegy's limited ability to pay, Robbins Geller Rudman & Dowd LLP attorneys structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by The Regents, which Robbins Geller Rudman & Dowd LLP and The Regents believe will benefit all of Dynegy's stockholders.

- ***In re Qwest Commc'ns Int'l, Inc. Sec. Litig.***, No. 01-cv-1451 (D. Colo.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel for a class of investors that purchased Qwest securities. In July 2001, the Firm filed the initial complaint in this action on behalf of its clients, long before any investigation into Qwest's financial statements was initiated by the SEC or Department of Justice. After five years of litigation, lead plaintiffs entered into a settlement with Qwest and certain individual defendants that provided a $400 million recovery for the class and created a mechanism that allowed the vast majority of class members to share in an additional $250 million recovered by the SEC. In 2008, Robbins Geller Rudman & Dowd LLP attorneys recovered an additional $45 million for the class in a settlement with defendants Joseph P. Nacchio and Robert S. Woodruff, the CEO and CFO, respectively, of Qwest during large portions of the class period.

- ***In re AT&T Corp. Sec. Litig.***, MDL No. 1399 (D.N.J.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T and its former Chairman and CEO, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million. In granting approval of the settlement, the

court stated the following about the Robbins Geller Rudman & Dowd LLP attorneys handling the case:

> Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

*In re AT&T Corp. Sec. Litig.*, MDL No. 1399, 2005 U.S. Dist. LEXIS 46144, at *28-*29 (D.N.J. Apr. 25, 2005), *aff'd*, 455 F.3d 160 (3d Cir. 2006).

- *In re Dollar Gen. Corp. Sec. Litig.*, No. 01-CV-00388 (M.D. Tenn.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel in this case in which the Firm recovered $172.5 million for investors. The *Dollar General* settlement was the largest shareholder class action recovery ever in Tennessee.

- *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 00-CV-2838 (N.D. Ga.). As co-lead counsel representing Coca-Cola shareholders, Robbins Geller Rudman & Dowd LLP attorneys obtained a recovery of $137.5 million after nearly eight years of litigation. Robbins Geller Rudman & Dowd LLP attorneys traveled to three continents to uncover the evidence that ultimately resulted in the settlement of this hard-fought litigation. The case concerned Coca-Cola's shipping of excess concentrate at the end of financial reporting periods for the sole purpose of meeting analyst earnings expectations, as well as the company's failure to properly account for certain impaired foreign bottling assets.

- *Schwartz v. TXU Corp.*, No. 02-CV-2243 (N.D. Tex). As co-lead counsel, Robbins Geller Rudman & Dowd LLP attorneys obtained a recovery of over $149 million for a class of purchasers of TXU securities. The recovery compensated class members for damages they incurred as a result of their purchases of TXU securities at inflated prices. Defendants had inflated the price of these securities by concealing the fact that TXU's operating earnings were declining due to a deteriorating gas pipeline and the failure of the company's European operations.

- *Thurber v. Mattel, Inc.*, No. 99-CV-10368 (C.D. Cal.). Robbins Geller Rudman & Dowd LLP attorneys served as co-lead counsel for a class of investors who purchased Mattel common stock. When the shareholders approved Mattel's acquisition of The Learning Company, they were misled by

defendants' false statements regarding the financial condition of the acquired company. Within months of the close of the transaction, Mattel disclosed that The Learning Company had incurred millions in losses, and that instead of adding to Mattel's earnings, earnings would be far less than previously stated. After thorough discovery, Robbins Geller Rudman & Dowd LLP attorneys negotiated a settlement of $122 million plus corporate governance changes.

- **_Brody v. Hellman (U.S. West Dividend Litigation)_**, No. 00-CV-4142 (Dist. Ct. for the City & Cty. of Denver, Colo.). Robbins Geller Rudman & Dowd LLP attorneys were court-appointed counsel for the class of former stockholders of U.S. West, Inc. who sought to recover a dividend declared by U.S. West before its merger with Qwest. The merger closed before the record and payment dates for the dividend, which Qwest did not pay following the merger. The case was aggressively litigated and the plaintiffs survived a motion to dismiss, two motions for summary judgment and successfully certified the class over vigorous opposition from defendants. In certifying the class, the court commented, "Defendants do not contest that Plaintiffs' attorneys are extremely well qualified to represent the putative class. This litigation has been ongoing for four years; in that time Plaintiffs' counsel has proven that they are more than adequate in ability, determination, and resources to represent the putative class." The case settled for $50 million on the day before trial was scheduled to commence. At the August 30, 2005 final approval hearing relating to the settlement, the court noted that the case "was litigated by extremely talented lawyers on both sides" and that the settlement was "a great result." In describing the risk taken by the Firm and its co-counsel, the court noted, "There wasn't any other lawyer[] in the United States that took the gamble that these people did. Not one other firm anywhere said I'm willing to take that on. I'll go five years. I'll pay out the expenses. I'll put my time and effort on the line." In discussing the difficulties facing the Firm in this case, the court said, "There wasn't any issue that wasn't fought. It took a great deal of skill to get to the point of trial." In concluding, the court remarked that the class was "fortunate they had some lawyers that had the guts to come forward and do it."

- **_In re NASDAQ Market-Makers Antitrust Litig._**, MDL No. 1023 (S.D.N.Y.). Robbins Geller Rudman & Dowd LLP attorneys served as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, at the time the largest ever antitrust settlement. An excerpt from the court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well

regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

- ***In re Exxon Valdez***, No. A89 095 Civ. (D. Alaska), and ***In re Exxon Valdez Oil Spill Litig.***, No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.). Robbins Geller Rudman & Dowd LLP attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in this massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. The jury awarded hundreds of millions in compensatory damages, as well as $5 billion in punitive damages (the latter were later reduced by the United States Supreme Court to $507 million).

- ***In re 3Com, Inc. Sec. Litig.***, No. C-97-21083 (N.D. Cal.). A hard-fought class action alleging violations of the federal securities laws in which Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel for the class and obtained a recovery totaling $259 million.

- ***Mangini v. R.J. Reynolds Tobacco Co.***, No. 939359 (Cal. Super. Ct., San Francisco County). In this case, R.J. Reynolds admitted that "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- ***Cordova v. Liggett Grp., Inc.***, No. 651824 (Cal. Super. Ct., San Diego County), and ***People v. Philip Morris, Inc.***, No. 980864 (Cal. Super. Ct., San Francisco County). Robbins Geller Rudman & Dowd LLP attorneys, as lead counsel in both these actions, played a key role in these cases which were settled with the Attorneys General's global agreement with the tobacco industry, bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

- ***Does I v. The Gap, Inc.***, No. 01 0031 (D. N. Mar. I.). In this groundbreaking case, Robbins Geller Rudman & Dowd LLP attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Robbins Geller Rudman & Dowd LLP attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act, and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: ***Does I v. Advance Textile Corp.***, No. 99 0002 (D. N. Mar. I.), which alleged overtime violations by the garment factories under the Fair Labor Standards Act and local labor law, and ***UNITE v. The Gap, Inc.***, No.

300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive monitoring program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts in bringing about the precedent-setting settlement of the actions.

- ***Hall v. NCAA (Restricted Earnings Coach Antitrust Litigation)***, No. 94-2392 (D. Kan.). Robbins Geller Rudman & Dowd LLP attorneys were lead counsel and lead trial counsel for one of three classes of coaches in these consolidated price fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $70 million.

- ***In re Prison Realty Sec. Litig.***, No. 3:99-0452 (M.D. Tenn.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- ***In re Honeywell Int'l, Inc. Sec. Litig.***, No. 00-cv-03605 (D.N.J.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel for a class of investors that purchased Honeywell common stock. The case charged Honeywell and its top officers with violations of the federal securities laws, alleging the defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc. and that defendants falsified Honeywell's financial statements. After extensive discovery, Robbins Geller Rudman & Dowd LLP attorneys obtained a $100 million settlement for the class.

- ***In re Reliance Acceptance Grp., Inc. Sec. Litig.***, 99 MDL No. 1304 (D. Del.). Robbins Geller Rudman & Dowd LLP attorneys served as co-lead counsel and obtained a recovery of $39 million.

- ***Schwartz v. Visa Int'l***, No. 822404-4 (Cal. Super. Ct., Alameda County). After years of litigation and a six-month trial, Robbins Geller Rudman & Dowd LLP attorneys won one of the largest consumer protection verdicts ever awarded in the United States. Robbins Geller Rudman & Dowd LLP attorneys represented California consumers in an action against Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the court ordered full disclosure of the hidden fee.

- ***Thompson v. Metro. Life Ins. Co.***, No. 00-cv-5071 (S.D.N.Y.). Robbins Geller Rudman & Dowd LLP attorneys served as lead counsel and obtained

$145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- ***In re Prudential Ins. Co. of Am. Sales Practices Litig.***, MDL No. 1061 (D.N.J.). In one of the first cases of its kind, Robbins Geller Rudman & Dowd LLP attorneys obtained a settlement of $4 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

## PRECEDENT-SETTING DECISIONS

### INVESTOR AND SHAREHOLDER RIGHTS

- ***Fox v. JAMDAT Mobile, Inc.***, 185 Cal. App. 4th 1068 (2010). Concluding that Delaware's shareholder ratification doctrine did not bar the claims, the California Court of Appeal reversed dismissal of a shareholder class action alleging breach of fiduciary duty in a corporate merger.

- ***In re Constar Int'l Inc. Sec. Litig.***, 585 F.3d 774 (3d Cir. 2009). The Third Circuit flatly rejected defense contentions that where relief is sought under §11 of the Securities Act of 1933, which imposes liability when securities are issued pursuant to an incomplete or misleading registration statement, class certification should depend upon findings concerning market efficiency and loss causation.

- ***Siracusano v. Matrixx Initiatives, Inc.***, 585 F.3d 1167 (9th Cir. 2009). In a securities fraud action, the Ninth Circuit rejected reliance upon a bright-line "statistical significance" materiality standard, agreeing with plaintiffs that defendants had omitted a material fact by failing to disclose a possible link between the company's popular cold remedy and the loss of sense of smell in some users.

- ***Alaska Elec. Pension Fund v. Flowserve Corp.***, 572 F.3d 221 (5th Cir. 2009). Aided by former United States Supreme Court Justice O'Connor's presence on the panel, the Fifth Circuit reversed a district court order denying class certification and also reversed an order granting summary judgment to defendants. The court held that the district court applied an incorrect fact-forfact standard of loss causation, and that genuine issues of fact on loss causation precluded summary judgment.

- ***In re F5 Networks, Inc., Derivative Litig.***, 207 P.3d 433 (Wash. 2009). In a derivative action alleging unlawful stock option backdating, the Supreme Court of Washington ruled that shareholders need not make a pre-suit demand on the board of directors where this step would be futile, agreeing with plaintiffs that favorable Delaware case law should be followed as persuasive authority.

- ***Lormand v. US Unwired, Inc.***, 565 F.3d 228 (5th Cir. 2009). In a rare win for investors in the Fifth Circuit, the court reversed an order of dismissal, holding that safe harbor warnings were not meaningful when the facts alleged established a strong inference that defendants knew their forecasts were false. The court also held that plaintiffs sufficiently alleged loss causation.

- ***Institutional Investors Grp. v. Avaya, Inc.***, 564 F.3d 242 (3d Cir. 2009). In a victory for investors in the Third Circuit, the court reversed an order of dismissal, holding that shareholders pled with particularity why the company's repeated denials of price discounts on products were false and misleading when the totality of facts alleged established a strong inference that defendants knew their denials were false.

- ***Alaska Elec. Pension Fund v. Pharmacia Corp.***, 554 F.3d 342 (3d Cir. 2009), *cert. denied*, _ U.S. _, 130 S. Ct. 2401 (2010). The Third Circuit held that claims filed for violation of §10(b) of the Securities Exchange Act of 1934 were timely, adopting investors' argument that because scienter is a critical element of the claims, the time for filing them cannot begin to run until the defendants' fraudulent state of mind should be apparent.

- ***Rael v. Page***, 222 P.3d 678 (N.M. Ct. App.), *cert. denied*, 224 P.3d 649 (N.M. 2009). In this shareholder class and derivative action, Robbins Geller Rudman & Dowd LLP attorneys obtained an appellate decision reversing the trial court's dismissal of the complaint alleging serious director misconduct in connection with the merger of SunCal Companies and Westland Development Co., Inc., a New Mexico company with large and historic landholdings and other assets in the Albuquerque area. The appellate court held that plaintiff's claims for breach of fiduciary duty were direct, not derivative, because they constituted an attack on the validity or fairness of the merger and the conduct of the directors. Although New Mexico law had not addressed this question directly, at the urging of the Firm's attorneys, the court relied on Delaware law for guidance, rejecting the "special injury" test for determining the direct versus derivative inquiry and instead applying more recent Delaware case law.

- ***Luther v. Countrywide Home Loans Servicing LP***, 533 F.3d 1031 (9th Cir. 2008). In a case of first impression, the Ninth Circuit held that the Securities Act of 1933's specific non-removal features had not been trumped by the general removal provisions of the Class Action Fairness Act of 2005.

- ***In re Gilead Scis. Sec. Litig.***, 536 F.3d 1049 (9th Cir. 2008), *cert. denied*, _ U.S. _, 129 S. Ct. 1993 (2009). The Ninth Circuit upheld defrauded investors' loss causation theory as plausible, ruling that a limited temporal gap between the time defendants' misrepresentation was publicly revealed and the subsequent decline in stock value was reasonable where the public had not immediately understood the impact of defendants' fraud.

- ***Fidel v. Farley***, 534 F.3d 508 (6th Cir. 2008). The Sixth Circuit upheld class-notice procedures, rejecting an objector's contentions that class action settlements should be set aside because his own stockbroker had failed to forward timely notice of the settlement to him.

- ***In re WorldCom Sec. Litig.***, 496 F.3d 245 (2d Cir. 2007). The Second Circuit held that the filing of a class action complaint tolls the limitations period for all members of the class, including those who choose to opt out of the class action and file their own individual actions without waiting to see whether the district court certifies a class – reversing the decision below and effectively overruling multiple district court rulings that *American Pipe* tolling did not apply under these circumstances.

- ***In re Merck & Co. Sec., Derivative & ERISA Litig.***, 493 F.3d 393 (3d Cir. 2007). In a shareholder derivative suit appeal, the Third Circuit held that the general rule that discovery may not be used to supplement demand-futility allegations does not apply where the defendants enter a voluntary stipulation to produce materials relevant to demand futility without providing for any limitation as to their use.

- ***Alaska Elec. Pension Fund v. Brown***, 941 A.2d 1011 (Del. 2007). The Supreme Court of Delaware held that the Alaska Electrical Pension Fund, for purposes of the "corporate benefit" attorney-fee doctrine, was presumed to have caused a substantial increase in the tender offer price paid in a "going private" buyout transaction. The Court of Chancery originally ruled that Alaska's counsel, Robbins Geller Rudman & Dowd LLP, was not entitled to an award of attorney fees but Delaware's high court, in its published opinion, reversed and remanded for further proceedings.

- ***Crandon Capital Partners v. Shelk***, 157 P.3d 176 (Or. 2007). Oregon's Supreme Court ruled that a shareholder plaintiff in a derivative action may still seek attorney fees even if the defendants took actions to moot the underlying claims. The Firm's attorneys convinced Oregon's highest court to take the case, and reverse, despite the contrary position articulated by both the trial court and the Oregon Court of Appeals.

- ***In re Qwest Commc'ns Int'l***, 450 F.3d 1179 (10th Cir. 2006). In a case of first impression, the Tenth Circuit held that a corporation's deliberate release of purportedly privileged materials to governmental agencies was not a "selective waiver" of the privileges such that the corporation could refuse to produce the same materials to non-governmental plaintiffs in private securities fraud litigation.

- ***In re Guidant S'holders Derivative Litig.***, 841 N.E.2d 571 (Ind. 2006). Answering a certified question from a federal court, the Supreme Court of Indiana unanimously held that a pre-suit demand in a derivative action is excused if the demand would be a futile gesture. The court adopted a

"demand futility" standard and rejected defendants' call for a "universal demand" standard that might have immediately ended the case.

- **Denver Area Meat Cutters v. Clayton**, 209 S.W.3d 584 (Tenn. Ct. App. 2006). The Tennessee Court of Appeals rejected an objector's challenge to a class action settlement arising out of Warren Buffet's 2003 acquisition of Tennessee-based Clayton Homes. In their effort to secure relief for Clayton Homes stockholders, the Firm's attorneys obtained a temporary injunction of the Buffet acquisition for six weeks in 2003 while the matter was litigated in the courts. The temporary halt to Buffet's acquisition received national press attention.

- **DeJulius v. New Eng. Health Care Emps. Pension Fund**, 429 F.3d 935 (10th Cir. 2005). The Tenth Circuit held that the multi-faceted notice of a $50 million settlement in a securities fraud class action had been the best notice practicable under the circumstances, and thus satisfied both constitutional due process and Rule 23 of the Federal Rules of Civil Procedure.

- **In re Daou Sys.**, 411 F.3d 1006 (9th Cir. 2005). The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- **Barrie v. Intervoice-Brite, Inc.**, 397 F.3d 249 (5th Cir.), *reh'g denied and opinion modified*, 409 F.3d 653 (5th Cir. 2005). The Fifth Circuit upheld investors' accounting-fraud claims, holding that fraud is pled as to both defendants when one knowingly utters a false statement and the other knowingly fails to correct it, even if the complaint does not specify who spoke and who listened.

- **Ill. Mun. Ret. Fund v. Citigroup, Inc.**, 391 F.3d 844 (7th Cir. 2004). The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- **Nursing Home Pension Fund, Local 144 v. Oracle Corp.**, 380 F.3d 1226 (9th Cir. 2004). The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- **City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.**, 399 F.3d 651 (6th Cir. 2004). The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Southland Sec. Corp. v. INSpire Ins. Solutions Inc.***, 365 F.3d 353 (5th Cir. 2004). The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***Pirraglia v. Novell, Inc.***, 339 F.3d 1182 (10th Cir. 2003). The Tenth Circuit upheld investors' accounting-fraud claims, holding that plaintiffs could not be expected to plead details of documents from defendants' files, that the materiality of defendants' false statements is usually not resolvable at the pleading stage, and that the absence of insider trading by individual defendants did not mean they lacked a motive to commit fraud.

- ***No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.***, 320 F.3d 920 (9th Cir. 2003). The Ninth Circuit upheld investors' fraud claims, ruling that the materiality of defendants' fraud was not reflected in the stock's market price until the full economic effects of defendants' fraud were finally revealed, and that a lack of stock sales by defendants is not dispositive as to scienter.

- ***In re Cavanaugh***, 306 F.3d 726 (9th Cir. 2002). The Ninth Circuit disallowed judicial auctions to select lead plaintiffs in securities class actions and protected lead plaintiffs' right to select the lead counsel they desire to represent them.

- ***Lone Star Ladies Inv. Club v. Schlotzsky's Inc.***, 238 F.3d 363 (5th Cir. 2001). The Fifth Circuit upheld investors' claims that securities offering documents were incomplete and misleading, reversing a district court order that had applied inappropriate pleading standards to dismiss the case.

### INSURANCE

- ***Smith v. Am. Family Mut. Ins. Co.***, 289 S.W.3d 675 (Mo. Ct. App. 2009). Capping nearly a decade of hotly contested litigation, the Missouri Court of Appeals reversed the trial court's judgment notwithstanding the verdict for auto insurer American Family and reinstated a unanimous jury verdict for the plaintiff class.

- ***Troyk v. Farmers Grp., Inc.***, 171 Cal. App. 4th 1305 (2009). The California Court of Appeal held that Farmers Insurance's practice of levying a "service charge" on one-month auto insurance policies, without specifying the charge in the policy, violated California's Insurance Code.

- ***Lebrilla v. Farmers Grp., Inc.***, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest automobile insurers in California, and ruled that Farmers' standard automobile policy requires it to provide parts that are as good as those made by vehicle's manufacturer. The case

involved Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- ***In re Monumental Life Ins. Co.***, 365 F.3d 408, 416 (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "'computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances.'"

- ***Dehoyos v. Allstate Corp.***, 345 F.3d 290 (5th Cir. 2003). The Fifth Circuit Court of Appeals held that claims under federal civil rights statutes involving the sale of racially discriminatory insurance policies based upon the use of credit scoring did not interfere with state insurance statutes or regulatory goals and were not preempted under the McCarran-Ferguson Act. Specifically, the appellate court affirmed the district court's ruling that the McCarran-Ferguson Act does not preempt civil-rights claims under the Civil Rights Act of 1866 and the Fair Housing Act for racially discriminatory business practices in the sale of automobile and homeowners insurance.

- ***Mass. Mut. Life Ins. Co. v. Superior Court***, 97 Cal. App. 4th 1282 (2002). The California Court of Appeal affirmed a trial court's order certifying a class in an action by purchasers of so-called "vanishing premium" life-insurance policies who claimed violations of California's consumer-protection statutes. The court held that common issues predominate where plaintiffs allege a uniform failure to disclose material information about policy dividend rates.

- ***Moore v. Liberty Nat'l Life Ins. Co.***, 267 F.3d 1209 (11th Cir. 2001). The Eleventh Circuit affirmed the district court's denial of the defendant's motion for judgment on the pleadings, rejecting contentions that insurance policyholders' claims of racial discrimination were barred by Alabama's common law doctrine of repose. The Eleventh Circuit also rejected the insurer's argument that the McCarran-Ferguson Act mandated preemption of plaintiffs' federal civil rights claims under 42 U.S.C. §§1981 and 1982.

## CONSUMER PROTECTION

- ***Kwikset Corp. v. Superior Court***, 51 Cal. 4th 310 (2011). In a leading decision interpreting the scope of Proposition 64's new standing requirements under California's Unfair Competition Law (UCL), the California Supreme Court held that consumers alleging that a manufacturer have misrepresented its product have "lost money or property" within the meaning of the initiative, and thus have standing to sue under the UCL, if they "can truthfully allege that they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise."

*Id.* at 317. *Kwikset* involved allegations, proven at trial, that defendants violated California's "Made in the U.S.A." statute by representing on their labels that their products were "Made in U.S.A." or "All-American Made" when, in fact, the products were substantially made with foreign parts and labor.

- ***Safeco Ins. Co. of Am. v. Superior Court***, 173 Cal. App. 4th 814 (2009). In a class action against auto insurer Safeco, the California Court of Appeal agreed that the plaintiff should have access to discovery to identify a new class representative after her standing to sue was challenged.

- ***Consumer Privacy Cases***, 175 Cal. App. 4th 545 (2009). The California Court of Appeal rejected objections to a nationwide class action settlement benefiting Bank of America customers.

- ***Koponen v. Pac. Gas & Elec. Co.***, 165 Cal. App. 4th 345 (2008). The Firm's attorneys obtained a published decision reversing the trial court's dismissal of the action, and holding that the plaintiff's claims for damages arising from the utility's unauthorized use of rights-of-way or easements obtained from the plaintiff and other landowners were not barred by a statute limiting the authority of California courts to review or correct decisions of the California Public Utilities Commission.

- ***Sanford v. MemberWorks, Inc.***, 483 F.3d 956 (9th Cir. 2007). In a telemarketing-fraud case, where the plaintiff consumer insisted she had never entered the contractual arrangement that defendants said bound her to arbitrate individual claims to the exclusion of pursuing class claims, the Ninth Circuit reversed an order compelling arbitration – allowing the plaintiff to litigate on behalf of a class.

- ***Ritt v. Billy Blanks Enters.***, 870 N.E.2d 212 (Ohio Ct. App. 2007). In the Ohio analog to the West case, the Ohio Court of Appeals approved certification of a class of Ohio residents seeking relief under Ohio's consumer protection laws for the same telemarketing fraud.

- ***Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n***, 148 P.3d 1179 (Haw. 2006). The Supreme Court of Hawaii ruled that claims of unfair competition were not subject to arbitration and that claims of tortious interference with prospective economic advantage were adequately alleged.

- ***Branick v. Downey Sav. & Loan Ass'n***, 39 Cal. 4th 235 (2006). Robbins Geller Rudman & Dowd LLP attorneys were part of a team of lawyers that briefed this case before the Supreme Court of California. The court issued a unanimous decision holding that new plaintiffs may be substituted, if necessary, to preserve actions pending when Proposition 64 was passed by California voters in 2004. Proposition 64 amended California's Unfair

Competition Law and was aggressively cited by defense lawyers in an effort to dismiss cases after the initiative was adopted.

- ***McKell v. Wash. Mut., Inc.***, 142 Cal. App. 4th 1457 (2006). The California Court of Appeal reversed the trial court, holding that plaintiff's theories attacking a variety of allegedly inflated mortgage-related fees were actionable.

- ***West Corp. v. Superior Court***, 116 Cal. App. 4th 1167 (2004). The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents. Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- ***Kruse v. Wells Fargo Home Mortg., Inc***., 383 F.3d 49 (2d Cir. 2004), and ***Santiago v. GMAC Mortg. Grp., Inc.***, 417 F.3d 384 (3d Cir. 2005). In two groundbreaking federal appellate decisions, the Second and Third Circuits each ruled that the Real Estate Settlement Practices Act prohibits marking up home loan-related fees and charges.

- ***Lavie v. Procter & Gamble Co.***, 105 Cal. App. 4th 496 (2003). The California Court of Appeal issued an extensive opinion elaborating, for the first time in California law, the meaning of the "reasonable consumer" standard. The court announced a balanced approach that has enabled actions under California's leading consumer protection statutes when necessary to protect the public from acts of unfair business competition.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The court rejected defense contentions that such misconduct was protected by the First Amendment.

- ***Spielholz v. Superior Court***, 86 Cal. App. 4th 1366 (2001). The California Court of Appeal held that false advertising claims against a wireless communications provider are not preempted by the Federal Communications Act of 1934.

## ATTORNEY BIOGRAPHIES

### PARTNERS

### Mario Alba, Jr.

Mario Alba, Jr. is a partner in the Firm's New York office. Mr. Alba is responsible for initiating, investigating, researching and filing securities fraud class actions. Mr. Alba has served as lead counsel in numerous class actions alleging violations of securities laws,

including cases against NBTY ($16 million recovery) and OSI Pharmaceuticals ($9 million recovery). He is also part of the Firm's Institutional Outreach Department whereby he advises institutional investors. In addition, Mr. Alba is active in all phases of the Firm's lead plaintiff motion practice.

**Education:** B.S., St. John's University, 1999; J.D., Hofstra University School of Law, 2002

**Honors/Awards:** B.S., Dean's List, St. John's University, 1999; Selected as participant in Hofstra Moot Court Seminar, Hofstra University School of Law

### Susan K. Alexander

Susan K. Alexander is a partner in the Firm's San Francisco office and focuses on federal appeals of securities fraud class actions. With 25 years of federal appellate experience, Ms. Alexander has argued on behalf of defrauded investors in the First, Second, Fifth, Seventh, Ninth, Tenth and Eleventh Circuits. Representative results include *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) (reversal of district court dismissal of securities fraud complaint, focused on loss causation); and *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir.) (reversal of district court dismissal of securities fraud complaint, focused on scienter), *reh'g denied and opinion modified*, 409 F.3d 653 (5th Cir. 2005).

Ms. Alexander's prior appellate work was with the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of *habeas corpus* on behalf of individuals sentenced to death. At CAP, and subsequently in private practice, Ms. Alexander litigated and consulted on death penalty direct and collateral appeals for ten years. Representative results include *In re Brown*, 17 Cal. 4th 873 (1998) (reversal of first degree murder conviction, special circumstance finding, and death penalty), and *Odle v. Woodford*, 238 F.3d 1084 (9th Cir. 2001) (remand of death penalty conviction for retrospective competency hearing).

**Education:** B.A., Stanford University, 1983; J.D., University of California, Los Angeles, 1986

**Honors/Awards:** Appellate Delegate, Ninth Circuit Judicial Conference; Executive Committee, ABA Council of Appellate Lawyers

### X. Jay Alvarez

X. Jay Alvarez is a partner in the Firm's San Diego office. Mr. Alvarez's practice areas include securities fraud and other complex litigation. Mr. Alvarez is responsible for litigating securities class actions and has obtained recoveries for investors including in the following matters: *Carpenters Health & Welfare Fund v. Coca-Cola Co.* (N.D. Ga.) ($137.5 million recovery); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.* (D. Colo.) ($445 million recovery); *Hicks v. Morgan Stanley* (S.D.N.Y.), *Abrams v. VanKampen Funds Inc.* (N.D. Ill.), and *In re Eaton Vance* (D. Mass.) ($51.5 million aggregate settlements); *In re Cooper Cos., Inc. Sec. Litig.* (C.D. Cal.) ($27 million recovery); and *In re Bridgestone Sec. Litig.* (M.D. Tenn.) ($30 million recovery). Prior to joining the Firm, Mr. Alvarez served as an Assistant United States

Attorney for the Southern District of California, where he prosecuted a number of bank fraud, money laundering, and complex narcotics conspiracy cases.

**Education:** B.A., University of California, Berkeley, 1984; J.D., University of California, Berkeley, Boalt Hall School of Law, 1987

### STEPHEN R. ASTLEY

Stephen R. Astley is a partner in the Firm's Boca Raton office. Mr. Astley's practice is devoted to representing shareholders in actions brought under the federal securities laws. Mr. Astley has been responsible for the prosecution of complex securities cases and has obtained significant recoveries for investors, including cases involving Red Hat, US Unwired, TECO Energy, Tropical Sportswear, Medical Staffing, Sawtek, Anchor Glass, ChoicePoint, Jos. A. Bank, TomoTherapy, and Navistar. Prior to joining the Firm, Mr. Astley clerked for the Honorable Peter T. Fay, United States Court of Appeals for the Eleventh Circuit. In addition, he obtained extensive trial experience as a member of the United States Navy's Judge Advocate General's Corps, where he was the Senior Defense Counsel for the Pearl Harbor, Hawaii, Naval Legal Service Office Detachment.

**Education:** B.S., Florida State University, 1992; M. Acc., University of Hawaii at Manoa, 2001; J.D., University of Miami School of Law, 1997

**Honors/Awards:** J.D., *Cum Laude*, University of Miami School of Law, 1997; United States Navy Judge Advocate General's Corps., Lieutenant

### A. RICK ATWOOD, JR.

A. Rick Atwood, Jr. is a partner in the Firm's San Diego office and represents shareholders in securities class actions, merger-related class actions, and shareholder derivative actions in federal and state courts in numerous jurisdictions. Through his efforts on behalf of the Firm's clients, he has helped recover billions of dollars for shareholders. Significant opinions include *Brown v. Brewer*, No. CV 06-3731, 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010) (holding corporate directors to a higher standard of good faith conduct); *Crandon Capital Partners v. Shelk*, 157 P.3d 176 (Or. 2007) (expanding rights of shareholders in derivative litigation); *Ind. State Dist. Council of Laborers & HOD Carriers Pension Fund v. Renal Care Grp., Inc.*, No. 05-0451, 2005 U.S. Dist. LEXIS 24210 (M.D. Tenn. Aug. 18, 2005) (successfully obtaining remand of case improperly removed to federal court under the Class Action Fairness Act); *Pipefitters Local 522 & 633 Pension Trust Fund v. Salem Commc'ns Corp.*, No. CV 05-2730, 2005 U.S. Dist. LEXIS 14202 (C.D. Cal. June 28, 2005) (successfully obtaining remand of case improperly removed to federal court under the Securities Litigation Uniform Standards Act of 1998); *In re Prime Hospitality, Inc. S'holders Litig.*, No. 652-N, 2005 Del. Ch. LEXIS 61 (Del. Ch. May 4, 2005) (successfully objecting to unfair settlement and thereafter obtaining $25 million recovery for shareholders); and *Pate v. Elloway*, No. 01-03-00187-CV, 2003 Tex. App. LEXIS 9681 (Tex. App. Houston 1st Dist. Nov. 13, 2003) (upholding certification of shareholder class action under new Texas standards).

**Education:** B.A., University of Tennessee, Knoxville, 1987; B.A., Katholieke Universiteit Leuven, Belgium, 1988; J.D., Vanderbilt School of Law, 1991

**Honors/Awards:** B.A., Great Distinction, Katholieke Universiteit Leuven, Belgium, 1988; B.A., Honors, University of Tennessee, Knoxville, 1987; Authorities Editor, *Vanderbilt Journal of Transnational Law*, 1991

### RANDALL J. BARON

Randall J. Baron is a partner in the Firm's San Diego office and specializes in securities and corporate takeover litigation and breach of fiduciary duty actions. Mr. Baron is responsible for 7 of the 12 largest takeover settlements in history, including the largest settlement of its kind. In 2010, as a lead counsel in *In re Kinder Morgan, Inc. S'holder Litig.* (Kan. Dist. Ct., Shawnee County), Mr. Baron secured a settlement of $200 million on behalf of shareholders who were cashed out in the buyout. Other notable achievements include *In re Chaparral Res., Inc. S'holder Litig.* (Del. Ch.), where Mr. Baron was one of the lead trial counsel, which resulted in a common fund settlement of $41 million (or 45% increase above merger price); *In re ACS S'holder Litig.* (Del. Ch. and Tex. County Ct., Dallas County), where Mr. Baron, as lead Texas counsel, obtained significant modifications to the terms of the merger agreement and a $69 million common fund; *In re Prime Hospitality, Inc. S'holder Litig.* (Del. Ch.), where Mr. Baron led a team of lawyers who objected to a settlement that was unfair to the class and proceeded to litigate breach of fiduciary duty issues involving a sale of hotels to a private equity firm, which resulted in a common fund settlement of $25 million for shareholders; and *In re Dollar Gen. S'holder Litig.* (Tenn. Cir. Ct., Davidson County), where Mr. Baron was lead trial counsel and helped to secure a settlement of up to $57 million in a common fund shortly before trial. Prior to joining the Firm, Mr. Baron served as a Deputy District Attorney from 1990-1994 in Los Angeles County.

**Education:** B.A., University of Colorado at Boulder, 1987; J.D., University of San Diego School of Law, 1990

**Honors/Awards:** J.D., *Cum Laude*, University of San Diego School of Law, 1990

### JAMES E. BARZ

James E. Barz is a former federal prosecutor and a registered CPA. He is a trial lawyer who has tried 18 federal and state jury trials to verdict. Mr. Barz has also been the lead or co-lead in numerous evidentiary hearings and injunction hearings, and he has argued nine cases in the Seventh Circuit. Mr. Barz has experience in state and federal court, as a prosecutor and plaintiffs' attorney, as well as defending both criminal and civil cases.

For the past three years, Mr. Barz has been an Adjunct Professor at Northwestern University School of Law where he teaches Trial Advocacy.

**Education:** B.B.A., Loyola University Chicago, School of Business Administration, 1995; J.D., Northwestern University School of Law, 1998

**Honors/Awards:** B.B.A., *Summa Cum Laude*, Loyola University Chicago, School of Business Administration, 1995; J.D., *Cum Laude*, Northwestern University School of Law, 1998

### DOUGLAS R. BRITTON

Douglas R. Britton is a partner in the Firm's San Diego office and represents shareholders in securities class actions. Mr. Britton has secured settlements exceeding $1 billion and significant corporate governance enhancements to improve corporate functioning.

Notable achievements include the *In re WorldCom, Inc. Sec. & "ERISA" Litig.*, where Mr. Britton was one of the lead partners that represented a number of opt-out institutional investors and secured an unprecedented recovery of $651 million; *In re SureBeam Corp. Sec. Litig.*, where Mr. Britton was the lead trial counsel and secured an impressive recovery of $32.75 million; and *In re Amazon.com, Inc. Sec. Litig.*, where Mr. Britton was one of the lead attorneys securing a $27.5 million recovery for investors.

Mr. Britton has been specializing in securities litigation his entire legal career.

**Education:** B.B.A., Washburn University, 1991; J.D., Pepperdine University School of Law, 1996

**Honors/Awards:** J.D., *Cum Laude*, Pepperdine University School of Law, 1996

### LUKE O. BROOKS

Luke O. Brooks is a partner in the Firm's San Francisco office and is a member of the securities litigation practice group. Notably, Mr. Brooks was on the trial team that won a jury verdict in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.), a securities fraud class action against one of the world's largest subprime lenders. Although the litigation is ongoing, the *Household* verdict is expected to yield in excess of $1 billion for the plaintiff class.

**Education:** B.A., University of Massachusetts at Amherst, 1997; J.D., University of San Francisco, 2000

**Honors/Awards:** Member, *University of San Francisco Law Review*, University of San Francisco

### ANDREW J. BROWN

Andrew J. Brown is a partner in the Firm's San Diego office and prosecutes complex securities fraud and shareholder derivative actions against executives and corporations. Mr. Brown's efforts have resulted in numerous multi-million dollar recoveries to shareholders and precedent-setting changes in corporate practices. Recent examples include *Batwin v. Occam Networks, Inc.*, No. CV 07-2750, 2008 U.S. Dist. LEXIS 52365 (C.D. Cal. July 1, 2008); *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009); *In re UNUMProvident Corp. Sec. Litig.*, 396 F. Supp. 2d 858 (E.D. Tenn. 2005); and *In re*

*UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-CV-1691, 2007 U.S. Dist. LEXIS 94616 (D. Minn. Dec. 26, 2007). Prior to joining the Firm, Mr. Brown worked as a trial lawyer for the San Diego County Public Defender's Office. Thereafter, he opened his own law firm, where he represented consumers and insureds in lawsuits against major insurance companies.

**Education:** B.A., University of Chicago, 1988; J.D., University of California, Hastings College of the Law, 1992

### JOY ANN BULL

Joy Ann Bull is a partner in the Firm's San Diego office and focuses her practice on court approval of settlements reached in the Firm's class actions. Ms. Bull has negotiated complex settlement agreements and obtained court approval of a variety of notable settlements, including *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S (N.D. Ala.) ($671 million recovery); *BP plc Shareholder Litigation*, No. 3AN-06-11929CI (Alaska Super. Ct.) (BP agreed to improved shareholder input and shareholder rights as well as operational safety oversight); *Royal Dutch Shell Shareholder Litigation*, No. 04-CV-3603 (D.N.J.) (obtained improved governance standards, shareholder participation in nomination of board members, board independence standards, and compensation practices); *Carbon Fiber Antitrust Litigation*, No. CV-99-7796 (C.D. Cal.) ($67.5 million recovery); *Ryan v. Flowserve Corp.*, No. 3:03-CV-01769-B (N.D. Tex.) ($55 million recovery); *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 1:04-cv-00416 (M.D.N.C.) ($75 million recovery); *In re Northwestern Corp. Sec. Litig.*, No. CIV-03-4049 (D.S.D.) ($48 million recovery); *In re Dole S'holders Litig.*, No. BC281949 (Cal. Super. Ct., Los Angeles County) ($172 million recovery plus injunctive relief); *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030 (M.D. Fla.) ($89 million); *In re LifeScan, Inc. Consumer Litig.*, No. C-98-20321 (N.D. Cal.) ($45 million cash recovery); and *Hall v. NCAA*, No. 94-2392 (D. Kan.) (more than $70 million cash recovery).

**Education:** B.A., University of Illinois, Springfield, 1970; M.A., University of Illinois, Springfield, 1972; J.D., University of San Diego School of Law, 1988

**Honors/Awards:** J.D., *Magna Cum Laude*, University of San Diego School of Law, 1988; Member, University of San Diego National Trial Competition Team; Member, *San Diego Law Review*, University of San Diego School of Law

### SPENCER A. BURKHOLZ

Spencer A. Burkholz is a partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. Mr. Burkholz specializes in securities class actions and private actions on behalf of large institutional investors and was one of the lead trial attorneys in the *Household* securities class action that resulted in a jury verdict on liability and per share damages in favor of investors in May 2009. Mr. Burkholz has also represented public and private institutional investors in the *Enron*, *WorldCom*, *Qwest* and *Cisco* securities actions that have recovered billions of dollars for investors. Mr. Burkholz is currently representing large institutional investors in actions involving the credit crisis.

**Education:** B.A., Clark University, 1985; J.D., University of Virginia School of Law, 1989

**Honors/Awards:** B.A., *Cum Laude*, Clark University, 1985; *Phi Beta Kappa*, Clark University, 1985

### JAMES CAPUTO

James Caputo is a partner in the Firm's San Diego office. Mr. Caputo focuses his practice on the prosecution of complex litigation involving securities fraud and corporate malfeasance, consumer protection violations, unfair business practices, contamination and toxic torts, and employment and labor law violations. Mr. Caputo successfully served as lead or co-lead counsel in numerous class, consumer and employment litigation matters, including *In re S3 Sec. Litig.*, No. CV770003 (Cal. Super. Ct., Santa Clara County); *Santiago v. Kia Motors Am.*, No. 01CC01438 (Cal. Super. Ct., Orange County); *In re Fleming Cos. Sec. Litig.*, No. 02-CV-178 (E.D. Tex.); *In re Valence Tech. Sec. Litig.*, No. C95-20459 (N.D. Cal.); *In re THQ, Inc. Sec. Litig.*, No. CV-00-01783 (C.D. Cal.); *Mynaf v. Taco Bell Corp.*, CV 761193 (Cal. Super. Ct., Santa Clara County); *Newman v. Stringfellow* (Cal. Super. Ct., Riverside County); *Carpenters Health & Welfare Fund v. Coca Cola Co.*, No. 00-CV-2838-WBH (N.D. Ga.); *Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp.*, No. 1-04-cv-021465 (Cal. Super. Ct., Santa Clara County); and *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S (N.D. Ala.). Collectively, these actions have returned well over $1 billion to injured stockholders, consumers and employees.

Prior to joining the Firm, Mr. Caputo was a staff attorney to Associate Justice Don R. Work and Presiding Justice Daniel J. Kremer of the California Court of Appeal, Fourth Appellate District.

**Education:** B.S., University of Pittsburgh, 1970; M.A., University of Iowa, 1975; J.D., California Western School of Law, 1984

**Honors/Awards:** San Diego Super Lawyer (2008-Present); J.D., *Magna Cum Laude*, California Western School of Law,1984; Editor-in-Chief, International Law Journal, California Western School of Law

### CHRISTOPHER COLLINS

Christopher Collins is a partner in the Firm's San Diego office. His practice areas include antitrust, consumer protection and tobacco litigation. Mr. Collins served as co-lead counsel in *Wholesale Elec. Antitrust Cases I & II*, JCCP Nos. 4204 & 4205, charging an antitrust conspiracy by wholesale electricity suppliers and traders of electricity in California's newly deregulated wholesale electricity market wherein plaintiffs secured a global settlement for California consumers, businesses and local governments valued at more than $1.1 billion. Mr. Collins was also involved in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities. Mr. Collins is currently counsel on the MemberWorks upsell litigation, as well as a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations. Mr. Collins formerly served as a Deputy District Attorney for Imperial County.

**Education:** B.A., Sonoma State University, 1988; J.D., Thomas Jefferson School of Law, 1995

### JOSEPH D. DALEY

Joseph D. Daley is a partner in the Firm's San Diego office, serves on the Firm's Securities Hiring Committee, and is a member of the Firm's Appellate Practice Group. Precedents include *Frank v. Dana Corp.* ("*Dana II*"), _F.3d_, 2011 U.S. App. LEXIS 10437 (6th Cir. May 25, 2011); *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167 (9th Cir. 2009), *aff'd*, _U.S._, 131 S.Ct. 1309 (2011); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248 (11th Cir. 2009); *Frank v. Dana Corp.* ("*Dana I*"), 547 F.3d 564 (6th Cir. 2008); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008); *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393 (3d Cir. 2007); *In re Qwest Commc'ns Int'l*, 450 F.3d 1179 (10th Cir. 2006); and *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935 (10th Cir. 2005). Mr. Daley is admitted to practice before the Supreme Court of the United States, as well as before 12 United States Courts of Appeals around the nation.

**Education:** B.S., Jacksonville University, 1981; J.D., University of San Diego School of Law, 1996

**Honors/Awards:** San Diego Super Lawyer (2011); Appellate Moot Court Board, Order of the Barristers, University of San Diego School of Law; Best Advocate Award (Traynore Constitutional Law Moot Court Competition), First Place and Best Briefs (Alumni Torts Moot Court Competition and USD Jessup International Law Moot Court Competition)

### PATRICK W. DANIELS

Patrick W. Daniels is a founding partner of the Firm and a member of the Firm's Management Committee. Mr. Daniels counsels private and state government pension funds, central banks and fund managers in the United States, Australia, United Arab Emirates, United Kingdom, the Netherlands, and other countries within the European Union on issues related to corporate fraud in the United States securities markets and on "best practices" in the corporate governance of publicly traded companies. Mr. Daniels has represented dozens of institutional investors in some of the largest and most significant shareholder actions in the United States, including the *Enron*, *WorldCom*, *AOL Time Warner* and *BP* actions.

**Education:** B.A., University of California, Berkeley, 1993; J.D., University of San Diego School of Law, 1997

**Honors/Awards:** One of the Most 20 Most Influential Lawyers in the State of California Under 40 Years of Age, *Daily Journal*; Rising Star of Corporate Governance, Yale School of Management's Milstein Center for Corporate Governance & Performance; B.A., *Cum Laude*, University of California, Berkeley, 1993

### STUART A. DAVIDSON

Stuart A. Davidson is a partner in the Firm's Boca Raton office and currently devotes his time to the representation of investors in class actions involving mergers and acquisitions, in prosecuting derivative lawsuits on behalf of public corporations, and in prosecuting a

number of consumer fraud cases throughout the nation. Since joining the Firm, Mr. Davidson has obtained multi-million dollar recoveries for healthcare providers, consumers and shareholders, including cases involving Aetna Health, Vista Healthplan, Fidelity Federal Bank & Trust, and UnitedGlobalCom. Mr. Davidson is a former lead trial attorney in the Felony Division of the Broward County, Florida Public Defender's Office. During his tenure at the Public Defender's Office, Mr. Davidson tried over 30 jury trials and represented individuals charged with a variety of offenses, including life and capital felonies.

**Education:** B.A., State University of New York at Geneseo, 1993; J.D., Nova Southeastern University Shepard Broad Law Center, 1996

**Honors/Awards:** J.D., *Summa Cum Laude*, Nova Southeastern University Shepard Broad Law Center, 1996; Associate Editor, *Nova Law Review*, Book Awards in Trial Advocacy, Criminal Pretrial Practice and International Law

### JASON C. DAVIS

Jason C. Davis is a partner in the Firm's San Francisco office. Mr. Davis' practice focuses on securities class actions and complex litigation involving equities, fixed-income, synthetic and structured securities issued in public and private transactions. Mr. Davis was on the trial team that won a unanimous jury verdict in a class action against one of the world's largest subprime lenders in *Jaffe v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.).

Previously, Mr. Davis focused on cross-border transactions, mergers and acquisitions at Cravath, Swaine and Moore LLP in New York.

**Education:** B.A., Syracuse University, 1998; J.D., University of California at Berkeley, Boalt Hall School of Law, 2002

**Honors/Awards:** B.A., *Summa Cum Laude*, Syracuse University, 1998; International Relations Scholar of the year, Syracuse University; Teaching fellow, examination awards, Moot court award, University of California at Berkeley, Boalt Hall School of Law

### MICHAEL J. DOWD

Michael J. Dowd is a founding partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. Mr. Dowd is responsible for prosecuting complex securities cases and has obtained significant recoveries for investors in cases such as *AOL Time Warner*, *UnitedHealth*, *WorldCom*, *Qwest*, *Vesta*, *U.S. West* and *Safeskin*. In 2009, Mr. Dowd served as lead trial counsel in *Jaffe v. Household Int'l Inc.* in the Northern District of Illinois, which resulted in a jury liability verdict for plaintiffs expected to yield in excess of $1 billion for the injured class. Mr. Dowd also served as the lead trial lawyer in *In re AT&T Corp. Sec. Litig.*, which was tried in the District of New Jersey and settled after only two weeks of trial for $100 million. Mr. Dowd served as an Assistant United States Attorney in the Southern District of California from 1987-1991, and again from 1994-1998.

**Education:** B.A., Fordham University, 1981; J.D., University of Michigan School of Law, 1984

**Honors/Awards:** Attorney of the Year, *California Lawyer*; Director's Award for Superior Performance, United States Attorney's Office; Top 100 Lawyers, *Daily Journal*, 2009; B.A., *Magna Cum Laude*, Fordham University, 1981

### TRAVIS E. DOWNS III

Travis E. Downs III is a partner in the Firm's San Diego office and focuses his practice on the prosecution of shareholder and securities litigation, including shareholder derivative litigation on behalf of corporations. Mr. Downs has extensive experience in federal and state shareholder litigation and recently led a team of lawyers who successfully prosecuted over 65 stock option backdating derivative actions pending in state and federal courts across the country, including *In re Marvell Tech. Grp., Inc. Derivative Litig.* ($54 million in financial relief and extensive corporate governance enhancements); *In re KLA-Tencor Corp. Derivative Litig.* ($42.6 million in financial relief and significant corporate governance reforms); *In re McAfee, Inc. Derivative Litig.* ($30 million in financial relief and corporate governance enhancements); *In re Activision Corp. Derivative Litig.* ($24.3 million in financial relief and extensive corporate governance reforms); and *In re Juniper Networks, Inc. Derivative Litig.* ($22.7 million in financial relief and significant corporate governance enhancements).

**Education:** B.A., Whitworth University, 1985; J.D., University of Washington School of Law, 1990

**Honors/Awards:** B.A., Honors, Whitworth University, 1985

### DANIEL S. DROSMAN

Daniel S. Drosman is a partner in the Firm's San Diego office and focuses his practice on securities fraud and other complex civil litigation. Mr. Drosman has obtained significant recoveries for investors in cases such as *Cisco Systems*, *Coca-Cola*, *Petco*, *PMI* and *America West*. In 2009, Mr. Drosman served as one of the lead trial attorneys in *Jaffe v. Household Int'l, Inc.* in the Northern District of Illinois, which resulted in a jury verdict for plaintiffs expected to yield in excess of $1 billion for the injured investors. Mr. Drosman currently leads a group of attorneys prosecuting fraud claims against the credit rating agencies, where he is distinguished as one of the few plaintiffs' counsel to overcome the credit rating agencies' motions to dismiss.

Prior to joining the Firm, Mr. Drosman served as an Assistant District Attorney for the Manhattan District Attorney's Office, and an Assistant United States Attorney in the Southern District of California, where he investigated and prosecuted violations of the federal narcotics, immigration, and official corruption law.

**Education:** B.A., Reed College, 1990; J.D., Harvard Law School, 1993

**Honors/Awards:** Department of Justice Special Achievement Award, Sustained Superior Performance of Duty; B.A., Honors, Reed College, 1990; *Phi Beta Kappa*, Reed College, 1990

### THOMAS E. EGLER

Thomas E. Egler is a partner in the Firm's San Diego office and focuses his practice on the prosecution of securities class actions on behalf of defrauded shareholders. Mr. Egler is responsible for prosecuting securities fraud class actions and has obtained recoveries for investors in litigation involving WorldCom ($657 million recovery), AOL Time Warner ($629 million recovery), and Qwest ($445 million recovery), as well as dozens of other actions.

Prior to joining the Firm, Mr. Egler was a law clerk to the Honorable Donald E. Ziegler, Chief Judge, United States District Court, Western District of Pennsylvania.

**Education:** B.A., Northwestern University, 1989; J.D., The Catholic University of America, Columbus School of Law, 1995

**Honors/Awards:** Associate Editor, *The Catholic University Law Review*

### PAUL J. GELLER

Paul J. Geller, one of the Firm's founding partners, manages the Firm's Boca Raton, Florida office and sits on the Firm's Executive Committee. Before devoting his practice exclusively to the representation of plaintiffs, Mr. Geller defended blue-chip companies in class action lawsuits at one of the world's largest corporate defense firms.

Mr. Geller's class action experience is broad, and he has handled cases in each of the Firm's practice areas. His securities fraud successes include class actions against three large mutual fund families for the manipulation of asset values (*Hicks v. Morgan Stanley*; *Abrams v. Van Kampen*; *In re Eaton Vance*) ($51.5 million aggregate settlements) and a case against Lernout & Hauspie Speech Products, N.V. ($115 million settlement). In the derivative arena, Mr. Geller was lead derivative counsel in a case against Prison Realty Trust (total aggregate settlement of $120 million). In the corporate takeover area, Mr. Geller led cases against the boards of directors of Outback Steakhouse ($30 million additional consideration to shareholders) and Intermedia Corp. ($38 million settlement). Finally, Mr. Geller has handled many consumer fraud class actions, including cases against Fidelity Federal for privacy violations ($50 million settlement) and against Dannon for falsely advertising the health benefits of yogurt ($45 million settlement).

**Education:** B.S., University of Florida, 1990; J.D., Emory University School of Law, 1993

**Honors/Awards:** One of Florida's Top Lawyers, *Law & Politics*; One of the Nation's Top 500 Lawyers, *Lawdragon*; One of the Nation's Top 40 Under 40, *The National Law Journal*; Editor, *Emory Law Review*; Order of the Coif, Emory University School of Law; "Florida Super Lawyer," *Law & Politics;* "Legal Elite," *South Fla. Bus. Journal*; "Most Effective Lawyer Award," *American Law Media*

### DAVID J. GEORGE

David J. George is a partner in the Firm's Boca Raton office and devotes his practice to representing defrauded investors in securities class actions. Mr. George, a zealous advocate of shareholder rights, has been lead and/or co-lead counsel with respect to various securities class action matters, including *In re Cryo Cell Int'l, Inc. Sec. Litig.* (M.D. Fla.) ($7 million settlement); *In re TECO Energy, Inc. Sec. Litig.* (M.D. Fla.) ($17.35 million settlement); *In re Newpark Res., Inc. Sec. Litig.* (E.D. La.) ($9.24 million settlement); *In re Mannatech, Inc. Sec. Litig.* (N.D. Tex.) ($11.5 million settlement); *Reese v. McGraw Hill Cos., Inc.* (S.D.N.Y.); *Kuriakose v. Fed. Home Loan Mtg. Co.* (S.D.N.Y.); *City of Lakeland Emps. Pension Plan v. Baxter Int'l, Inc.* (N.D. Ill.); *Locals 302 & 612 of the Int'l Union of Operating Eng's v. Mort. Asset Securitization Transactions, Inc.* (D.N.J.); *City of Roseville Emps. Ret. Sys. v. Textron, Inc.* (D.R.I.); and *Sheet Metal Workers Local 32 Pension Fund v. Terex Corp.* (D. Conn.). Mr. George has also acted as lead counsel in numerous consumer class actions, including *Lewis v. Labor Ready, Inc.* (S.D. Fla.) ($11 million settlement); *In re Webloyalty.com, Inc. Mktg. Practices & Sales Practices Litig.* (D. Mass.) ($10 million settlement); and *In re Navisite Migration Litig.* (D. Md.) ($1.7 million settlement). Mr. George was also a member of the litigation team in *In re UnitedHealth Grp. Inc. PSLRA Litig.* (D. Minn.) ($925.5 million settlement).

**Education:** B.A., University of Rhode Island, 1988; J.D., University of Richmond School of Law, 1991

**Honors/Awards:** One of Florida's Most Effective Corporate/Securities Lawyers (only plaintiffs' counsel recognized), *Daily Business Review*; J.D., Highest Honors, Outstanding Graduate & Academic Performance Awards, President of McNeill Law Society/Order of the Coif, University of Richmond School of Law

### JONAH H. GOLDSTEIN

Jonah H. Goldstein is a partner in the Firm's San Diego office and responsible for prosecuting complex securities cases and obtaining recoveries for investors. Mr. Goldstein also represents corporate whistleblowers who report violations of the securities laws. Mr. Goldstein has achieved significant settlements on behalf of investors including in *In re HealthSouth Sec. Litig.* (over $670 million recovered against HealthSouth, UBS and Ernst & Young) and *In re Cisco Sec. Litig.* (approximately $100 million). Mr. Goldstein also served on the Firm's trial team in *In re AT&T Corp. Sec. Litig.*, MDL No. 1399 (D.N.J.), which settled after two weeks of trial for $100 million. Prior to joining the Firm, Mr. Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court and as an Assistant United States Attorney for the Southern District of California, where he tried numerous cases and briefed and argued appeals before the Ninth Circuit Court of Appeals.

**Education:** B.A., Duke University, 1991; J.D., University of Denver College of Law, 1995

**Honors/Awards:** Comments Editor, *University of Denver Law Review*, University of Denver College of Law

## BENNY C. GOODMAN III

Benny C. Goodman III is a partner in the Firm's San Diego office and concentrates his practice on shareholder derivative and securities class actions. Mr. Goodman has achieved groundbreaking settlements as lead counsel in a number of shareholder derivative actions related to stock option backdating by corporate insiders, including *In re KB Home S'holder Derivative Litig.*, No. CV-06-05148 (C.D. Cal.) (extensive corporate governance changes, over $80 million cash back to the company); *In re Affiliated Computer Servs. Derivative Litig.*, No. 06-CV-1110 (N.D. Tex.) ($30 million recovery); and *Gunther v. Tomasetta*, No. 06-cv-02529 (C.D. Cal.) (corporate governance overhaul, including shareholder nominated directors, and cash payment to Vitesse Semiconductor Corporation from corporate insiders).

Mr. Goodman also represented over 60 public and private institutional investors that filed and settled individual actions in the *WorldCom* securities litigation. Additionally, Mr. Goodman successfully litigated several other notable securities class actions against companies such as Infonet Services Corporation, Global Crossing, and Fleming Companies, Inc., each of which resulted in significant recoveries for shareholders.

**Education:** B.S., Arizona State University, 1994; J.D., University of San Diego School of Law, 2000

## ELISE J. GRACE

Elise J. Grace is a partner in the San Diego office and responsible for advising the Firm's state and government pension fund clients on issues related to securities fraud and corporate governance. Ms. Grace serves as the Editor-in-Chief of the Firm's Corporate Governance Bulletin and is a frequent lecturer on securities fraud, shareholder litigation, and options for institutional investors seeking to recover losses caused by securities and accounting fraud. Ms. Grace has prosecuted various significant securities fraud class actions, including the *AOL Time Warner* state and federal securities opt-out litigations, which resulted in a combined settlement of $629 million for defrauded shareholders. Prior to joining the Firm, Ms. Grace was an associate at Brobeck Phleger & Harrison LLP and Clifford Chance LLP, where she defended various Fortune 500 companies in securities class actions and complex business litigation.

**Education:** B.A., University of California, Los Angeles, 1993; J.D., Pepperdine School of Law, 1999

**Honors/Awards:** J.D., *Magna Cum Laude*, Pepperdine School of Law, 1999; AMJUR American Jurisprudence Awards - Conflict of Laws; Remedies; Moot Court Oral Advocacy; Dean's Academic Scholarship, Pepperdine School of Law; B.A., *Summa Cum Laude*, University of California, Los Angeles, 1993; B.A., *Phi Beta Kappa*, University of California, Los Angeles, 1993

## JOHN K. GRANT

John K. Grant is a partner in the Firm's San Francisco office and devotes his practice to representing investors in securities fraud class actions. Mr. Grant has litigated numerous successful securities actions as lead or co-lead counsel, including *In re Micron Tech., Inc. Sec. Litig.* ($42 million recovery), *Perera v. Chiron Corp.* ($40 million recovery), *King v. CBT Grp., PLC* ($32 million recovery), and *In re Exodus Commc'ns, Inc. Sec. Litig.* ($5 million recovery).

**Education:** B.A., Brigham Young University, 1988; J.D., University of Texas at Austin, 1990

## KEVIN K. GREEN

Kevin K. Green is a partner in the Firm's San Diego office and represents defrauded investors and consumers in the appellate courts. He is a member of the California Academy of Appellate Lawyers and a Certified Appellate Specialist, State Bar of California Board of Legal Specialization. Mr. Green has filed briefs and argued appeals and writs in jurisdictions across the country. Decisions include: *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); *Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789 (2011); *Fox v. JAMDAT Mobile, Inc.*, 185 Cal. App. 4th 1068 (2010); *In re F5 Networks, Inc., Derivative Litig.*, 207 P.3d 433 (Wash. 2009); *Smith v. Am. Family Mut. Ins. Co.*, 289 S.W.3d 675 (Mo. Ct. App. 2009); *Alaska Elec. Pension Fund v. Brown*, 941 A.2d 1011 (Del. 2007); and *Lebrilla v. Farmers Grp., Inc.*, 119 Cal. App. 4th 1070 (2004).

**Education:** B.A., University of California, Berkeley, 1989; J.D., Notre Dame Law School, 1995

**Honors/Awards:** San Diego Super Lawyer (2008- present)

## TOR GRONBORG

Tor Gronborg is a partner in the Firm's San Diego office and focuses his practice on securities fraud actions. Mr. Gronborg has served as lead or co-lead litigation counsel in various cases that have collectively recovered more than $1 billion for investors, including *In re Cardinal Health, Inc. Sec. Litig.* ($600 million); *In re Prison Realty Sec. Litig.* ($104 million); *In re Accredo Health, Inc. Sec. Litig.* ($33 million); and *Roth v. Aon Corp.* ($30 million). On three separate occasions, Mr. Gronborg's pleadings have been upheld by the federal Courts of Appeals (*Broudo v. Dura Pharms., Inc.*, 339 F.3d 933 (9th Cir. 2003), *rev'd on other grounds*, 554 U.S. 336 (2005); *In re Daou Sys.*, 411 F.3d 1006 (9th Cir. 2005); *Staehr v. Hartford Fin.Servs. Grp.*, 547 F.3d 406 (2d Cir. 2008)), and he has been responsible for a number of significant rulings, including *Roth v. Aon Corp.*, No. 04-C-6835, 2008 U.S. Dist. LEXIS 18471 (N.D. Ill. Mar. 7, 2008); *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. Aug. 8, 2006); and *In re Dura Pharms., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005 (S.D. Cal. 2006).

**Education:** B.A., University of California, Santa Barbara, 1991; Rotary International Scholar, University of Lancaster, U.K., 1992; J.D., University of California, Berkeley, 1995

**Honors/Awards:** Moot Court Board Member, University of California, Berkeley; AFL-CIO history scholarship, University of California, Santa Barbara

### ELLEN GUSIKOFF STEWART

Ellen Gusikoff Stewart is a partner in the Firm's San Diego office and practices in the Firm's settlement department, negotiating and documenting the Firm's complex securities, merger, ERISA and stock options backdating derivative actions. Recent settlements include *In re Forest Labs., Inc. Sec. Litig.* (S.D.N.Y.) ($65 million); *In re Activision, Inc. S'holder Derivative Litig.* (C.D. Cal.) ($24.3 million in financial benefits to Activision in options backdating litigation); *In re Affiliated Computer Servs. Derivative Litig.* (N.D. Tex.) ($30 million cash benefit to ACS in options backdating litigation); and *In re TD Banknorth S'holders Litig.* (Del. Ch.) ($50 million).

**Education:** B.A., Muhlenberg College, 1986; J.D., Case Western Reserve University, 1989

**Honors/Awards:** Peer-Rated by Martindale-Hubbell

### DENNIS J. HERMAN

Dennis J. Herman is a partner in the Firm's San Francisco office and concentrates his practice on securities class action litigation. Mr. Herman has led or been significantly involved in the prosecution of numerous securities fraud claims that have resulted in substantial recoveries for investors, including settled actions against Coca-Cola ($137 million), VeriSign ($78 million), NorthWestern ($40 million), America Service Group ($15 million), Specialty Laboratories ($12 million), Stellent ($12 million) and Threshold Pharmaceuticals ($10 million). Mr. Herman led the prosecution of the securities action against Lattice Semiconductor, which resulted in a significant, precedent-setting decision regarding the liability of officers who falsely certify the adequacy of internal accounting controls under the Sarbanes-Oxley Act.

**Education:** B.S., Syracuse University, 1982; J.D., Stanford Law School, 1992

**Honors/Awards:** Order of the Coif, Stanford Law School; Urban A. Sontheimer Award (graduating second in his class), Stanford Law School; Award-winning Investigative Newspaper Reporter and Editor in California and Connecticut

### JOHN HERMAN

John Herman is the Chair of the Firm's Intellectual Property Practice and manages the Firm's Atlanta office. Mr. Herman has spent his career enforcing the intellectual property rights of famous inventors and innovators against infringers throughout the United States. He has assisted patent owners in collecting hundreds of millions of dollars in royalties. Mr. Herman is recognized by his peers as being among the leading intellectual property litigators in the country.

Mr. Herman's noteworthy cases include representing renowned inventor Ed Phillips in the landmark case of *Phillips v. AWH Corp.*; representing pioneers of mesh technology – David Petite and Edwin Brownrigg – in a series of patent infringement cases on multiple patents; and acting as plaintiffs' counsel in the *In re Home Depot* shareholder derivative actions pending in Fulton County Superior Court.

**Education:** B.S., Marquette University, 1988; J.D., Vanderbilt University Law School, 1992

**Honors/Awards:** Georgia Super Lawyer, *Atlanta Magazine*; Top 100 Georgia Super Lawyers list; John Wade Scholar, Vanderbuilt University Law School; Editor-in-Chief, *Vanderbilt Journal*, Vanderbilt University Law School; B.S., *Summa Cum Laude*, Marquette University, 1988

### ERIC ALAN ISAACSON

Eric Alan Isaacson is a partner in the Firm's San Diego office and has prosecuted many securities fraud class actions, including *In re Apple Computer Sec. Litig.*, No. C 84-20148 (N.D. Cal.). Since the early 1990s, Mr. Issacson's practice has focused primarily on appellate matters in cases that have produced dozens of published precedents, including *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342 (3d Cir. 2009); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007); and *In re WorldCom Sec. Litig.*, 496 F.3d 245 (2d Cir. 2007). Mr. Isaacson has also authored a number of publications, including *What's Brewing in Dura v. Broudo? The Plaintiffs' Attorneys Review the Supreme Court's Opinion and Its Import for Securities-Fraud Litigation* (co-authored with Patrick J. Coughlin and Joseph D. Daley), 37 Loy. U. Chi. L.J. 1 (2005); and *Securities Class Actions in the United States* (co-authored with Patrick J. Coughlin), Litigation Issues in the Distribution of Securities: An International Perspective 399 (Kluwer International/International Bar Association, 1997).

**Education:** B.A., Ohio University, 1982; J.D., Duke University School of Law, 1985

**Honors/Awards:** San Diego Super Lawyer; Unitarian Universalist Association Annual Award for Volunteer Service; J.D., High Honors, Order of the Coif, Duke University School of Law, 1985; Comment Editor, *Duke Law Journal*, Moot Court Board, Duke University School of Law

### JAMES I. JACONETTE

James I. Jaconette is a partner in the Firm's San Diego office and focuses his practice on securities class action and shareholder derivative litigation. Mr. Jaconette has served as one of the lead counsel in securities cases with recoveries to individual and institutional investors totaling over $8 billion. He also advises institutional investors, including hedge funds, pension funds and financial institutions. Landmark securities actions in which Mr. Jaconette contributed in a primary litigating role include *In re Informix Corp. Sec. Litig.*, and *In re Dynegy Inc. Sec. Litig.* and *In re Enron Corp. Sec. Litig.*, where Mr. Jaconette represented lead plaintiff The Regents of the University of California. In addition, Mr. Jaconette has extensive experience in options backdating matters.

**Education:** B.A., San Diego State University, 1989; M.B.A., San Diego State University, 1992; J.D., University of California Hastings College of the Law, 1995

**Honors/Awards:** J.D., *Cum Laude*, University of California Hastings College of the Law, 1995; Associate Articles Editor, *Hastings Law Journal*, University of California Hastings College of the Law; B.A., with Honors and Distinction, San Diego State University, 1989

### FRANK J. JANECEK, JR.

Frank J. Janecek, Jr. is a partner in the Firm's San Diego office and practices in the areas of consumer/antitrust, Proposition 65, taxpayer and tobacco litigation. Mr. Janecek served as co-lead counsel, as well as court appointed liaison counsel, in *Wholesale Elec. Antitrust Cases I & II*, JCCP Nos. 4204 & 4205, charging an antitrust conspiracy by wholesale electricity suppliers and traders of electricity in California's newly deregulated wholesale electricity market. In conjunction with the Governor of the State of California, the California State Attorney General, the California Public Utilities Commission, the California Electricity Oversight Board, a number of other state and local governmental entities and agencies, and California's large, investor-owned electric utilities, plaintiffs secured a global settlement for California consumers, businesses and local governments valued at more than $1.1 billion. Mr. Janecek also chaired several of the litigation committees in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities, and also handled a constitutional challenge to the State of California's Smog Impact Fee in *Ramos v. Dep't of Motor Vehicles*, No. 95AS00532 (Cal. Super. Ct., Sacramento County), which resulted in more than a million California residents receiving full refunds and interest, totaling $665 million.

**Education:** B.S., University of California, Davis, 1987; J.D., Loyola Law School, 1991

### RACHEL L. JENSEN

Rachel L. Jensen is a partner in the Firm's San Diego office and focuses her practice on nationwide consumer, insurance and securities class actions against some of the largest companies in the United States. Most recently, her practice has focused on hazardous children's toys, helping to secure a nationwide settlement with toy manufacturing giants Mattel and Fisher-Price that provided full consumer refunds and required greater quality assurance programs. She has also helped to secure millions of dollars on behalf of policyholders against insurance brokers and carriers for engaging in bid-rigging and other conduct that betrayed their trust and resulted in higher premiums and inferior coverage.

Prior to joining the Firm, Ms. Jensen was an associate at Morrison & Foerster in San Francisco and later served as a clerk to the Honorable Warren J. Ferguson of the Ninth Circuit Court of Appeals. Ms. Jensen also worked abroad as a law clerk in the Office of the Prosecutor at the International Criminal Tribunal for Rwanda (ICTR) and at the International Criminal Tribunal for the Former Yugoslavia (ICTY).

**Education:** B.A., Florida State University, 1997; University of Oxford, International Human Rights Law Program at New College, Summer 1998; J.D., Georgetown University Law School, 2000

**Honors/Awards:** Editor-in-Chief, *First Annual Review of General and Sexuality Law*, Georgetown University Law School; Dean's List 1998-1999; B.A., *Cum Laude*, Florida State University's Honors Program, 1997; *Phi Beta Kappa*; Awarded Best Executive Agency Director of the Year in college for revamping Florida State University's Women's Educational and Cultural Center

### EVAN J. KAUFMAN

Evan J. Kaufman is a partner in the Firm's New York office and focuses his practice in the area of complex litigation in federal and state courts including securities, corporate mergers and acquisitions, derivative, and consumer fraud class actions. Mr. Kaufman has served as lead counsel or played a significant role in numerous actions, including *In re TD Banknorth S'holders Litig.* ($50 million recovery); *In re Gen. Elec. Co. ERISA Litig.* ($40 million cost to GE, including significant improvements to GE's employee retirement plan, and benefits to GE plan participants valued in excess of $100 million); *In re Warner Chilcott Ltd. Sec. Litig.* ($16.5 million recovery); *In re Royal Grp. Tech. Sec. Litig.* ($9 million recovery); and *In re Audiovox Derivative Litig.* ($6.75 million recovery and corporate governance reforms).

**Education:** B.A., University of Michigan, 1992; J.D., Fordham University School of Law, 1995

**Honors/Awards:** Member, *Fordham International Law Journal*, Fordham University School of Law

### CATHERINE J. KOWALEWSKI

Catherine J. Kowalewski is a partner in the Firm's San Diego office and focuses her practice on the investigation of potential actions on behalf of defrauded investors, primarily in the area of accounting fraud. In addition to being an attorney, Ms. Kowalewski is a Certified Public Accountant. Ms. Kowalewski has participated in the investigation and litigation of many large accounting scandals, including *In re Cardinal Health, Inc. Sec. Litig.* and *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, and numerous companies implicated in the stock option backdating scandal. Prior to joining the Firm, Ms. Kowalewski served as a judicial extern to the Honorable Richard D. Huffman of the California Court of Appeal.

**Education:** B.B.A., Ohio University, 1994; M.B.A., Limburgs Universitair Centrum, 1995; J.D., University of San Diego School of Law, 2001

**Honors/Awards:** Lead Articles Editor, *San Diego Law Review*, University of San Diego

### ARTHUR C. LEAHY

Arthur C. Leahy is a founding partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. Mr. Leahy has over 15 years of experience successfully litigating securities class actions and derivative cases. Mr. Leahy has recovered well over a billion dollars for the Firm's clients and has also negotiated comprehensive pro-investor corporate governance reforms at several large public companies. Mr. Leahy was part of the Firm's trial team in the AT&T securities litigation,

which AT&T and its former officers paid $100 million to settle after two weeks of trial. Prior to joining the Firm, Mr. Leahy served as a judicial extern for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit, and served as a judicial law clerk for the Honorable Alan C. Kay of the United States District Court for the District of Hawaii.

**Education:** B.A., Point Loma College, 1987; J.D., University of San Diego School of Law, 1990

**Honors/Awards:** J.D., *Cum Laude*, University of San Diego School of Law, 1990; Managing Editor, *San Diego Law Review*, University of San Diego School of Law

### JEFFREY D. LIGHT

Jeffrey D. Light is a partner in the Firm's San Diego office and also currently serves as a Judge Pro Tem for the San Diego County Superior Court. Mr. Light practices in the Firm's settlement department, negotiating, documenting, and obtaining court approval of the Firm's complex securities, merger, consumer and derivative actions. These settlements include *In re Kinder Morgan, Inc. S'holder Litig.* (Kan. Dist. Ct., Shawnee County) ($200 million recovery); *In re Currency Conversion Fee Antitrust Litig.* (S.D.N.Y.) ($336 million recovery); *In re Qwest Commc'ns Int'l Inc. Sec. Litig.* (D. Colo.) ($445 million recovery); and *In re AT&T Corp. Sec. Litig.* (D.N.J.) ($100 million recovery). Prior to joining the Firm, Mr. Light served as a law clerk to the Honorable Louise DeCarl Adler, United States Bankruptcy Court, Southern District of California, and the Honorable James Meyers, Chief Judge, United States Bankruptcy Court, Southern District of California.

**Education:** B.A., San Diego State University, 1987; J.D., University of San Diego School of Law, 1991

**Honors/Awards:** J.D., *Cum Laude*, University of San Diego School of Law, 1991; Judge Pro Tem, San Diego Superior Court; American Jurisprudence Award in Constitutional Law

### RYAN LLORENS

Ryan Llorens is a partner in the Firm's San Diego office. Mr. Llorens' practice focuses on litigating complex securities fraud cases. Mr. Llorens has worked on a number of securities cases that have resulted in significant recoveries for investors, including *In re HealthSouth Corp. Sec. Litig.* ($670 million recovery); *AOL Time Warner* ($629 million recovery); *In re AT&T Corp. Sec. Litig.* ($100 million recovery); *In re Fleming Cos. Sec. Litig.* ($95 million recovery); and *In re Cooper Cos., Inc. Sec Litig.* ($27 million recovery).

**Education:** B.A., Pitzer College, 1997; J.D., University of San Diego School of Law, 2002

### THOMAS R. MERRICK

Thomas R. Merrick is a partner in the Firm's San Diego office whose practice focuses on complex class action and antitrust litigation. Most recently, Mr. Merrick was on the successful trial teams in *Lebrilla v. Farmers Grp., Inc.*, and *Smith v. Am. Family Mut. Ins.*

*Co.*, 289 S.W.3d 675 (Mo. Ct. App. 2009) (upholding unanimous jury verdict in plaintiffs' favor). Mr. Merrick represented the plaintiff in the precedent-setting case of *Safeco Ins. Co. of Am. v. Superior Court*, 173 Cal. App. 4th 814 (2009). Mr. Merrick is also counsel for direct purchaser plaintiffs in *The Apple iPod iTunes Anti-Trust Litigation*, currently pending in the Northern District of California. Prior to joining the Firm, Mr. Merrick served as a Deputy San Diego City Attorney and worked as a general practice attorney in Illinois.

**Education:** B.A., University of California, Santa Barbara, 1986; J.D., California Western School of Law, 1992

**Honors/Awards:** B.A., with high honors and distinction, University of California, Santa Barbara, 1986; J.D. *Magna Cum Laude*, California Western School of Law, 1992; Editor-in-Chief of both *California Western Law Review* and *California Western International Law Journal*, California Western School of Law

### DAVID W. MITCHELL

David W. Mitchell is a partner in the Firm's San Diego office and focuses his practice on securities fraud, antitrust and derivative litigation. Mr. Mitchell has achieved significant settlements on behalf of plaintiffs in numerous cases, including *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, No. CV-99-7796 (C.D. Cal.), which settled for $67.5 million, and *In re Currency Conversion Fee Antitrust Litig.*, 01 MDL No. 1409 (S.D.N.Y.), which settled for $336 million. Mr. Mitchell is currently litigating securities, derivative and antitrust actions, including *In re NYSE Specialists Sec. Litig.*, No. 03-Civ.-8264 (S.D.N.Y.); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 05 MDL No. 1720 (E.D.N.Y.); *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388-EFH (D. Mass); and *In re Johnson & Johnson Derivative Litig.*, No. 10-cv-02033 (D.N.J.).

Prior to joining the Firm, Mr. Mitchell served as an Assistant United States Attorney in the Southern District of California and prosecuted cases involving narcotics trafficking, bank robbery, murder-for-hire, alien smuggling, and terrorism. Mr. Mitchell has tried nearly 20 cases to verdict before federal criminal juries and made numerous appellate arguments before the Ninth Circuit Court of Appeals.

**Education:** B.A., University of Richmond, 1995; J.D., University of San Diego School of Law, 1998

### BRIAN O. O'MARA

Brian O. O'Mara is a partner in the Firm's San Diego office. Mr. O'Mara's practice focuses on securities litigation and corporate governance. Since 2003, Mr. O'Mara has been lead or co-lead counsel in numerous securities fraud and derivative actions, including *In re Direct Gen. Sec. Litig.*; *In re St. Paul Travelers Cos., Inc. Derivative Litig.*; *In re Constar Int'l Inc. Sec. Litig.*; *In re Surebeam Corp. Sec. Litig.*; *Broudo v. Dura Pharms.*; *In re NYSE Specialists Sec. Litig.*; and *In re CIT Grp. Inc. Sec. Litig.* Mr. O'Mara has been responsible for a number of significant rulings, including *In re Constar Int'l Inc. Sec. Litig.*, No. 03-5020, 2008 U.S. Dist. LEXIS 16966 (E.D. Pa. Mar. 5, 2008); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077, 2006 U.S. Dist. LEXIS 56128 (M.D. Tenn. Aug. 8, 2006); and *In re Dura*

*Pharms., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005 (S.D. Cal. 2006). Mr. O'Mara is the co-author of *Whether Alleging "Motive and Opportunity" Can Satisfy the Heightened Pleading Standards for the Private Securities Litigation Reform Act: Much Ado About Nothing*, 1 DePaul Bus. & Com. L.J. 313 (2003). Prior to joining the Firm, Mr. O'Mara served as law clerk to the Honorable Jerome M. Polaha of the Second Judicial District Court of the State of Nevada.

**Education:** B.A., University of Kansas, 1997; J.D., DePaul University, College of Law, 2002

**Honors/Awards:** CALI Excellence Award in Securities Regulation, DePaul University, College of Law

### KEITH F. PARK

Keith F. Park is a partner in the Firm's San Diego office and a member of the Firm's Management Committee.

Mr. Park is responsible for prosecuting complex securities cases and has overseen the court approval process in more than 1,000 securities class action and shareholder derivative settlements, including actions involving Enron ($7.2 billion recovery); UnitedHealth ($925 million recovery and corporate governance reforms); Dynegy ($474 million recovery and corporate governance reforms); 3Com ($259 million recovery); Dollar General ($162 million recovery); Mattel ($122 million recovery); and Prison Realty ($105 million recovery). Mr. Park is also responsible for obtaining significant corporate governance changes relating to compensation of senior executives and directors; stock trading by directors, executive officers and key employees; internal and external audit functions; and financial reporting and board independence.

**Education:** B.A., University of California, Santa Barbara, 1968; J.D., Hastings College of Law, 1972

**Honors/Awards:** San Diego Super Lawyer, Securities Litigation

### STEVEN W. PEPICH

Steven W. Pepich is a partner in the Firm's San Diego office. Mr. Pepich's practice primarily focuses on securities class action litigation, but he has also represented plaintiffs in a wide variety of complex civil cases, including mass tort, royalty, civil rights, human rights, ERISA and employment law actions. Mr. Pepich has participated in the successful prosecution of numerous securities class actions, including *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, No. 00-CV-2838 (N.D. Ga.) ($137.5 million recovery); *In re Fleming Cos. Sec.*, No. 02-CV-178 (E.D. Tex.) ($95 million recovery); and *In re Boeing Sec. Litig.*, No. C-97-1715Z (W.D. Wa.) ($92 million recovery). Mr. Pepich was also a member of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months at trial on terms favorable to two plaintiff classes of restaurant workers for recovery of unpaid wages, and a member of the plaintiffs' trial team in *Newman v. Stringfellow*, where after a nine-month trial, all claims for exposure to toxic chemicals were resolved for $109 million.

**Education:** B.S., Utah State University, 1980; J.D., DePaul University, 1983

### THEODORE J. PINTAR

Theodore J. Pintar is a partner in the Firm's San Diego office. Mr. Pintar has over 20 years of experience prosecuting securities fraud actions on behalf of investors and over 10 years of experience prosecuting insurance-related consumer class actions on behalf of policyholders, with recoveries in excess of $1 billion. Mr. Pintar was a member of the litigation team in the *AOL Time Warner* state and federal court securities opt-out actions, which arose from the 2001 merger of America Online and Time Warner. These cases resulted in a global settlement of $629 million. Mr. Pintar's participation in the successful prosecution of insurance-related and consumer class actions includes: (i) actions against major life insurance companies based on the deceptive sale of annuities and life insurance such as Manufacturer's Life ($555 million initial estimated settlement value) and Principal Mutual Life Insurance Company ($380+ million settlement value); (ii) actions against major homeowners insurance companies such as Allstate ($50 million settlement) and Prudential Property and Casualty Co. ($7 million settlement); (iii) actions against automobile insurance companies such as the Auto Club and GEICO; and (iv) actions against Columbia House ($55 million settlement value) and BMG Direct, direct marketers of CDs and cassettes.

**Education:** B.A., University of California, Berkeley, 1984; J.D., University of Utah College of Law, 1987

**Honors/Awards:** Note and Comment Editor, *Journal of Contemporary Law*, University of Utah College of Law; Note and Comment Editor, *Journal of Energy Law and Policy*, University of Utah College of Law

### WILLOW E. RADCLIFFE

Willow E. Radcliffe is a partner in the Firm's San Francisco office and concentrates her practice on securities class action litigation in federal court. Ms. Radcliffe has been significantly involved in the prosecution of numerous securities fraud claims, including actions filed against Flowserve, NorthWestern and Ashworth, and has represented plaintiffs in other complex actions, including a class action against a major bank regarding the adequacy of disclosures made to consumers in California related to Access Checks. Prior to joining the Firm, Ms. Radcliffe clerked for the Honorable Maria-Elena James, Magistrate Judge for the United States District Court for the Northern District of California.

**Education:** B.A., University of California, Los Angeles 1994; J.D., Seton Hall University School of Law, 1998

**Honors/Awards:** J.D., *Cum Laude*, Seton Hall University School of Law, 1998; Most Outstanding Clinician Award; Constitutional Law Scholar Award

### JACK REISE

Jack Reise is a partner in the Firm's Boca Raton office. Mr. Reise devotes a substantial portion of his practice to representing shareholders in actions brought under the federal

securities laws. He has served as lead counsel in over 50 cases brought nationwide and is currently serving as lead counsel in more than a dozen cases. Recent notable actions include a series of cases involving mutual funds charged with improperly valuating their net assets, which settled for a total of over $50 million; *In re NewPower Holdings Sec. Litig.*, No. 02-cv-01550 (S.D.N.Y.) ($41 million settlement); *In re Red Hat Sec. Litig.*, No. 04-cv-473 (E.D.N.C.) ($20 million settlement); and *In re AFC Enters., Inc. Sec. Litig.*, No. 03-cv-0817 (N.D. Ga.) ($17.2 million settlement). Mr. Reise started his legal career representing individuals suffering from their exposure back in the 1950s and 1960s to the debilitating affects of asbestos.

**Education:** B.A., Binghamton University, 1992; J.D., University of Miami School of Law, 1995

**Honors/Awards:** American Jurisprudence Book Award in Contracts; J.D., *Cum Laude*, University of Miami School of Law, 1995; *University of Miami Inter-American Law Review*, University of Miami School of Law

### JOHN J. RICE

John J. Rice is a partner in the Firm's San Diego office. Mr. Rice brings significant trial experience to the Firm and is a member of the Firm's litigation team. In his time at the Firm, he has prosecuted complex securities cases and helped obtain recoveries for investors in numerous cases, including *AOL Time Warner*, *HealthSouth*, *Forest Labs.*, and *Healthways*.

Prior to joining the Firm, Mr. Rice prosecuted a wide array of cases, ranging from complex white-collar cases to murder to organized crime cases. Most recently, he worked as an Assistant United States Attorney in the Southern District of California, specializing in public corruption cases. He has also served stints prosecuting organized crime for the United States Attorney's Office in the Southern District of New York and was nominated to serve as Branch Chief in the Northern Mariana Islands, prosecuting public corruption and white-collar criminal cases. Mr. Rice has been praised for his diligent efforts to combat graft, corruption, and collusion among public and private officials in San Diego and has received numerous awards from local and federal law enforcement agencies.

After law school, Mr. Rice was a judicial clerk to the late United States District Court Judge Judith N. Keep of the Southern District of California. Mr. Rice has taught for many years and currently serves as an adjunct professor at the University of San Diego School of Law.

**Education:** B.A., Harvard College, 1983; J.D., University of Virginia, 1987

**Honors/Awards:** B.A., *Cum Laude*, Harvard College, 1983; Commendations from FBI, DEA, IRS, and DOJ

### DARREN J. ROBBINS

Darren J. Robbins is a founding partner of Robbins Geller and a member of its Executive and Management Committees. Mr. Robbins oversees various aspects of the Firm's practice, including the Firm's Institutional Outreach Department and its Mergers and

Acquisitions practice. Mr. Robbins has served as lead counsel in more than one hundred securities-related actions, which have yielded recoveries of over $2 billion for injured shareholders.

One of the hallmarks of Mr. Robbins' practice has been his focus on corporate governance reform. For example, in *UnitedHealth*, a securities fraud class action arising out of an options backdating scandal, Mr. Robbins represented lead plaintiff the California Public Employees' Retirement System and was able to obtain the cancellation of more than 3.6 million stock options held by the company's former CEO and a record $925 million cash recovery for shareholders.

**Education:** B.S., University of Southern California, 1990; M.A., University of Southern California, 1990; J.D., Vanderbilt Law School, 1993

**Honors/Awards:** One of the Top 100 Lawyers Shaping the Future, *Daily Journal*; One of the "Young Litigators 45 and Under," *The American Lawyer*; Attorney of the Year, *California Lawyer*; Managing Editor, *Vanderbilt Journal of Transnational Law*, Vanderbilt Law School

### ROBERT J. ROBBINS

Robert J. Robbins is a partner in the Firm's Boca Raton office. Mr. Robbins focuses his practice on the representation of individuals and institutional investors in class actions brought pursuant to the federal securities laws. His efforts on behalf of shareholders and consumers have resulted in numerous multi-million dollar recoveries, including *In re Cryo Cell Int'l, Inc. Sec. Litig.* ($7 million settlement); *In re TECO Energy, Inc. Sec. Litig.* ($17.35 million settlement); *In re Newpark Res., Inc. Sec. Litig.* ($9.24 million settlement); *In re Mannatech, Inc. Sec. Litig.* ($11.5 million settlement); and *Lewis v. Labor Ready, Inc.* ($11 million settlement). Mr. Robbins, an ardent advocate, is counsel for shareholders in *Reese v. The McGraw-Hill Cos., Inc.* (S.D.N.Y.), *Kuriakose v. Fed. Home Loan Mtg. Co.* (Freddie Mac) (S.D.N.Y.), *City of Lakeland Employees Pension Plan v. Baxter Int'l Inc.* (N.D. Ill.), and many other securities fraud actions.

**Education:** B.S., University of Florida, 1999; J.D., University of Florida College of Law, 2002

**Honors/Awards:** J.D., High Honors, University of Florida College of Law, 2002; Member, *Journal of Law and Public Policy*, University of Florida College of Law; Member, *Phi Delta Phi*, University of Florida College of Law; *Pro bono* certificate, Circuit Court of the Eighth Judicial Circuit of Florida

### HENRY ROSEN

Henry Rosen is a partner in the Firm's San Diego office and a member of the Firm's Hiring Committee and Technology Committee, which focuses on applications to digitally manage documents produced during litigation and internally generate research files.

Mr. Rosen has significant experience prosecuting every aspect of securities fraud class actions, including largescale accounting scandals, and has obtained hundreds of millions of

dollars on behalf of defrauded investors. Prominent cases include *In re Cardinal Health, Inc. Sec. Litig.*, in which Mr. Rosen recovered $600 million for defrauded Cardinal Health shareholders. This $600 million settlement is the largest recovery ever in a securities fraud class action in the Sixth Circuit, and remains one of the largest settlements in the history of securities fraud litigation. Additional recoveries include *In re First Energy* ($89.5 million recovery); *Stanley v. Safeskin Corp.* ($55 million recovery); *In re Storage Tech. Corp. Sec. Litig.* ($55 million recovery); and *Rasner v. Sturm* (First World Commc'ns) ($25.9 million recovery). Major clients include Minebea Co., Ltd., a Japanese manufacturing company represented in securities fraud arbitration against a United States investment bank.

**Education:** B.A., University of California, San Diego, 1984; J.D., University of Denver, 1988

**Honors/Awards:** Editor-in-Chief, *University of Denver Law Review*, University of Denver

### DAVID A. ROSENFELD

David A. Rosenfeld is a partner in the Firm's New York office and focuses his practice on securities and corporate takeover litigation. Mr. Rosenfeld is currently prosecuting many cases involving widespread financial fraud, ranging from options backdating to Bernie Madoff, as well as litigation concerning collateralized debt obligations and credit default swaps.

Mr. Rosenfeld has been appointed as lead counsel in dozens of securities fraud cases and has successfully recovered hundreds of millions of dollars for defrauded shareholders. For example, Mr. Rosenfeld was appointed as lead counsel in the securities fraud lawsuit against First BanCorp, which provided shareholders with a $74.25 million recovery. He also served as lead counsel in *In re Aramark Corp. S'holders Litig.*, which resulted in a $222 million increase in consideration paid to shareholders of Aramark and a dramatic reduction to management's voting power in connection with shareholder approval of the going-private transaction (reduced from 37% to 3.5%).

**Education:** B.S., Yeshiva University, 1996; J.D., Benjamin N. Cardozo School of Law,1999

**Honors/Awards:** Advisory Board Member of *Stafford's Securities Class Action Reporter*

### ROBERT M. ROTHMAN

Robert M. Rothman is a partner in the Firm's New York office. He has extensive experience litigating cases involving investment fraud, consumer fraud and antitrust violations. Mr. Rothman also lectures to institutional investors throughout the world.

Mr. Rothman has served as lead counsel in numerous class actions alleging violations of securities laws, including cases against First Bancorp ($74.25 million recovery), Spiegel ($17.5 million recovery), NBTY ($16 million recovery), and The Children's Place ($12 million recovery). Mr. Rothman actively represents shareholders in connection with going-private transactions and tender offers. For example, in connection with a tender offer made

by Citigroup, Mr. Rothman secured an increase of more than $38 million over what was originally offered to shareholders.

**Education:** B.A., State University of New York at Binghamton, 1990; J.D., Hofstra University School of Law, 1993

**Honors/Awards:** Dean's Academic Scholarship Award, Hofstra University School of Law; J.D., with Distinction, Hofstra University School of Law, 1993; Member, *Hofstra Law Review*, Hofstra University School of Law

### SAMUEL H. RUDMAN

Samuel H. Rudman is a founding member of the Firm, a member of the Firm's Executive and Management Committees, and manages the Firm's New York office. Mr. Rudman's practice focuses on recognizing and investigating securities fraud, and initiating securities and shareholder class actions to vindicate shareholder rights and recover shareholder losses. A former attorney with the United States Securities and Exchange Commission, Mr. Rudman has recovered hundreds of millions of dollars for shareholders, including $129 million recovery in *In re Doral Fin. Corp. Sec. Litig.*, No. 05 MD 1706 (S.D.N.Y.); $74 million recovery in *In re First BanCorp Sec. Litig.*, No. 05-CV-2148 (D.P.R.); $65 million recovery in *In re Forest Labs., Inc. Sec. Litig.*, No. 05-CV-2827 (S.D.N.Y.); and $50 million recovery in *In re TD Banknorth S'holders Litig.*, No. 2557-VCL (Del. Ch.).

**Education:** B.A., Binghamton University, 1989; J.D., Brooklyn Law School, 1992

**Honors/Awards:** Dean's Merit Scholar, Brooklyn Law School; Moot Court Honor Society, Brooklyn Law School; Member, Brooklyn Journal of International Law, Brooklyn Law School

### SCOTT SAHAM

Scott Saham is a partner in the Firm's San Diego office whose practice areas include securities and other complex litigation. Mr. Saham recently served as lead counsel prosecuting the *Coca-Cola* securities litigation in the Northern District of Georgia, which resulted in a $137.5 million settlement after nearly 8 years of litigation. Prior to joining the Firm, Mr. Saham served as an Assistant United States Attorney in the Southern District of California, where he tried over 20 felony jury trials.

**Education:** B.A., University of Michigan, 1992; J.D., University of Michigan Law School, 1995

### STEPHANIE SCHRODER

Stephanie Schroder is a partner in the Firm's San Diego office. Ms. Schroder has significant experience prosecuting securities fraud class actions and shareholder derivative actions. Ms. Schroder's practice also focuses on advising institutional investors, including multi-employer and public pension funds, on issues related to corporate fraud in the United States securities markets. Currently, Ms. Schroder is representing clients that have suffered losses from the Madoff fraud in the *Austin Capital* and *Meridian Capital* litigations.

Ms. Schroder has obtained millions of dollars on behalf of defrauded investors. Prominent cases include *In re AT&T Corp. Sec. Litig.* ($100 million recovery at trial); *In re FirstEnergy Corp. Sec. Litig.* ($89.5 million recovery); and *Rasner v. Sturm* (FirstWorld Communications) ($25.9 million recovery). Major clients include the Pension Trust Fund for Operating Engineers, the Kentucky State District Council of Carpenters Pension Trust Fund, the Laborers Pension Trust Fund for Northern California, the Construction Laborers Pension Trust for Southern California, and the Iron Workers Mid-South Pension Fund.

**Education:** B.A., University of Kentucky, 1997; J.D., University of Kentucky College of Law, 2000

### CHRISTOPHER P. SEEFER

Christopher P. Seefer is a partner in the Firm's San Francisco office. Mr. Seefer concentrates his practice in securities class action litigation. One recent notable recovery was a $30 million settlement with UTStarcom in 2010, a recovery that dwarfed a $150,000 penalty obtained by the SEC. Prior to joining the Firm, Mr. Seefer was a Fraud Investigator with the Office of Thrift Supervision, Department of the Treasury (1990-1999), and a field examiner with the Office of Thrift Supervision (1986-1990).

**Education:** B.A., University of California Berkeley, 1984; M.B.A., University of California, Berkeley, 1990; J.D., Golden Gate University School of Law, 1998

### TRIG SMITH

Trig Smith is a partner in the Firm's San Diego office. Mr. Smith focuses on complex securities class actions in which he has helped obtain significant recoveries for investors in cases such as *Cardinal Health* ($600 million recovery); *Qwest* ($445 million recovery); *Forest Labs.* ($65 million recovery); *Accredo* ($33 million recovery); and *Exide* ($13.7 million recovery).

**Education:** B.S., University of Colorado, Denver, 1995; M.S., University of Colorado, Denver, 1997; J.D., Brooklyn Law School, 2000

**Honors/Awards:** Member, *Brooklyn Journal of International Law*, Brooklyn Law School; CALI Excellence Award in Legal Writing, Brooklyn Law School

### MARK SOLOMON

Mark Solomon is a partner in the Firm's San Diego office. Mr. Solomon regularly represents both United States and United Kingdom-based pension funds and asset managers in class and non-class securities litigation. Mr. Solomon has spearheaded the prosecution of many significant cases and has obtained substantial recoveries and judgments for plaintiffs through settlement, summary adjudications and trial. Mr. Solomon played a pivotal role in *In re Helionetics*, where plaintiffs won a unanimous $15.4 million jury verdict, and in many other cases, among them: *Schwartz v. TXU* ($150 million recovery plus significant corporate governance reforms); *In re Informix Corp. Sec. Litig.* ($142 million recovery); *Rosen v. Macromedia, Inc.* ($48 million recovery); *In re Cmty. Psychiatric Ctrs. Sec. Litig.*

($42.5 million recovery); *In re Advanced Micro Devices Sec. Litig.* ($34 million recovery); and *In re Tele-Commc'ns, Inc. Sec. Litig.* ($33 million recovery).

**Education:** B.A., Trinity College, Cambridge University, England, 1985; L.L.M., Harvard Law School, 1986; Inns of Court School of Law, Degree of Utter Barrister, England, 1987

**Honors/Awards:** Lizette Bentwich Law Prize, Trinity College, 1983 and 1984; Hollond Travelling Studentship, 1985; Harvard Law School Fellowship, 1985-1986; Member and Hardwicke Scholar of the Honourable Society of Lincoln's Inn

### SANFORD SVETCOV

Sandy Svetcov is a partner in the Firm's San Francisco office and has been an appellate lawyer for 45 years. Mr. Svetcov has briefed and argued more than 300 appeals in state and federal court, including *Braxton v. Mun. Court*, 10 Cal. 3d 138 (1973) (First Amendment); *Procunier v. Navarette*, 434 U.S. 555 (1978) (prisoner civil rights); *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) (securities fraud); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209 (11th Cir. 2001) (civil rights); *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) (securities fraud); *Inst. Investors Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009) (securities fraud); *Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) (securities fraud); and *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009) (securities fraud).

Prior to joining the Firm in July 2000, Mr. Svetcov was a partner at Landels firm from 1989-2000; served as Chief, Appellate Section, United States Attorney's Office, San Francisco, 1984-1989; Attorney-in-Charge, Organized Crime Strike Force, San Francisco, 1981-1984; Chief Assistant United States Attorney, San Francisco, 1978-1981; Deputy Attorney General, State of California, 1969-1977; Legal Officer, United States Navy, VT-25, Chase Field, Beeville, Texas, 1966-1969; and Deputy Legislative Counsel, Legislature of California, Sacramento, 1965-1966.

**Education:** B.A., Brooklyn College, 1961; J.D., University of California, Berkeley, 1964

**Honors/Awards:** Appointed by Chief Justice Rehnquist to Federal Appellate Rules Advisory Committee; Department of Justice's John Marshall Award for Excellence in Appellate Advocacy, California Attorney General; Specialist in Appellate Practice, State Bar of California Board of Legal Specialization

### BONNY E. SWEENEY

Bonny E. Sweeney is a partner in the Firm's San Diego office, where she specializes in antitrust and unfair competition class action litigation. Ms. Sweeney has served as co-lead counsel in several multi-district antitrust class actions pending in federal courts around the country, including *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.* (E.D.N.Y.), and *In re Currency Conversion Fee Antitrust Litig.* (S.D.N.Y.). In *Currency Conversion*, Ms. Sweeney helped recover $336 million for class members through a proposed settlement that is awaiting approval from the federal court. Ms. Sweeney was

also one of the trial lawyers in *Law v. NCAA/Hall v. NCAA/Schreiber v. NCAA* (D. Kan.), in which the jury awarded $67 million to three classes of college coaches.

Ms. Sweeney has participated in the successful prosecution and settlement of numerous other antitrust and unfair competition cases, including *In re LifeScan, Inc. Consumer Litig.* (N.D. Cal.), which settled for $45 million; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* (N.D. Cal.), which settled for more than $300 million; *In re NASDAQ Market-Makers Antitrust Litig.* (S.D.N.Y.), which settled for $1.027 billion; and *In re Airline Ticket Comm'n Antitrust Litig.* (D. Minn.), which settled for more than $85 million.

**Education:** B.A., Whittier College, 1981; M.A., Cornell University, 1985; J.D., Case Western Reserve University School of Law, 1988

**Honors/Awards:** "Outstanding Women in Antitrust," *Competition Law 360*; Wiley M. Manuel Pro Bono Services Award; San Diego Volunteer Lawyer Program Distinguished Service Award; J.D., *Summa Cum Laude*, Case Western Reserve University of School of Law, 1988

### SUSAN GOSS TAYLOR

Susan Goss Taylor is a partner in the Firm's San Diego office. Ms. Taylor's practice focuses on antitrust, consumer, and securities fraud class actions. Ms. Taylor has served as counsel on the Microsoft, DRAM and Private Equity antitrust litigation teams, as well as on a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations such as General Motors, Saturn, Mercedes-Benz USA, LLC, BMG Direct Marketing, Inc., and Ameriquest Mortgage Company. Ms. Taylor is also responsible for prosecuting securities fraud class actions and has obtained recoveries for investors in litigation involving *WorldCom* ($657 million recovery), *AOL Time Warner* ($629 million recovery), and *Qwest* ($445 million recovery). Prior to joining the Firm, Ms. Taylor served as a Special Assistant United States Attorney for the Southern District of California, where she obtained considerable trial experience prosecuting drug smuggling and alien smuggling cases.

**Education:** B.A., Pennsylvania State University, 1994; J.D., The Catholic University of America, Columbus School of Law, 1997

**Honors/Awards:** Member, Moot Court Team, The Catholic University of America, Columbus School of Law

### RYAN K. WALSH

Ryan K. Walsh, a founding partner of the Firm's Atlanta office, is an experienced litigator of complex commercial disputes. Mr. Walsh's practice focuses primarily on protecting the rights of innovators in patent litigation and related technology disputes. Mr. Walsh has appeared and argued before federal appellate and district courts, state trial courts, and in complex commercial proceedings across the country. Mr. Walsh's cases have involved a wide variety of technologies, ranging from basic mechanical applications to more sophisticated technologies in the wireless telecommunications and medical device fields.

Recent notable cases have involved patents in the wireless mesh networking and wired Ethernet networking fields.

Throughout his career, Mr. Walsh has been active in the Atlanta legal community. Beginning in January 2011, Mr. Walsh will serve as President of the Atlanta Legal Aid Society, having previously served on the ALAS Board of Directors for several years. Mr. Walsh also serves on the Board of the Atlanta Bar Association and is a regular speaker at the State Bar of Georgia's Beginning Lawyer's Program.

**Education:** B.A., Brown University, 1993; J.D., University of Georgia School of Law, 1999

**Honors/Awards:** "Rising Star" in the field of Intellectual Property, *Atlanta Magazine*; Super Lawyer, *Atlanta Magazine*; J.D., *Magna Cum Laude*, Bryant T. Castellow Scholar, Order of the Coif, University of Georgia School of Law, 1999

### DAVID C. WALTON

David C. Walton is a partner in the Firm's San Diego office and a member of the Firm's Executive and Management Committees. Mr. Walton specializes in pursuing financial fraud claims, using his background as a Certified Public Accountant and Certified Fraud Examiner to prosecute securities law violations on behalf of investors. Mr. Walton has investigated and participated in the litigation of many large accounting scandals, including Enron, WorldCom, AOL Time Warner, Krispy Kreme, Informix, HealthSouth, Dynegy, Dollar General, and numerous companies implicated in stock option backdating. In 2003-2004, Mr. Walton served as a member of the California Board of Accountancy, which is responsible for regulating the accounting profession in California.

**Education:** B.A., University of Utah, 1988; J.D., University of Southern California Law Center, 1993

**Honors/Awards:** Member, *Southern California Law* Review, University of Southern California Law Center; Hale Moot Court Honors Program, University of Southern California Law Center; Appointed to California State Board of Accountancy, 2004

### DOUGLAS WILENS

Douglas Wilens is a partner in the Firm's Boca Raton office. Mr. Wilens is involved in all aspects of securities class action litigation, focusing on lead plaintiff issues arising under the Private Securities Litigation Reform Act. Mr. Wilens is also involved in the Firm's appellate practice and participated in the successful appeal of a motion to dismiss before the Fifth Circuit Court of Appeals in *Lormand v. US Unwired, Inc.*, No 07-30106 (5th Cir. 2009) (reversal of order granting motion to dismiss).

Prior to joining the Firm, Mr. Wilens was an associate at a nationally recognized firm, where he litigated complex actions on behalf of numerous professional sports leagues, including the National Basketball Association, the National Hockey League and Major League Soccer. Mr. Wilens has also served as an adjunct professor at Florida Atlantic University

and Nova Southeastern University, where he taught undergraduate and graduate-level business law classes.

**Education:** B.S., University of Florida, 1992; J.D., University of Florida College of Law, 1995

**Honors/Awards:** Book Award for Legal Drafting, University of Florida College of Law; J.D., with Honors, University of Florida College of Law, 1995

### SHAWN A. WILLIAMS

Shawn A. Williams is a partner in the Firm's San Francisco office and focuses his practice on securities class actions and shareholder derivative actions. Mr. Williams has served as lead class counsel in notable cases, including *In re Harmonic Inc. Sec. Litig.*, No. 00-2287 (N.D. Cal.); *In re Krispy Kreme Doughnuts, Inc. Sec. Litig.*, No. 04-0416 (M.D.N.C.); and *In re Veritas Software Corp. Sec. Litig.*, No. 03-0283 (N.D. Cal.). Mr. Williams has also prosecuted significant shareholder derivative actions, including numerous stock option backdating actions, in which he secured tens of millions of dollars in cash recoveries and negotiated the implementation of comprehensive corporate governance enhancements. *See, e.g.*, *In re McAfee, Inc. Derivative Litig.*, No. 06-3484- JF (N.D. Cal.); *In re Marvell Tech. Grp. Ltd. Derivative Litig.*, No. 06-3894-RMW (N.D. Cal.); and *The Home Depot, Inc. Derivative Litig.*, No. 2006-cv-122302 (Ga. Super. Ct., Fulton County). Prior to joining the Firm, Mr. Williams served as an Assistant District Attorney in the Manhattan District Attorney's Office, where he tried over 20 cases to New York City juries and led white-collar fraud grand jury investigations.

**Education:** B.A., The State of University of New York at Albany, 1991; J.D., University of Illinois, 1995

### DAVID T. WISSBROECKER

David T. Wissbroecker is a partner in the Firm's San Diego office and focuses his practice on securities class action litigation in the context of mergers and acquisitions, representing both individual shareholders and institutional investors. Mr. Wissbroecker combines aggressive advocacy with a detailed knowledge of the law to achieve effective results for his clients in both state and federal courts nationwide. Mr. Wissbroecker has successfully litigated matters resulting in monetary settlements in excess of $500 million over the last four years, including the two largest settlements ever obtained in merger-related litigation in *In re Kinder Morgan, Inc. S'holder Litig.* ($200 million) and *In re ACS S'holders Litig.* ($69 million). Other large fund settlements obtained by Mr. Wissbroecker include *In re PETCO Animal Supplies* ($16 million); and *In re Dollar Gen. Corp. S'holders Litig.* ($40 million). Most recently, Mr. Wissbroecker obtained a $45 million common fund settlement in *Brown v. Brewer*, a breach of fiduciary duty and securities class action litigated on behalf of former shareholders of Intermix, Inc. over the value of MySpace sold via merger to News Corporation in 2005.

**Education:** B.A., Arizona State University, 1998; J.D., University of Illinois College of Law, 2003

**Honors/Awards:** J.D., *Magna Cum Laude*, University of Illinois College of Law, 2003; B.A., *Cum Laude*, Arizona State University, 1998

### DEBRA J. WYMAN

Debra J. Wyman is a partner in the Firm's San Diego office who specializes in securities litigation. Ms. Wyman has litigated numerous cases against public companies in state and federal courts that have resulted in over $1 billion in recoveries for victims of securities fraud. Ms. Wyman was a member of the trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in the United States District Court, District of New Jersey, and settled after only two weeks of trial for $100 million. Ms. Wyman recently prosecuted a complex securities and accounting fraud case against HealthSouth Corporation, one of the largest and longest-running corporate frauds in history, in which $671 million was recovered for defrauded HealthSouth investors.

**Education:** B.A., University of California Irvine, 1990; J.D., University of San Diego School of Law, 1997

### OF COUNSEL

### AELISH MARIE BAIG

Aelish Marie Baig is Of Counsel to the Firm and is based in the Firm's San Francisco office. Ms. Baig litigates consumer and securities fraud class actions. Ms. Baig has litigated a number of cases through jury trial, resulting in multi-million dollar awards or settlements for her clients. Ms. Baig was part of the litigation and trial team in *White v. Cellco Partnership d/b/a Verizon Wireless*, which ultimately settled for $21 million and Verizon's agreement to an injunction restricting its ability to impose early termination fees in future subscriber agreements. Ms. Baig was also significantly involved in the Firm's prosecution of numerous stock option backdating actions, securing tens of millions of dollars in cash recoveries, as well as the implementation of comprehensive corporate governance enhancements for companies victimized by fraudulent stock option practices. Her clients include the Counties of Santa Clara and Santa Cruz, as well as state, county and municipal pension funds.

**Education:** B.A., Brown University, 1992; J.D., Washington College of Law at American University, 1998

**Honors/Awards:** J.D., *Cum Laude*, Washington College of Law at American University, 1998; Senior Editor, *Administrative Law Review*, Washington College of Law at American University

### RANDI D. BANDMAN

Randi D. Bandman has directed numerous complex securities cases at the Firm, such as the pending case of *In re BP plc Derivative Litig.*, a case brought to address the alleged utter failure of BP to ensure the safety of its operation in the United States, including Alaska, and which caused such devastating results as in the Deepwater Horizon oil spill, the worst environmental disaster in history. Ms. Bandman was instrumental in the Firm's

development of representing coordinated groups of institutional investors in private opt-out cases that resulted in historical recoveries, such as in WorldCom and AOL Time Warner. Through her years at the Firm, Ms. Bandman has represented hundreds of institutional investors, including domestic and non-U.S. investors, in some of the largest and most successful shareholder class actions ever prosecuted, resulting in billions of dollars of recoveries, involving such companies as Enron, Unocal and Boeing. Ms. Bandman was also instrumental in the landmark 1998 state settlement with the tobacco companies for $12.5 billion.

**Education:** B.A., University of California, Los Angeles; J.D., University of Southern California

### BRUCE BOYENS

Bruce Boyens has served as Of Counsel to the Firm since 2001. A private practitioner in Denver, Colorado since 1990, Mr. Boyens specializes in issues relating to labor and environmental law, labor organizing, labor education, union elections, internal union governance and alternative dispute resolutions. In this capacity, Mr. Boyens previously served as a Regional Director for the International Brotherhood of Teamsters elections in 1991 and 1995, and developed and taught collective bargaining and labor law courses for the George Meany Center, Kennedy School of Government, Harvard University, and the Kentucky Nurses Association, among others.

In addition, Mr. Boyens served as the Western Regional Director and Counsel for the United Mine Workers from 1983-1990, where he was the chief negotiator in over 30 major agreements, and represented the United Mine Workers in all legal matters. From 1973-1977, Mr. Boyens served as General Counsel to District 17 of the United Mine Workers Association, and also worked as an underground coal miner during that time.

**Education:** J.D., University of Kentucky College of Law, 1973; Harvard University, Certificate in Environmental Policy and Management

### PATRICK J. COUGHLIN

Patrick J. Coughlin is Of Counsel to the Firm and has served as lead counsel in several major securities matters, including one of the largest class action securities cases to go to trial, *In re Apple Computer Sec. Litig.*, No. C-84-20148 (N.D. Cal.). Additional prominent securities class actions prosecuted by Mr. Coughlin include the *Enron* litigation ($7.2 billion recovery); the *Qwest* litigation ($445 million recovery); and the *HealthSouth* litigation ($671 million recovery). Mr. Coughlin was formerly an Assistant United States Attorney in the District of Columbia and the Southern District of California, handling complex white-collar fraud matters.

**Education:** B.S., Santa Clara University, 1977; J.D., Golden Gate University, 1983

**Honors/Awards:** Southern California Super Lawyer, 2009, 2007, 2006; Top 100 Lawyers, *Daily Journal*, 2008

## MARK J. DEARMAN

Mark J. Dearman is Of Counsel to the Firm and is based in the Firm's Boca Raton office. Mr. Dearman devotes his practice to protecting the rights of those who have been harmed by corporate misconduct. Mr. Dearman is involved as lead or co-lead trial counsel in the context of protecting shareholders' rights, representing pension funds in the context of securities lending, and in consumer class actions which are pending in a multi-district venue or in many of the district courts throughout the United States, notably, *In re Burger King Holdings, Inc. S'holder Litig.*, No. 10-48395 (11th Cir.); *The Board of Trustees of the Southern California IBEW-NECA v. The Bank of New York Mellon Corp.*, No. 09-06273 (S.D.N.Y.); *POM Wonderful LLC Mktg. & Sales Practices Litig.*, MDL No. 2199; *Gutierrez v. Home Depot U.S.A., Inc.*, No. 10-cv-0166 (N.D. Ga.); and *Pelkey v. McNeil Consumer Health Care*, No. 10-cv-61853 (S.D. Fla.). Prior to joining the Firm, Mr. Dearman founded Dearman & Gerson, where he defended Fortune 500 companies in all aspects of litigation, with an emphasis on complex commercial litigation, consumer claims, and products liability. During the past 17 years of practice, Mr. Dearman has obtained extensive jury trial experience throughout the United States. Having represented defendants for so many years before joining the Firm, Mr. Dearman has a unique perspective that enables him to represent clients effectively.

**Education:** B.A., University of Florida, 1990; J.D., Nova Southeastern University, 1993

**Honors/Awards:** AV rated by Martindale-Hubbell; In top 1.5% of Florida Civil Trial Lawyers in *Florida Trend's* Florida Legal Elite, 2004 and 2006

## L. THOMAS GALLOWAY

L. Thomas Galloway is Of Counsel to the Firm. Mr. Galloway is the founding partner of Galloway & Associates PLLC, a law firm that specializes in the representation of institutional investors – namely, public and multi-employer pension funds. Mr. Galloway is also President of the Galloway Family Foundation, which funds investigative journalism into human rights abuses around the world.

**Education:** B.A., Florida State University, 1967; J.D., University of Virginia School of Law, 1972

**Honors/Awards:** Articles Editor, *University of Virginia Law Review*, University of Virginia School of Law; *Phi Beta Kappa*, University of Virginia School of Law; Trial Lawyer of the Year in the United States, 2003

## BYRON S. GEORGIOU

Byron S. Georgiou is Of Counsel to the Firm. Mr. Georgiou was recently appointed as one of ten members nationally to the Financial Crisis Inquiry Commission, which reported to Congress in January 2011 regarding its conclusions as to the causes of the global financial crisis. Mr. Georgiou serves as the primary liaison with a number of the Firm's principal institutional clients and has been actively involved in the historic litigations that secured

recoveries for defrauded investors in Enron, Dynegy, AOL Time Warner, WorldCom and UnitedHealth.

From 1980-1983, Mr. Georgiou served as Legal Affairs Secretary to California Governor Edmund G. Brown Jr., responsible for litigation by and against the Governor, judicial appointments, liaison with the Attorney General, Judiciary and State Bar, legal advice to the Governor and members of his Cabinet, and exercise of the Governor's powers of extradition and clemency. Mr. Georgiou served from 1975-1980 in various capacities with the California Agricultural Labor Relations Board, defending the constitutionality of the law up through the United States and California Supreme Courts, and prosecuting unfair labor practice cases enforcing the collective bargaining rights of farm workers, who had been excluded from labor protection under the National Labor Relations Act.

**Education:** A.B., Stanford University, 1970; J.D., Harvard Law School, 1974

**Honors/Awards:** Appointed as one of ten members nationally to the Financial Crisis Inquiry Commission; Public Official of the year, California Trial Lawyers Association; A.B., with Great Distinction and with Honors, Stanford University, 1970; J.D., *Magna Cum Laude*, Harvard Law School, 1974

### EDWARD M. GERGOSIAN

Edward M. Gergosian is Of Counsel in the Firm's San Diego office. Mr. Gergosian has practiced solely in complex litigation for 28 years, first with a nationwide securities and antitrust class action firm, managing its San Diego office, and thereafter as a founding member of his own firm. Mr. Gergosian has actively participated in the leadership and successful prosecution of several securities and antitrust class actions and shareholder derivative actions, including *In re 3Com Corp. Sec. Litig.* (which settled for $259 million); *In re Informix Corp. Sec. Litig.* (which settled for $142 million); and the Carbon Fiber antitrust litigation (which settled for $60 million). Mr. Gergosian was part of the team that prosecuted the *AOL Time Warner* state and federal court securities opt-out actions, which settled for $629 million. He also obtained a jury verdict in excess of $14 million in a consumer class action captioned *Gutierrez v. Charles J. Givens Organization*.

**Education:** B.A., Michigan State University, 1975; J.D., University of San Diego School of Law, 1982

**Honors/Awards:** J.D., *Cum Laude*, University of San Diego School of Law, 1982

### MITCHELL D. GRAVO

Mitchell D. Gravo is Of Counsel to the Firm and concentrates his practice on government relations. Mr. Gravo represents clients before the Alaska Congressional delegation, the Alaska Legislature, the Alaska State Government and the Municipality of Anchorage.

Mr. Gravo's clients include Anchorage Economic Development Corporation, Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM

Architects, Anchorage Police Department Employees Association, Fred Meyer, and the Automobile Manufacturer's Association. Prior to joining the Firm, Mr. Gravo served as an intern with the Municipality of Anchorage, and then served as a law clerk to Superior Court Judge J. Justin Ripley.

**Education:** B.A., Ohio State University; J.D., University of San Diego School of Law

**Honors/Awards:** Described as one of the "top lobbyists in the state," *The Anchorage Daily News*

### HELEN J. HODGES

Helen J. Hodges is Of Counsel to the Firm and is based in the Firm's San Diego office. Ms. Hodges has been involved in numerous securities class actions, including *Knapp v. Gomez*, No. 87-0067 (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action; *Nat'l Health Labs*, which settled for $64 million; *Thurber v. Mattel*, which settled for $122 million; and *Dynegy*, which settled for $474 million. More recently, Ms. Hodges focused on the prosecution of *Enron*, where a record recovery ($7.2 billion) was obtained for investors.

**Education:** B.S., Oklahoma State University, 1979; J.D., University of Oklahoma, 1983

**Honors/Awards:** Rated AV by Martindale-Hubbell; San Diego Super Lawyer, 2007; Oklahoma State University Foundation Board of Governors, 2009

### DAVID J. HOFFA

David J. Hoffa is Of Counsel to the Firm and is based in the Firm's Washington, D.C. office. Mr. Hoffa is an integral part of the Firm's Institutional Outreach Department, and advises public and Taft-Hartley pension funds around the country on issues related to corporate fraud in the U.S. securities markets and "best practices" in the corporate governance of publicly traded companies. Mr. Hoffa is a member of the State Bar of Michigan and the District of Columbia Bar.

**Education:** B.A., Michigan State University, 1993; J.D., Michigan State University College of Law, 2000

### NANCY M. JUDA

Nancy M. Juda is Of Counsel to the Firm and is based in the Firm's Washington, D.C. office. Ms. Juda concentrates her practice on employee benefits law and works in the Firm's Institutional Outreach Department. Using her extensive experience representing union pension funds, Ms. Juda advises Taft-Hartley fund trustees regarding their options for seeking redress for losses due to securities fraud. Ms. Juda also represents workers in ERISA class actions involving breach of fiduciary duty claims against corporate plan sponsors and fiduciaries.

Prior to joining the Firm, Ms. Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she practiced in the area of employee benefits law. Ms. Juda was also associated with union-side labor law firms in Washington, D.C., where she represented the trustees of Taft-Hartley pension and welfare funds on qualification, compliance, fiduciary, and transactional issues under ERISA and the Internal Revenue Code.

**Education:** B.A., St. Lawrence University, 1988; J.D., American University, 1992

### RUBY MENON

Ruby Menon is Of Counsel to the Firm and focuses on providing a variety of legal and consulting services to single and multi-employer pension funds, and also serves as a member of the Firm's advisory team and liaison between the Firm's individual and institutional investor clients in the United States and abroad. For over 12 years, Ms. Menon served as chief legal counsel to two large multi-employer retirement plans, developing her expertise in many areas of employee benefits administration, including legislative initiatives and regulatory affairs, investments, tax, fiduciary compliance and plan administration.

**Education:** B.A., Indiana University, 1985; J.D., Indiana University School of Law, 1988

### MARK T. MILLKEY

Mark T. Millkey is Of Counsel to the Firm and is based in the Firm's New York Office. Mr. Millkey has significant experience in the area of complex securities class actions, consumer fraud class actions, and derivative litigation.

Mr. Millkey was previously involved in a consumer litigation against MetLife, which resulted in a benefit to the class of approximately $1.7 billion, and a securities class action against Royal Dutch/Shell, which settled for a minimum cash benefit to the class of $130 million and a contingent value of more than $180 million. Mr. Millkey also has significant appellate experience in both the federal court system and the state courts of New York.

**Education:** B.A., Yale University, 1981; M.A., University of Virginia, 1983; J.D., University of Virginia, 1987

### PAMELA M. PARKER

Pamela M. Parker is Of Counsel to the Firm and is a member of the Appellate Practice Group. Ms. Parker's practice has included appellate matters and environmental, consumer fraud and securities fraud litigation. Ms. Parker has worked on a variety of appellate matters before numerous courts, including the United States Courts of Appeal for the Fifth, Sixth, Ninth, and Tenth Circuits and the appellate courts of California, Alabama, Ohio and Tennessee. Ms. Parker is a Lawyer Representative to the Ninth Circuit Judicial Conference.

In addition, Ms. Parker has participated in the successful prosecution of several important actions, including *In re Exxon Valdez*, No. A89-095 (D. Alaska), in which she served as a member of the trial support team, and which resulted in a $5 billion jury verdict; *Pinney v.*

*Great Western Bank*, No. CV-95-2110 (C.D. Cal.), in which she served as one of the principal attorneys for plaintiffs and which resulted in a settlement of $17.2 million; and *Does I v. The Gap, Inc.*, No. 01 0031 (D. N. Mar. I.), in which she was the lead prosecuting attorney and which resulted in a $20 million settlement, including a precedent-setting monitoring program to monitor labor and human rights practices in Saipan garment factories.

**Education:** B.A., State University of New York at Binghamton, 1979; J.D., Harvard Law School, 1982

**Honors/Awards:** Trial Lawyers of the Year, Trial Lawyers for Public Justice; San Diego Super Lawyer; J.D., *Cum Laude*, Harvard Law School, 1982; *Phi Beta Kappa*, State University of New York at Binghamton; Articles Editor, *Civil Rights/Civil Liberties Law Review*, Harvard Law School

### ROXANA PIERCE

Roxana Pierce is Of Counsel to the Firm and focuses her practice on negotiations, contracts, international trade, real estate transactions, and project development. She is presently acting as liaison to several international funds in the area of securities litigation. She has represented clients in over 65 countries, with extensive experience in the Middle East, Asia, Russia, the former Soviet Union, the Caribbean and India. Ms. Pierce counsels institutional investors on recourse available to them when the investors have been victims of fraud or other schemes. Her diverse clientele includes international institutional investors in Europe and the Middle East and domestic public funds across the United States.

**Education:** B.A., Pepperdine University, 1988; Paralegal Certificate, University of San Diego, 1989; J.D., Thomas Jefferson School of Law, 1994

**Honors/Awards:** Certificate of Accomplishment, Export-Import Bank of the United States

### LEONARD B. SIMON

Leonard B. Simon is Of Counsel to the Firm. His practice has been devoted heavily to litigation in the federal courts, including both the prosecution and defense of major class actions and other complex litigation in the securities and antitrust fields. Mr. Simon has also handled a substantial number of complex appellate matters, arguing cases in the United States Supreme Court, several federal Courts of Appeals, and several California appellate courts. Mr. Simon has served as plaintiffs' co-lead counsel in dozens of class actions, including *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 90-834 (D. Ariz.) (settled for $240 million) and *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.) (settled for more than $1 billion), and was centrally involved in the prosecution of *In re Washington Pub. Power Supply Sys. Sec. Litig.*, MDL No. 551 (D. Ariz.), the largest securities class action ever litigated.

Mr. Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California Law Schools. He is an Editor of California Federal

Court Practice and has authored a law review article on the Private Securities Litigation Reform Act of 1995.

**Education:** B.A., Union College, 1970; J.D., Duke University School of Law, 1973

**Honors/Awards:** San Diego Super Lawyer; J.D., Order of the Coif and with Distinction, Duke University School of Law, 1973

### LAURA S. STEIN

Laura S. Stein is Of Counsel to the Firm and has practiced in the areas of securities class action litigation, complex litigation and legislative law. In a unique partnership with her mother, attorney Sandra Stein, also Of Counsel to the Firm, the Steins focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty. The Steins also seek to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance. The Steins work with over 500 institutional investors across the nation and abroad, and their clients have served as lead plaintiff in successful cases where billions of dollars were recovered for defrauded investors against such companies as AOL Time Warner, Tyco, Cardinal Health, AT&T, Hanover Compressor, First Bancorp, Enron, Dynegy, Honeywell International and Bridgestone.

Ms. Stein is Special Counsel to the Institute for Law and Economic Policy (ILEP), a think tank that develops policy positions on selected issues involving the administration of justice within the American legal system. Ms. Stein has also served as Counsel to the Annenberg Institute of Public Service at the University of Pennsylvania.

**Education:** B.A., University of Pennsylvania, 1992; J.D., University of Pennsylvania Law School, 1995

### SANDRA STEIN

Sandra Stein is Of Counsel to the Firm and concentrates her practice in securities class action litigation, legislative law and antitrust litigation. In a unique partnership with her daughter, Laura Stein, also Of Counsel to the Firm, the Steins focus on minimizing losses suffered by shareholders due to corporate fraud and breaches of fiduciary duty.

Previously, Ms. Stein served as Counsel to United States Senator Arlen Specter of Pennsylvania. During her service in the United States Senate, Ms. Stein was a member of Senator Specter's legal staff and a member of the United States Senate Judiciary Committee staff. Ms. Stein is also the Founder of the Institute for Law and Economic Policy (ILEP), a think tank that develops policy positions on selected issues involving the administration of justice within the American legal system. Ms. Stein has also produced numerous public service documentaries for which she was nominated for an Emmy and received an ACE award, cable television's highest award for excellence in programming.

**Education:** B.S., University of Pennsylvania, 1961; J.D., Temple University School of Law, 1966

**Honors/Awards:** Nominated for an Emmy and received an ACE award for public service documentaries

### JOHN J. STOIA, JR.

John J. Stoia, Jr. is Of Counsel to the Firm and is based in the Firm's San Diego office. Mr. Stoia was a founding partner of Robbins Geller Rudman & Dowd LLP, previously known as Coughlin Stoia Geller Rudman & Robbins LLP. Currently, Mr. Stoia is court-appointed co-lead counsel in eight nationwide class actions against sellers of deferred annuities to senior citizens. Mr. Stoia has worked on dozens of nationwide complex securities class actions, including *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a member of the plaintiffs' trial team, which obtained verdicts against Mr. Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

Mr. Stoia has brought over 50 nationwide class actions against life insurance companies and recovered over $10 billion on behalf of victims of insurance fraud due to deceptive sales practices such as "vanishing premiums," "churning," and discrimination in the sale of burial or debit insurance. Mr. Stoia has also represented numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of major financial scandals, including AOL Time Warner and WorldCom.

**Education:** B.S., University of Tulsa, 1983; J.D., University of Tulsa, 1986; LL.M. Georgetown University Law Center, 1987

**Honors/Awards:** Litigator of the Month, *The National Law Journal*; Super Lawyer, *Southern California Super Lawyers* (2008-Present); California Super Lawyer; LL.M. Top of Class, Georgetown University Law Center

### SPECIAL COUNSEL

### BRUCE GAMBLE

Bruce Gamble is Special Counsel to the Firm and a member of the Institutional Outreach Department.

Mr. Gamble serves as a liaison with the Firm's institutional investor clients in the United States and abroad, advising them on securities litigation matters. Previously, Mr. Gamble was General Counsel and Chief Compliance Officer for the District of Columbia Retirement Board, where he served as chief legal advisor to the Board of Trustees and staff. Mr. Gamble's experience also includes serving as Chief Executive Officer of two national trade associations and several senior level staff positions on Capitol Hill.

**Education:** B.S., University of Louisville, 1979; J.D., Georgetown University Law Center, 1989

**Honors/Awards:** Executive Board Member, National Association of Public Pension Attorneys, 2000-2006; American Banker selection as one of the most promising U.S. bank executives under 40 years of age, 1992

### TRICIA MCCORMICK

Tricia L. McCormick is Special Counsel to the Firm and focuses primarily on the prosecution of securities class actions. Ms. McCormick has litigated numerous cases against public companies in state and federal courts that resulted in hundreds of millions of dollars in recoveries for investors. She is also a member of a team that is in constant contact with clients who wish to become actively involved in the litigation of securities fraud. In addition, Ms. McCormick is active in all phases of the Firm's lead plaintiff motion practice.

**Education:** B.A., University of Michigan, 1995; J.D., University of San Diego School of Law, 1998

**Honors/Awards:** J.D., *Cum Laude*, University of San Diego School of Law, 1998

### FORENSIC ACCOUNTANTS

### R. STEVEN ARONICA

R. Steven Aronica is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors and the Association of Certified Fraud Examiners. Mr. Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies including Lucent Technologies, Tyco, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Vivendi, AOL Time Warner, Ikon, Doral Financial, First BanCorp, Acclaim Entertainment, Hibernia Foods, and NBTY. In addition, Mr. Aronica assisted in the prosecution of numerous claims against major United States public accounting firms.

Mr. Aronica has been employed in the practice of financial accounting for more than 25 years, including public accounting, where he was responsible for providing clients with a wide range of accounting and auditing services; private accounting with Drexel Burnham Lambert, Inc., where he held positions with accounting and financial reporting responsibilities; and at the United States Securities and Exchange Commission, where he held various positions in the divisions of Corporation Finance and Enforcement.

**Education:** B.B.A., University of Georgia, 1979

### ANDREW J. RUDOLPH

Andrew J. Rudolph is the Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies.

Mr. Rudolph has directed hundreds of financial statement fraud investigations, which were instrumental in recovering billions of dollars for defrauded investors. Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix*, *Platinum Software*, *AOL Time Warner*, and *UnitedHealth*.

Mr. Rudolph is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California.

He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants, and the Association of Certified Fraud Examiners. His 20 years of public accounting, consulting and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations and taxation.

**Education:** B.A., Central Connecticut State University, 1985

### CHRISTOPHER YURCEK

Christopher Yurcek is the Assistant Director of the Firm's Forensic Accounting Department, which provides in-house forensic accounting and litigation expertise in connection with major securities fraud litigation. Mr. Yurcek has directed the Firm's forensic accounting efforts on numerous high-profile cases, including *In re Enron Corp. Sec. Litig.* and *Jaffe v. Household Int'l, Inc.*, which resulted in a major jury verdict at trial in 2009. Other prominent cases include *HealthSouth*, *UnitedHealth*, *Vesta*, *Informix*, *Mattel*, *Coca-Cola* and *Media Vision*.

Mr. Yurcek has over 20 years of accounting, auditing, and consulting experience in areas including financial statement audit, forensic accounting and fraud investigation, auditor malpractice, turn-around consulting, business litigation and business valuation. Mr. Yurcek is a Certified Public Accountant licensed in California, holds a Certified in Financial Forensics (CFF) Credential from the American Institute of Certified Public Accountants, and is a member of the California Society of CPAs and the Association of Certified Fraud Examiners.

**Education:** B.A., University of California, Santa Barbara, 1985